UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |
|---|---|
| In re: | § Chapter 11 |
|  | § |
| NEIGHBORS LEGACY HOLDINGS, INC., *et al.*, | § Case No. 18-33836 (MI) |
|  | § |
|  | § (Jointly Administered) |
| Debtors.[1] | § |

**DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING DEBTORS TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS THEREUNDER AND (B) RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE, OR ENTER INTO NEW INSURANCE POLICIES, AND (II) DIRECTING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED PAYMENT REQUESTS**

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

Neighbors Legacy Holdings, Inc. ("Neighbors") and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion") this Court for entry of an order (I) authorizing, but not directing, the Debtors to (A) maintain their existing insurance policies and pay all insurance obligations arising thereunder or in connection therewith, (B) renew, revise, extend, supplement,

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/neighbors. The location of
*(cont'd)*

change, or enter into new insurance coverage as needed in their business judgment, and (II) authorizing and directing financial institutions to receive, process, honor, and pay any and all checks and electronic payment requests relating to the Insurance Obligations (as defined below), to the extent the Debtors have sufficient funds on deposit or otherwise available therefor. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Chad J. Shandler in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 361, 362, 363(b), 364, 1107(a), and 1108 and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

3. On July 12, 2018 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that the Chapter 11 Cases be jointly administered.

4. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

---

*(cont'd from previous page)*
Debtors' principal place of business and the Debtors' service address is: 10800 Richmond Avenue. Houston, Texas 77042.

5. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

6. The Debtors currently operate 22 freestanding emergency centers (the "Emergency Centers") throughout the State of Texas, including in South Texas, El Paso, the Golden Triangle, the Permian Basin, the Panhandle, and the greater Houston area. The Debtors' Emergency Centers are designed to offer an attractive alternative to traditional hospital emergency rooms by reducing wait times, providing better working conditions for physicians and staff, and giving patient care the highest possible priority.

7. The Debtors' original parent was founded in 2008, and the first Neighbors emergency center opened in 2009. At their peak, the Debtors operated 33 emergency centers across three states. In recent years, the Debtors have experienced financial difficulties caused in large part by increased competition, less favorable insurance payor conditions, declining revenues, and disproportionate overhead costs as compared to their operational income. These challenges have caused significant strain on the Debtors' liquidity and threatened their ability to continue operating as a going concern. Prepetition, the Debtors engaged professionals and explored various out-of-court solutions, including closing unprofitable emergency centers and downsizing their corporate overhead. Ultimately, the Debtors' out-of-court restructuring efforts were insufficient and the Debtors elected to commence these Chapter 11 Cases.

8. Additional background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**RELIEF REQUESTED**

9. By this Motion, the Debtors seek entry of an order (i) authorizing, but not directing, the Debtors to (a) maintain their existing insurance policies and pay all insurance obligations, including the Premium Financing Obligations (defined below) arising thereunder or in connection therewith, whether arising prepetition or post-petition and (b) renew, revise, extend, supplement, change, or enter into new insurance coverage, as needed, in their business judgment and (ii) authorizing and directing financial institutions to receive, process, honor, and pay any and all checks and electronic payment requests relating to the Insurance Obligations, to the extent the Debtors have sufficient funds on deposit or otherwise available therefor.

10. As set forth in more detail below, as of the Petition Date, the Debtors do not believe that there are any outstanding amounts owed on account of the annual premiums for the Insurance Policies (defined below). Nevertheless, the Debtors seek authority, but not direction, to continue the Insurance Policies in the ordinary course of business on a postpetition basis.

11. To the extent any of the Insurance Policies (defined below) or related agreements are executory contracts, the Debtors do not, at this time, seek to assume any executory contracts, and nothing in the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section 365. Notwithstanding the relief requested in this Motion and any actions taken hereunder, nothing in this Motion shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

12. For the reasons set forth in this Motion, the relief requested is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and should therefore be granted.

