## MASTER STAFFING SERVICES AGREEMENT

This Master Staffing Services Agreement (this "Agreement") is entered into between Neighbors Health, LLC, a Texas limited liability company (hereinafter referred to as "Neighbors"), and Neighbors Physician Group, LLC, a Texas limited liability company (hereinafter referred to as "NPG") (each referred to as a "Party" and collectively as the "Parties"). The "Effective Date" of this Agreement shall be the date that this Agreement is executed by Neighbors.

### RECITALS:

WHEREAS, Neighbors and its affiliates are engaged in construction, operation and management of facilities which provide urgent medical care and outpatient emergency medical services as their primary service, in various locations in Texas and other states;

WHEREAS, NPG is engaged in the business of physician management and staffing services;

WHEREAS, NPG is wholly owned and operated by physicians licensed to practice in the State of Texas, each of whom is in good standing; and

WHEREAS, Neighbors desires to engage NPG to provide staffing services for its facilities (each a "Neighbors' Facility" or the "Facility") on an ongoing basis and NPG desires to be engaged by Neighbors for such services.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

**Section 1. Relationship of the Parties**

    A. NPG shall be an independent contractor of and to Neighbors. Anything in this Agreement notwithstanding, NPG, through its Executive Medical Director, shall retain the authority to direct the medical practice of the licensed physicians that it supplies to the Neighbors Facilities. Neighbors shall neither exercise control over nor interfere with any physician-patient relationship, but rather such relationships shall be maintained strictly between physicians placed by NPG with Neighbors and their patients.

    B. Each Party shall be solely responsible for and shall comply with all state and federal laws, statutes and regulations applicable to such Party and its respective business operations.

**Section 2. Services to be provided by NPG**

1

**EXHIBIT A**

A. NPG shall provide to Neighbors physician recruiting and management services as may be reasonably necessary for the day-to-day operations of Neighbors. NPG shall provide such services with the intent of assisting Neighbors in the enhancement of the operational efficiencies, patient care services and financial performance of Neighbors.

B. Medical services shall be provided solely under the direction and supervision of physicians provided by NPG and, in the performance of such medical duties, they shall not be subject to any directions or control by Neighbors.

C. During the term of this Agreement, NPG shall supervise and maintain physician personnel records relating to the physicians with whom it contracts. NPG's management of all files and records shall comply with applicable state and federal statutes.

D. NPG shall comply with all applicable federal, state and local laws, regulations and restrictions in the conduct of its obligations under this Agreement.

E. Upon reasonable, non-arbitrary request by Neighbors, NPG shall remove from service under this Agreement any physician who (1) is convicted of a felony or a misdemeanor related to the provision of health care, (2) has a guardian or trustee of its person or estate appointed by a court of competent jurisdiction, (3) becomes disabled so as to be unable to perform the duties required by this Agreement, (4) fails to satisfy all conditions for maintenance of professional liability insurance, (5) shall have his or her license(s) and/or privileges required to perform the services contemplated by this Agreement either suspended, revoked or otherwise limited in any material respect, (6) fails to comply with any of the material terms and conditions of Neighbors' Medical Staff Bylaws, this Agreement or any agreement between such physician and NPG, or (7) in the sole discretion of Neighbors, such physician is disruptive to the orderly operation of the Facility.

**Section 3. Management and Administrative Services Agreement**

Neighbors shall provide to NPG such general administrative, management, consulting, financial and business office services as may be reasonably necessary for the day-to-day operations of NPG, as more fully described in the Management and Administrative Services Agreement executed by the Parties and appended hereto as Exhibit "A." Neighbors shall provide such services with the intent of assisting NPG in the enhancement of the operational efficiencies, ancillary patient services and financial performance of NPG. Under no circumstances shall Neighbors control, direct, or intervene in any way or manner, the professional medical services provided by NPG, by and through its independent contractor physicians.

**Section 4. Supervision of Practice**

The independent contractor physicians provided by NPG shall be, in their performance of their medical duties, subject solely to the direction and supervision of the Executive Medical Director of NPG and, in the performance of such medical duties, they shall not be subject to any direction or control by Neighbors. Neighbors and NPG jointly shall maintain and publish from time to time Medical Staff Bylaws that shall address disciplinary procedures and standards of conduct for all NPG physicians providing services within Neighbors' Facilities. The Executive Medical Director of NPG shall adopt and incorporate the provisions of such Medical Staff Bylaws in all policy handbooks and practice guidelines utilized by NPG.