6542458v5

**BASIS FOR RELIEF**

13. In connection with the operation of their businesses, the Debtors maintain approximately 14 insurance policies with various insurance carriers (the "Insurance Carriers") covering items such as the Debtors' property liability, auto liability, fiduciary liability, cyber/regulatory liability, environmental liability, medical malpractice liability, workers' compensation liability, and management liability (collectively, as such policies may be supplemented, amended, extended, renewed, or replaced, the "Insurance Policies"). Most of the Debtors' Insurance Policies are financed through a premium finance agreement; however, three of the Insurance Policies are paid directly by the Debtors (the "Other Policies" and together with the Insurance Policies, the "Insurance Obligations").

B. The Financed Policies

14. As set forth above, most of the Debtors' Insurance Policies are financed through a premium finance agreement (the "Premium Financing Agreement") entered into by and between Neighbors Legacy Holdings, Inc., Neighbors Emergency Center, LLC, and IPFS Corporation ("IPFS") on February 27, 2018. *See* **Exhibit A**. A list of the Insurance Policies covered by the Premium Financing Agreement (the "Financed Policies") is attached as **Exhibit B**. Pursuant to the Premium Finance Agreement, IPFS financed the Debtors' 2018 premium payments for the Financed Policies in the total aggregate amount of $515,708.41. The Debtors' monthly payment obligation to IPFS under the Premium Finance Agreement is $47,785.15 (the "Premium Financing Obligations"). Installments under the Premium Financing Agreement are due on the first of every month, with the first post-petition payment due on August 1, 2018.

C. The Other Policies

15. The Debtors' have other Insurance Policies that are not covered by the Premium Finance Agreement (the "Other Policies"). A list of the Other Policies is attached as **Exhibit C**.

5

**D.     The Insurance Broker**

16.     The Debtors typically obtain their Insurance Policies through Arthur J. Gallagher & Co. ("Gallagher"). Gallagher assists the Debtors in obtaining comprehensive insurance coverage on advantageous terms and at competitive rates, and negotiating policy terms, provisions, and premiums. Gallagher also assists the Debtors with claims, provides ongoing support throughout the applicable policy periods, and advises the Debtors with respect to accounting and actuarial methodology. In connection with the Insurance Policies, Gallagher is paid for its services by the Insurance Carriers following receipt of the Debtors' payments to IPFS under the terms of the Premium Finance Agreement.

**E.     Outstanding Obligations**

17.     As of the Petition Date, the Debtors believe they are current on the Premium Financing Obligations and the Other Policy Obligations. Accordingly, as of the Petition Date, the Debtors do not owe any amounts in connection with the Insurance Policies. The Debtors seek authority, but not direction, to pay any and all amounts in connection with the Insurance Policies as they come due in the ordinary course of business.[2]

18.     If the Debtors are unable to continue making payments on the Premium Financing Agreement, IPFS may be permitted to terminate the Financed Policies. Likewise, if the Debtors are unable to continue making payments on the Other Policies, the effected insurer may be permitted to terminate its policy. The Debtors would then be required to obtain replacement insurance on an expedited basis and at a cost to the estates. Even if policies are not terminated, any interruption of payment would have an adverse effect on the Debtors' ability to obtain or

---

[2] To the extent that any Insurance Policy premiums may be attributable to prepetition insurance coverage, the Debtors believe that payment of such premiums is necessary to ensure continued coverage.

finance premiums for future policies. The Debtors' maintenance of their relationships with IPFS and the Insurance Carriers is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage. Accordingly, the Debtors request authorization to continue to make payments under the Premium Financing Agreement and the Other Policies, whether arising pre- or post-petition, including the financing fees associated therewith.

19.     The Debtors believe that continued payment of the premiums as such premiums come due in the ordinary course of business is essential to the preservation of the value of the Debtors' business, the continued operation of the Emergency Centers, and the care and safety of their patients. Moreover, in many cases, the coverage provided by the Insurance Policies is required by the regulations and laws that govern the Debtors' activities, including the requirement of the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, issued by the Executive Office of United States Trustees (rev. 1/31/2014) (the "U.S. Trustee Guidelines"), that a debtor maintain certain coverage.

20.     Accordingly, the Debtors request authority to maintain their existing Insurance Policies, the Premium Finance Agreement, and to pay and/or honor all insurance obligations arising thereunder or in connection therewith including, but not limited to, the Premium Financing Obligations and the Other Policy Obligations. Moreover, the Debtors request authority to revise, extend, supplement, renew, change, or enter into new insurance coverage, as needed, in their business judgment.