**Section 5. Records**

A. Neighbors shall preserve the confidentiality of patient medical records and use information contained in such records only for the limited purpose of, and to the extent necessary to, perform the services set forth herein.

B. During the term of this Agreement, Neighbors shall supervise and maintain custody of files and records relating to the operations of NPG. The management of all files and records of NPG by Neighbors shall comply with applicable state and federal statutes.

C. During the term of this Agreement, and thereafter, NPG or its designees or representatives shall have reasonable access during normal business hours to the financial records of Neighbors as they relate to the engagement of independent contractor physicians for Neighbors. These include, but are not limited to, records of collections, expenses and disbursements in performing its obligations under this Agreement, and NPG may, at its expense, copy any or all such records.

D. <u>Access to Records</u>. To the extent required by law, upon the written request of the Secretary of the Department of Health and Human Services, the Comptroller General or any of their duly authorized representatives, NPG shall make available those contracts, books, documents and records necessary to verify the nature and extent of the costs of providing services under this Agreement. Such inspection shall be available for up to four (4) years after the rendering of such services. If NPG carries out any of the duties of this Agreement through a subcontract with a value of Ten Thousand Dollars ($10,000.00) or more over a twelve (12) month period with a related individual or organization, NPG agrees to include this requirement in any such subcontract. This Section is included pursuant to and is governed by the requirements of 42 U.S.C. Section 1395x(v)(1) and the regulations thereto. No attorney-client, accountant-client, or other legal privilege will be deemed to have been waived by Neighbors, NPG or any physician by virtue of this Agreement.

**Section 6. Insurance**

A. <u>NPG Insurance</u>. NPG shall obtain and keep in force during the term of this Agreement and any renewal term, professional liability insurance covering the obligations of NPG and each physician, and shall ensure that such liability insurance coverage is current for any other persons contracting with NPG for the delivery of the services hereunder, for claims arising from the providing of the services hereunder. Said policy shall contain minimum limits of liability of One Million Dollars ($1,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) annual aggregate. If such insurance is maintained on a claims-made basis, such insurance shall continue throughout the term of this Agreement, and upon the termination of this Agreement, or the expiration or cancellation of the insurance, NPG shall purchase, or arrange for the purchase by its physicians of, either (i) an extended reporting endorsement ("Tail Coverage") for a period mutually agreed to by the Parties, (ii) "Prior Acts" coverage from the new insurer with a retroactive date on or prior to the date NPG began performing services at Neighbors' Facilities, or (iii) maintain continuous coverage with the same carrier for the period of the statute of limitations for personal injury. All such insurance shall be kept and maintained without cost or expense to Neighbors.

B. <u>Neighbors Insurance</u>. During the term of this Agreement and for the period of the statute of limitations for personal injury, Neighbors shall keep and maintain, at its sole cost and expense, professional and general liability coverage for the acts and omissions of Neighbors, its officers, directors, employees and agents (excluding NPG and physicians should it or they be deemed to be agents notwithstanding the contrary intent of the Parties). All such insurance shall be issued upon such forms and in such amounts that Neighbors deems appropriate, and such insurance may be in the form of self-insurance provided that proof of such coverage shall be made available to NPG on request.

**Section 7. Indemnification**

Each of the Parties agrees as follows:

A. Neighbors shall indemnify and hold NPG harmless from and against any and all loss, cost, or damages arising from: (a) any damages resulting from any misrepresentation, breach of warranty or non-fulfillment of any term, condition, or covenant on the part of Neighbors under this Agreement, or from any misrepresentation or omission set forth in any certificate or other instrument furnished or to be furnished to NPG in accordance with the provisions of this Agreement; (b) any neglect or willful act or omission by Neighbors or its employees, directors, officers, or agents; and (c) all actions, suits, proceedings, demands, assessments, judgment, costs and expenses, including reasonable attorneys' fees and expenses, incident to any of the foregoing.