## AUTHORITY

**A.     Payment of the Insurance Obligations is Authorized Under Bankruptcy Code Sections 1107(a) and 1108.**

21.     The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating

7

6542458v5

the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

22. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*; *see also In re Mirant Corp.*, 296 B.R. 427, 429–30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the *CoServ* test or whose payment was necessary "in the exercise of their business judgment . . . in order for the debtors to continue their respective businesses"). The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *CoServ*, 273 B.R. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

23. Payment of the Insurance Obligations and revision, extension, supplementation, renewal, change, or entering into new Insurance Policies, as needed, in their business judgment, meets the *CoServ* court's standard. As noted above, insurance coverage is required by the U.S. Trustee Guidelines. Moreover, as a fiduciary for the bankruptcy estates, the Debtors could be

8

6542458v5

violating their duties if they in any way jeopardize the coverage provided under the Insurance Policies.[3]

24. Second, as described above, non-payment of the Insurance Obligations could result in cancellation of the Insurance Policies, in which case the Debtors would not only be in violation of the U.S. Trustee Guidelines, but also at risk of being unable to find alternative insurance coverage and consulting services, or find such alternatives only at a much higher cost than the Debtors currently incur. Therefore, the potential harm and economic disadvantage that would stem from the cancellation of the Insurance Policies, and failure to renew the Insurance Policies or revise, extend, supplement, change, or enter into new insurance arrangements, as needed, in their business judgment, are grossly disproportionate to the amount of the Insurance Obligations, and the costs to renew, revise, extend, supplement, change or enter into new insurance coverage.

25. Accordingly, to meet their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, the Debtors must be authorized to pay the Insurance Obligations and revise, extend, supplement, renew, change, or enter into new Insurance Policies, as needed, in their business judgment. The Debtors thus seek authority to pay all Insurance Obligations that may become due with respect to the Insurance Policies if such payment is necessary in the Debtors' business judgment to avoid cancellation or interruption of insurance coverage or brokerage services. In addition, the Debtors seek authority to revise, extend, supplement, renew, change, or enter into new Insurance Policies, as needed, in their

---

[3] In addition, under state law, the Debtors may need to maintain the Workers' Compensation Programs. If the Debtors fail to maintain the Workers' Compensation Program, among other things, state law may prohibit the Debtors from operating their businesses.

6542458v5

business judgment, in accordance with the Debtors' pre-petition practice in the ordinary course of business.

### B. The Bankruptcy Code and the Doctrine of Necessity Support Payment of the Insurance Obligations.

26. Courts have relied on Bankruptcy Code sections 105(a), 363(b), 503, and as discussed above, 1107(a) and 1108 in authorizing payments of certain insurance obligations. The Court may authorize the Debtors to maintain the Insurance Policies under Bankruptcy Code sections 105(a) and 363(b)(1) because the relief requested is consistent with the value preservation policy underlying chapter 11.

27. Courts have authorized payment of pre-petition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authority to pay prepetition claims to certain vendors). The Debtors submit that there is sufficient business justification to grant the relief requested herein because failure to pay the Insurance Obligations would harm the Debtors' estates in several ways. The Insurance Carriers could refuse to renew the Debtors' Insurance Policies, which would require the Debtors to obtain replacement policies and possibly to reconfigure their risk management program. In turn, this would require the commitment of significant resources and could result in less favorable coverage or terms from the Debtors' insurers. Additionally, the Insurance Carriers could attempt to terminate the Debtors' existing policies, which could threaten the Debtors' ability to continue operating their businesses given the Debtors' obligations to maintain specific amounts and types of insurance coverage.

28.     Moreover, Bankruptcy Code section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses[,] including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The Court, therefore, can authorize the Debtors to use estate funds to pay any obligations under the Insurance Policies arising during or relating to the period after the Petition Date.

29.     Additionally, the proposed payments of pre-petition Insurance Obligations should be authorized under Bankruptcy Code section 105 and the "doctrine of necessity." Bankruptcy Code section 105(a), which codifies the inherent equitable powers of the Court, empowers this Court "to issue any order. . .necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);[4] *see also In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured

---

[4] The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger. See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

11

creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process."). The Debtors respectfully submit that payment of pre-petition Insurance Obligations is proper under Bankruptcy Code section 105, as the Debtors' Insurance Policies are essential to the preservation of the Debtors' businesses, properties, and assets and their ability to effect a successful reorganization.