4

B. NPG shall indemnify and hold Neighbors harmless from and against any and all loss, cost or damages arising from: (a) any damages resulting from any misrepresentation, breach of warranty or non-fulfillment of any term, condition or covenant on the part of NPG under this Agreement, or from any misrepresentation or omission set forth in any certificate or other instrument furnished or to be furnished to Neighbors with the provisions of this Agreement; (b) any negligent or willful act or omission by NPG or its employees, directors, officers or agents; and (c) all actions, suits, proceedings, demands, assessments, judgment, costs and expenses, including reasonable attorneys' fees and expenses, incident to any of the foregoing.

C. In the event that any claim is asserted against a Party which is entitled to indemnification hereunder (the "Indemnified Party"), the Indemnified Party shall promptly after learning of such claim notify the other Party (the "Indemnifying Party") thereof in writing; provided, however, that the failure of the Indemnified Party to give prompt notice of such claim as aforesaid shall not relieve the obligation of the Indemnifying Party with respect to such claim. The Indemnifying Party shall have the right, by giving written notice to the Indemnified Party within ten (10) calendar days after receipt from the Indemnified Party of notice of such claim, to conduct at its expense the defense against such claim in its own name, or, if the Indemnifying Party shall fail to give such notice, it shall be deemed to have elected not to conduct the defense of the subject claim, and in such event the Indemnified Party shall have the right to conduct such defense and to compromise and settle the claim without the prior consent of the Indemnifying Party. In the event that the Indemnifying Party elects to conduct the defense of the subject claim, the Indemnified Party shall cooperate with and make available to the Indemnifying Party such assistance and materials as may be reasonably requested at the expense of the Indemnifying Party, and the Indemnified Party shall have the right at its expense to participate in the defense, provided that the Indemnified Party shall have the right to compromise and settle the claim only with the prior written consent of the Indemnifying Party. No legal proceeding in which the Indemnified Party is named as a party shall be settled by the Indemnifying Party without the Indemnified Party's prior written consent, which consent shall not be unreasonably withheld, unless such settlement or compromise (a) affects no substantive rights of the Indemnified Party, (b) involves no admission of fault by the Indemnified Party, and (c) creates no obligations or liabilities for the Indemnified Party. Any judgment entered or settlement agreed upon in the manner provided herein shall be binding upon the Indemnifying Party, and shall conclusively be deemed to be an obligation with respect to which the Indemnified Party is entitled to indemnification hereunder.

D. The terms and conditions of this Section shall survive the expiration or termination of this Agreement.

**Section 8. Term of Agreement**

A. This Agreement shall commence on the date such Agreement is executed by Neighbors and shall expire five (5) years therewith, unless terminated pursuant to the terms hereof.

B. Unless earlier terminated as provided for in this Section 8, the term of this Agreement shall be automatically extended for additional terms of five (5) years each, unless either Party delivers to the other Party, not less than sixty (60) days prior to the expiration of the then preceding term, written notice of the intention of such Party to decline to extend the term of this Agreement.

C. Either Party may terminate this Agreement in the event the other Party shall materially default in the performance of any duty or obligation imposed on it by this Agreement and such default continues for a period of ninety (90) days after written notice thereof has been given to the Party in default. Notice shall be effective upon delivery.

**Section 8. Legal Compliance**

A. Notwithstanding any other provisions of this Agreement, if the governmental agencies, or their representatives or agents, that administer federal or state healthcare programs or any other federal, state or local governmental or nongovernmental agency, or any court of administrative tribunal passes, issues or promulgates any law, rule, regulation, standard, interpretation, order, decision or judgment, including, but not limited to, those relating to any Safe Harbor regulations pursuant to 42 U.S.C. § 1320a-7b (the "Anti-Kickback Statute") or any self-referral regulations pursuant to 42 U.S.C. § 1395nn (known as "Stark II"), or any similar state laws, or if any event occurs (collectively or individually, a "Legal Event"), which, in the good faith judgment of either Party, materially and adversely affects any Party's licensure, accreditation, certification or ability to refer, to accept any referral, to bill, to claim, to present a bill or claim, or to receive payment or reimbursement from any federal, state or local governmental or non-governmental payor, or which subjects either Party or any of its affiliates, to a risk of prosecution or civil monetary penalty, either Party may elect to amend this Agreement with mutually acceptable provisions to comply with the regulation at issue or if any provision of this Agreement is held to be invalid, contrary to, or in conflict with the regulation at issue, that provision shall be deemed to be severable and shall not impair the operation of, or have any other effect upon, such other provisions of this Agreement which shall continue to be given full force and effect and bind the Parties hereto.