30. Relief similar to the relief requested herein has been granted in this district in numerous other chapter 11 cases. *See, e.g.*, *In re Emas Chiyoda Subsea Limited*, No. 17-31146 (MI), Docket No. 49 (Bankr. S.D. Tex. Mar. 1, 2017); *In re Goodrich Petroleum Corp.*, No. 16-31975, Docket No. 41 (Bankr. S.D. Tex. Apr. 18, 2016); *In re Buccaneer Res., LLC*, No. 14-60041, Docket No. 177 (Bankr. S.D. Tex. Jul. 1, 2014); *In re Autoseis, Inc.*, No. 14-20130, Docket No. 61 (Bankr. S.D. Tex. Mar. 27, 2014); *In re ATP Oil & Gas Corp.*, No. 12-36187, Docket No. 137 (Bankr. S.D. Tex. Aug. 21, 2012).

**C.    Payment of the Premium Financing Obligations Is Warranted Under Bankruptcy Code Sections 361, 362, and 363.**

31. Under the Premium Financing Agreement, IPFS maintains security interests in all proceeds from the Insurance Policies covered under the Premium Financing Agreement. Security interests created by premium financing agreements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements. *See TIFCO, Inc. v. U.S. Repeating Arms. Co. (In re U.S. Repeating Arms Co.),* 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.),* 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981). As a secured creditor, IPFS would be entitled to seek relief from the automatic stay, either to cancel the Premium Financing Agreement in accordance with its terms, or to seek adequate protection of their investments. *See In re Universal Motor Express, Inc.,* 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the

financing agreement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

32. A secured creditor is entitled to adequate protection of the value of its security to protect it against diminution in the value of its collateral. Adequate protection may take many forms, including relief from the automatic stay and authority to apply unearned premiums to the outstanding debt. Where the unearned premiums have diminished to less than the amount of the outstanding debt, cash payments may suffice as adequate protection of the insurance premium financier's interest. *See TIFCO*, 67 B.R. at 999-1000. Accordingly, IPFS may be entitled to adequate protection of its interests in any unearned premiums under Bankruptcy Code section 363(e).

33. In addition, the use of estate assets to pay the Premium Financing Obligations constitutes a use of estate property that should be authorized under Bankruptcy Code section 363(b) so long as a sound business purpose exists for doing so. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983); *Fulton State Bank v. Schipper (In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991); *In re Global Crossing Ltd.*, 295 B.R. 726, 742 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *In re Gulf States Steel, Inc.,* 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002). The Debtors have determined, in the exercise of their business judgment, that financing the premiums related to the Insurance Policies under the Premium Financing Agreement enables the Debtors to maintain critical insurance coverage. Doing so is in the best interest of the Debtors' estates and of their creditors and, therefore, should be approved.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

34. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other

than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. In particular, the payment of the Insurance Obligations is necessary to prevent the immediate and irreparable damage to the Debtors' business, property, and assets and the increased costs that may arise if the Insurance Policies are allowed to lapse. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

35. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' 50 largest unsecured creditors on a consolidated basis; (c) Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103 (Attn: Matthew E. Tashman), and via email to mtashman@reedsmith.com, counsel to KeyBank National Association in its capacity as Agent and DIP Agent; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Insurance Carriers; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (i) any party required to be served under Bankruptcy Local Rule 9013-1(d) (parties (a) – (i) above, the "Notice Parties"). Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided

## CONCLUSION

The Debtors respectfully request that the Court enter an Order, substantially in the form attached to the Motion, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Houston, Texas
July 12, 2018

PORTER HEDGES LLP

By: */s/ Genevieve M. Graham*
John F. Higgins
State Bar No. 09597500
Eric M. English
State Bar No. 24062714
Genevieve M. Graham
State Bar No. 24085340
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

6542458v5

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion was served via CM/ECF on July 12, 2018.

*/s/ Genevieve M. Graham*
Genevieve M. Graham