B. The Parties understand with respect to the services provided hereunder, NPG is a "Business Associate" of Neighbors for federal and state privacy rule purposes. Accordingly, the Parties agree to execute a Business Associate Agreement in substantially the form attached as Exhibit "B" and incorporated herein. Additionally, Neighbors agrees that NPG and its physicians are considered to be part of an Organized Health Care Arrangement with Neighbors under which Neighbors is responsible for providing the Notice of Privacy Practices to patients, and for including NPG in such Notice.

6

    C. Corporate Practice of Medicine. Nothing contained herein is intended to (a) constitute the use of a medical license for the practice of medicine by anyone other than a licensed physician; (b) aid Neighbors or any other corporation to practice medicine when in fact such corporation is not licensed to practice medicine; or (c) constitute or result in any other act or create any other arrangement in violation of the Texas Medical Practice Act.

**Section 9. Miscellaneous**

    A. Confidentiality. NPG agrees that all information obtained pursuant to its work hereunder, whether from Neighbors or otherwise, shall be and remain confidential and may not be disclosed to any third party without prior written authorization from Neighbors. The provisions of this paragraph shall survive the expiration or earlier termination of this Agreement.

    B. Amendment; Extension; Waiver. No amendment, modification, waiver, replacement, termination or cancellation of any provision of this Agreement will be valid unless the same is in writing and signed by authorized representatives of the Parties hereto. Each waiver of a right hereunder does not extend beyond the specific event or circumstance giving rise to the right. No waiver by any Party of default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, may be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising because of any prior or subsequent occurrence. Neither the failure nor any delay on the part of any Party to exercise any right or remedy under this Agreement will operate as a waiver thereof, nor does any single or partial exercise of any right or remedy preclude any other or further exercise of the same or of any other right or remedy.

    C. Severability. If any provision of this Agreement shall be invalid or unenforceable for any reason and to any extent, the remainder of this Agreement shall not be affected thereby, but shall be enforced to the greatest extent permitted by law.

    D. Entire Agreement. This Agreement contains the entire agreement between the Parties with respect to the matters set forth in this Agreement. This Agreement supersedes all prior agreements with respect to matters set forth in this Agreement. No course of prior dealings between the Parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement, modify or vary any terms of this Agreement. There are no unsatisfied conditions to the full effectiveness of this Agreement.

    E. Assignment. Neither Party shall assign its rights under this Agreement without the prior written consent of the other Party.

F. <u>No Third-Party Consent Required</u>. No consent of any person (including creditors or partners, members, stockholder or other owners of either Party), except those consents provided as of the date hereof, is required in connection with the execution of this Agreement or to assume the obligations and performance of the Parties pursuant to this Agreement. The Parties' obligations under this Agreement are not contingent upon any consent, license, permit, approval, or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority, bureau or agency, whether local, state, federal or foreign.

G. <u>Headings</u>. The section headings in this Agreement are for purposes of reference only and shall not limit or otherwise affect any of the terms hereof.

H. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

I. <u>Notices</u>. Any notices or demands required or permitted by law or any provision of this Agreement shall be in writing and may be served upon the other Party by an overnight private mail service which provides delivery confirmation or by deposit in the United States Mail, registered or certified, with return receipt requested, postage prepaid, and addressed to said Party at the address set forth on the signature page below or at such other address as such Party may designate in writing.

J. <u>Due Authorization</u>. NPG and Neighbors stipulate and agree that their undersigned representatives' execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action.

K. <u>Third Party Beneficiaries</u>. None of the obligations and duties of NPG or Neighbors under this Agreement shall in any way or in any manner be deemed to create any obligation of NPG or Neighbors with regard to any person or entity who is not a party to this Agreement.

[*Signature Page to Follow*]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the 1st day of December, 2016, by and through their duly authorized officers, the day, month and year given below.

**Neighbors Physician Group, LLC ("NPG")**

By: Andy Chen, MD
Executive Medical Director

Address:  10800 Richmond Avenue
Houston, TX 77042

**Neighbors Health, LLC ("Neighbors")**

By: Setul Patel, MD
President and Chief Executive Officer

Address:  10800 Richmond Avenue
Houston, TX 77042