

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
09/12/2018

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS, INC.,** | § | **Case No. 18-33836** |
| ***et al.,*** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

### ORDER (A) APPROVING THE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

[Relates to Docket No. 20]

The above-referenced debtors and debtors-in-possession (collectively, the "Debtors") filed their motion (the "Motion")[2] for entry of an order (this "Order") approving the sale (the "Sale") of Debtors' assets free and clear of all liens, claims, encumbrances, and interests. This Order approves: (a) the separate Sales of the Debtors' assets, as specified further herein, to Altus Health Systems OPCO, LLC and Altus Health System Realty, LLC; AEC ER 4, LLC; Exceptional H.C., Inc.; Greater Texas Emergency Centers, LLC; and Tenet Business Services Corporation (or any permitted assignee) (each a "Buyer", and, collectively, the "Buyers") pursuant to the respective Asset Purchase Agreements between the Debtors and each of the Buyers (as such agreements may have been and may be amended, restated or supplemented,

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/neighbors. The location of Debtors' principal place of business and the Debtors' service address is: 10800 Richmond Avenue, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the applicable Purchase Agreement (as defined herein), as applicable; *provided* that in the event of any conflict with respect to the meaning of a capitalized term between the Motion and any Purchase Agreement, the meaning ascribed to such term in the applicable Purchase Agreement shall control.

collectively, the "Purchase Agreements" and, each a "Purchase Agreement")[3]; and (b) the assumption and assignment of executory contracts and unexpired leases.

The Debtors filed their *Notice of Entry of Order (A) Authorizing and Scheduling an Auction for the Sale of Debtors' Assets and (B) Approving Auction and Bid Procedures, Including Payment of Bid Protections* (the "Bid Procedures Order") [Docket No. 203] stating that the Debtors would conduct an auction (the "Auction") for the Assets in the event that the Debtors received a Qualified Bid prior to the Bid Deadline; and the Debtors, having conducted the Auction, filed their *Notice of Highest and Best Bids* [Docket No. 324] identifying the Buyers as the bidders submitting the highest and best bids for the Assets in accordance with the Bid Procedures Order.

The Court finds that the relief requested in the Motion is in the best interests of the Debtors and their estates and all other parties in interest and, having reviewed the Motion and having heard the statements and evidence in support of the relief requested therein at a hearing before the Court on August 8, 2018, where the Court considered and approved entry of the Bid Procedures Order (the "Bid Procedures Hearing") and the hearing before the Court that commenced on September 6, 2018, where the Court considered entry of this Order (the "Sale Hearing"), the Court further finds that the legal and factual bases set forth in the Motion, at the Bid Procedures Hearing, and at the Sale Hearing establish just cause for the relief granted herein. Pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014, the Court makes the following **FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

---

[3] The Purchase Agreements are attached hereto as Exhibits A-E.

## Jurisdiction and Venue

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).  Venue in this district is allowed under 28 U.S.C. § 1408.

## Statutory Predicates

B.      The statutory and other legal bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.  The consummation of the transactions contemplated by the Purchase Agreements and this Order (collectively, the "Transactions") is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and the Debtors and the Buyers and their affiliates have complied with all of the applicable requirements of such sections and rules in respect of the Transactions.

## Notice

C.      As evidenced by the affidavits and/or certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of, *inter alia*, the Motion, the Bid Procedures,[4] the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyers of the Desired 365 Contracts, the proposed cure costs with respect to any defaults under the Desired 365 Contracts (the "Cure Costs"), the Sale Hearing, and all deadlines related thereto, have been provided, as relevant, in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and in compliance with the Bid Procedures Order to all creditors, parties-in-interest, and other interested persons and entities.

---

[4] For the avoidance of doubt, the term "Bid Procedures" in this Order shall mean the Bid Procedures approved by the Bid Procedures Order.

6699031v19

D.      In accordance with the Bid Procedures Order, the Debtors served the Cure Notice on each of the non-Debtor counterparties to the Desired 365 Contracts. The service of the Cure Notice was sufficient under the circumstances and in full compliance with the Bid Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyers of the Desired 365 Contracts or the Cure Costs. All non-Debtor counterparties to the Desired 365 Contracts have had an adequate opportunity to object to the assumption and assignment of the Desired 365 Contracts and the Cure Costs.

E.      The notice described in the foregoing paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyers of the Desired 365 Contracts, the Cure Costs, the Sale Hearing, and all deadlines related thereto is or shall be required.

**Marketing and Sale Process**

F.      The Sale of the Assets to the Buyers is duly authorized pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f). As demonstrated by (i) testimony and other evidence proffered or adduced at the Bid Procedures Hearing and the Sale Hearing and (ii) the representations of counsel made on the record at the Bid Procedures Hearing and the Sale Hearing, the Debtors and their professionals, agents, and other representatives have marketed the Assets and conducted all aspects of the sale process in good faith and, where applicable, in compliance with the Bid Procedures and the Bid Procedures Order. The marketing process undertaken by the Debtors and their professionals, agents and other representatives with respect to the Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders. The Bid Procedures

4

and the Auction were duly noticed, were substantively and procedurally fair to all parties, and were conducted in a diligent, non-collusive, fair and good-faith manner. The Purchase Agreements collectively constitute, in the aggregate, the highest and best offers for the Assets.

G.     The Bid Deadline passed at 5:00 p.m. (prevailing Central Time), on August 22, 2018. The Debtors conducted an Auction commencing on August 27, 2018 and concluding on August 28, 2018, in accordance with the Bid Procedures and Bid Procedures Order. On August 29, 2018, at Docket No. 324, the Debtors filed their *Notice of Highest and Best Bids* identifying the Buyers as the Successful Bidders submitting the highest and best bids for the Assets in accordance with the Bid Procedures Order. As established by the record of the Bid Procedures Hearing and the Sale Hearing, the bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors and the Buyers and all of their affiliates. The Bid Procedures afforded a full, fair and reasonable opportunity for Qualified Bidders to make a higher or otherwise better offer to purchase the Assets, and no such offer was received by the Debtors.

**Corporate Authority**

H.     The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. The Debtors (i) have full corporate power and authority to execute the Purchase Agreements and all other documents contemplated thereby, and the Sale to the Buyers has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the Sale and the Transactions contemplated by the Purchase Agreements, (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreements and the consummation by the Debtors of the Sale and the Transactions contemplated

6699031v19

thereby, and (iv) require no consents or approvals, other than those expressly provided for in the Purchase Agreements, to consummate the Transactions.

### Highest and Best Bid; Business Judgment

I.      The Debtors have demonstrated a sufficient basis to enter into the Purchase Agreements, sell the Assets on the terms outlined therein, and assume and assign the Desired 365 Contracts to the Buyers under sections 363 and 365 of the Bankruptcy Code.  All such actions are appropriate exercises of the Debtors' business judgment and are in the best interests of the Debtors, their creditors, their estates and other parties in interest.  Approval of the Sale pursuant to the Purchase Agreements at this time is in the best interests of the Debtors, their creditors, their equity interest holders, their estates, and all other parties in interest.

J.      The offers of the Buyers, upon the terms and conditions set forth in the Purchase Agreements, including the total consideration to be realized by the Debtors thereunder, (i) collectively constitute the highest and best offer received by the Debtors as a result of their marketing process, including through the Bid Procedures and the Auction, (ii) are in the best interests of the Debtors, their creditors, their equity interest holders, their estates and other parties in interest, and (iii) constitute full and adequate consideration, is fair and reasonable and constitute reasonably equivalent value, fair consideration, and fair value for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and under the laws of any state, territory, or possession of the United States, or the District of Columbia.  Taking into consideration all relevant factors and circumstances, no other person or entity has offered to purchase the Assets for greater economic value to the Debtors or their estates.

K.      There has been no showing that any of the Debtors or Buyers (i) has entered into the Purchase Agreements or proposes to consummate the Transactions for the purposes of

6

hindering, delaying, or defrauding the Debtors' present or future creditors or (ii) is entering into the Purchase Agreements or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

L.      The sale of the Assets outside a chapter 11 plan pursuant to the Purchase Agreements neither impermissibly restructures the rights of the Debtors' creditors or equity interest holders nor impermissibly dictates the terms of a chapter 11 plan of the Debtors.  The sale of the Assets does not constitute a *sub rosa* chapter 11 plan.

### Opportunity to Object

M.      A reasonable opportunity to object or be heard with respect to the Motion, the Bid Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyers of the Desired 365 Contracts, the Cure Costs, the Sale Hearing, and all deadlines related thereto has been afforded to all creditors, equity holders, parties-in-interest, and other interested persons and entities.

### Good Faith Purchaser; Arm's Length Sale

N.      The Purchase Agreements were negotiated, proposed, and entered into by the Debtors and the Buyers without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtors, the Buyers, nor any parent or affiliate of the Buyers has engaged in any conduct that would cause or permit the Purchase Agreements or the Sale to be avoided or otherwise challenged under section 363(n) of the Bankruptcy Code.

6699031v19

O.     Each Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions (including, without limitation, the Purchase Agreements and the assumption and assignment of the Desired 365 Contracts to the Buyers or their affiliates), unless such authorization is duly stayed pending such appeal prior to the Closing (as defined in the Purchase Agreements).

P.     Neither the Buyers nor any of their affiliates, members, officers, directors, shareholders or any of their respective successors or assigns is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code, and the Buyers and their professionals, agents and other representatives have complied in all respects with the Bid Procedures Order and all other applicable orders of this Court with respect to the Purchase Agreements.

## Free and Clear Transfer Required by Buyers

Q.     If the Debtors did not sell the Assets free and clear of all Liens, Claims, and Interests, such a sale would have yielded substantially lower value for the Debtors' estates, with less certainty than the Sale. The Buyers would not have submitted bids or entered into the Purchase Agreements, and would not consummate the Sale, thus adversely affecting the Debtors, their estates, and their creditors, if each of the Sale and the assumption and assignment of the Desired 365 Contracts to the Buyers were not free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever, or if the Buyers would, or in the future could, be liable for any liabilities other than as agreed in the Purchase Agreements. For the avoidance of doubt, neither the Buyers nor any of their affiliates shall have any responsibility whatsoever with respect to the

6699031v19

Retained Liabilities, which shall remain the responsibility of the Debtors before, on, and after the Closing.

R.      As of the Closing, pursuant and subject to the terms of the Purchase Agreements and this Order, the transfer of the Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Assets and will vest the Buyers with all of the Debtors' rights, title, and interests in the Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever except for the Specifically Assumed Liabilities.

## Satisfaction of Section 363(f)

S.      The Debtors may sell the Assets free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever, including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  All parties in interest, including, without limitation, any holders of Liens, Claims, and/or Interests, and any non-Debtor counterparties to the Desired 365 Contracts, who did not object, or who withdrew their objection, to the Sale, the Motion, the assumption and assignment of the applicable Desired 365 Contract or the associated Cure Cost are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Liens, Claims, or Interests and non-Debtor parties to Desired 365 Contracts that did not object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code or are adequately protected by having their Liens, Claims, or Interests, if any, attach to the portion of the Sale Proceeds (as defined below) received by the Debtors ultimately attributable to the Assets against which they assert an interest, in the order of their priority, with the same validity, force

6699031v19

and effect, if any, which they now have against such Assets, subject to any claims and defenses the Debtors or their estates may possess with respect thereto.

## No Successorship

T.      Neither the Buyers nor any of their affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and neither the Buyers nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the Purchase Agreements.  No liability or obligation of any of the Debtors shall be binding on any of the Buyers except for those liabilities and obligations of the Debtors that are expressly (A) assigned by the Debtors and (B) are assumed by the Buyers, in writing pursuant to the terms and conditions of the applicable Purchase Agreement.  Any liability or obligation other than as described in the preceding sentence shall not be binding on the Buyers, nor shall the Buyers have any liability therefor. Except as expressly set forth in the Purchase Agreements, the transfer of the Assets to the Buyers under the Purchase Agreements shall not result in the Buyers having any liability or responsibility for (i) any Interest against the Debtors or against an insider of the Debtors, (ii) the satisfaction in any manner, whether at law or in equity, whether by payment, setoff, loss of rights or remedies or otherwise, directly or indirectly, of any Claim, Lien, or Interest, or (iii) to third parties or the Debtors, except as is expressly set forth in the Purchase Agreements.  Without limiting the effect or scope of the foregoing, the transfer of the Assets from the Debtors to the Buyers does not and will not subject the Buyers or their affiliates, successors or assigns or their respective properties (including the Assets) to any liability for Interests against the Debtors or the Debtors' Interests in such Assets by reason of such transfer under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to the

10

Transactions, including, without limitation, any bulk transfer laws, successor liability or similar theories. The Buyers are not a continuation of the Debtors or their respective estates and there is no continuity between the Buyers and the Debtors. The Buyers are not holding themselves out to the public as a continuation of the Debtors or their respective estates and the Transactions do not amount to a consolidation, merger or de facto merger of the Buyers and any of the Debtors and nothing in this Order shall be interpreted to deem the Buyers as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental laws or regulations for penalties for days of violation prior to Closing. Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under applicable non-bankruptcy law.

### Assigned Contracts and Assigned Leases

U.     The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume the Desired 365 Contracts and assign them to the Buyers in connection with the consummation of the Sale and (ii) that the assumption and assignment of the Desired 365 Contracts to the Buyers is in the best interests of the Debtors, their estates, their equity interest holders, their creditors, and other parties in interest. The Desired 365 Contracts being assigned to the Buyers are an integral part of the Assets being purchased by the Buyers and, accordingly, such assumption, assignment and cure of any defaults under the Desired 365 Contracts are reasonable and enhance the value of the Debtors' estates. Each and every provision of the Desired 365 Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Desired 365 Contract have been satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code. Any non-Debtor counterparty to a Desired 365 Contract that has not actually

11

filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment. Notwithstanding any other provision of this Order, the objections to certain proposed Cure Costs, including objections to proposed adequate assurance of future performance, [Docket Nos. 265, 270, 273, 284, 285, 288, 290, 291, 295, 296, 297, 298, 299, 300, 302, 303][5] (collectively, the "Cure Cost Objections") shall be heard by the Court on September 24, 2018, at 9:00 a.m. (Central Time), and the rights of any party that filed a Cure Cost Objection are hereby preserved and reserved in all respects with respect to any executory contract or unexpired lease that may constitute a Desired 365 Contract under the applicable Purchase Agreement.

### Cure Costs and Adequate Assurance

V.      The Debtors and the Buyers, as applicable, have, including by way of entering into their respective Purchase Agreements and agreeing to the provisions relating to the Desired 365 Contracts therein, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Desired 365 Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Desired 365 Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and each Buyer has, based upon the record of these proceedings, including the evidence proffered by the Debtors at the Bid Procedures Hearing and the Sale Hearing, provided adequate assurance of its future performance of and under the Desired 365 Contracts pursuant to sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  The Buyers promise under the Purchase Agreements to perform the obligations under the Desired

---

[5] The Debtors expressly reserve their right to contest the timeliness of any Cure Cost Objections.

365 Contracts after the Closing shall constitute adequate assurance of future performance under the Desired 365 Contracts being assigned to the Buyers within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The Cure Costs are hereby found to be the sole amounts necessary to cure any and all defaults under the Desired 365 Contracts under section 365(b) of the Bankruptcy Code and, upon payment of the portion of the Cure Costs with respect to which they are liable under the Purchase Agreements, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no further liability under the Desired 365 Contracts whatsoever other than to the Buyers pursuant to the Purchase Agreements.

### Time Is of the Essence; Waiver of Stay

W.     Time is of the essence in consummating the Sale. In order to maximize the value of the Assets, it is essential that the sale and assignment of the Assets occur within the time constraints set forth in the Purchase Agreements. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

## NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### Objections Overruled

1.     Except with respect to the Cure Objections, all objections to the entry of this Order or to the relief granted herein, whether filed, stated on the record before this Court which could have been raised but were not or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits. All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

2.     Notice of the Motion, the Bid Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Desired 365 Contracts, the Cure Costs, the Sale Hearing, and all deadlines related thereto

13

was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

### Approval of the Purchase Agreements

3.       The following, together with any amendments, if any, thereto, which collectively constitute the Purchase Agreements for purposes of this Order, including all of the terms and conditions thereof, are hereby approved:

i.       NEC Baytown Emergency Center, LP, NEC Crosby Emergency Center, LP, NEC Kingwood Emergency Center, LP, NEC Pasadena Emergency Center, LP, NEC Pearland Emergency Center, LP, and NEC Porter Emergency Center, LP, as Operating Sellers, NEC Baytown Asset Holdings, LLC, NEC Kingwood Asset Holdings, LLC, and NEC Pearland Asset Holdings, LLC as Owned Real Property Sellers, Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC as Corporate and Shared Services Sellers, Neighbors Emergency Center, LLC as IP Seller, and Altus Health Systems OPCO, LLC, as Opco Buyer, Altus Health System Realty, LLC, as Realty Buyer dated July 10, 2018, attached as **Exhibit 1**;

ii.       NEC Mueller Emergency Center, LP, as Operating Seller and Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate and Shared Services Sellers, and AEC ER 4, LLC, as Buyer dated September 12, 2018, attached as **Exhibit 2**;

iii.       NEC Amarillo Emergency Center, LP, NEC Beaumont Emergency Center, LP, NEC Lubbock Emergency Center, LP, NEC McAllen Emergency Center, LP, NEC Orange Emergency Center, LP, NEC Port Arthur Emergency Center, LP, as Operating Sellers, NEC Beaumont Asset Holdings, LLC, as Owned Real Property Seller, and Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate and Shared Services Sellers, and Exceptional H.C., Inc., as Buyer, dated September 12, 2018, attached as **Exhibit 3**;

iv.       NEC Bellaire Emergency Center, LP, NEC Yorktown Emergency Center, LP, NEC Midland Emergency Center, LP NEC Odessa Emergency Center, LP, NEC Texarkana Emergency Center, LP, NEC Paris Emergency Center, LP, as Operating Sellers, and Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate

14

and Shared Services Sellers, and Greater Texas Emergency Centers, LLC, as nominee for various LLCs to be designated as the acquiring entities (collectively referred to as "BUYER") as Buyer, dated September [__], 2018, attached as **Exhibit 4**; and

v.   NEC Eastside Emergency Center, LP, NEC Brownsville Emergency Center, LP, and NEC Harlingen Emergency Center, LP, as Operating Sellers, and Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate and Shared Services Sellers, and Tenet Business Services Corporation, as Buyer, dated September 12, 2018, attached as **Exhibit 5**.

4.     Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized to sell the Assets to the respective Buyers subject to the terms of their respective Purchase Agreements and this Order and take any and all actions necessary to fulfill their obligations under, and comply with the terms of, the Purchase Agreements and to consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreements and this Order, without further leave of the Court.  The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs that are required to be paid in order to consummate the Transactions contemplated by the Purchase Agreements or perform their obligations under the Purchase Agreements, including breakup fees, and reimbursement of expenses, owed to the Stalking Horse Bidders (as defined in the Bid Procedures).  For the avoidance of doubt, in the event that the Transaction with Altus Health Systems OPCO LLC and Altus Health Systems Realty LLC ("Altus") fails to close, Altus shall be entitled to receive Bid Protections to the extent provided in the Bid Procedures Order and the Altus Purchase Agreement.

5.     The Debtors are authorized, in accordance with the Purchase Agreements, to execute and deliver, and empowered to perform under, consummate, and implement, the Purchase Agreements, together with all additional instruments, documents, and other agreements

15

that may be reasonably necessary or desirable to implement the Purchase Agreements, and to take all further actions as may be reasonably requested by the Buyers for the purpose of assigning, transferring, granting, conveying and conferring to the Buyers or reducing to possession, the Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreements.

6.      Subject to the terms and conditions of this Order, all entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Buyers or their assignees on the Closing Date.

7.      The Buyers and the Debtors have no obligation to proceed with the Closing unless and until all conditions precedent to their respective obligations to do so, as set forth in their respective Purchase Agreements, have been met, satisfied or waived in accordance with the terms of their respective Purchase Agreements.

8.      Subject to the terms of the *Final Order (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and Granting Adequate Protection, and (B) Authorizing Debtor to Obtain Postpetition Financing and Granting Liens and Superpriority Claims*, upon consummation of the Sale, all cash proceeds of the Sale (the "Sale Proceeds") transferred to the Debtors shall be paid by the Debtors to the DIP Agent and, thereafter, to the Agent, to be applied to the obligations owing under their applicable credit facilities, provided that upon the Closing, the Debtors shall be permitted to retain a portion of the sale proceeds sufficient to satisfy all costs and expenses set forth in a revised Budget to be reasonably acceptable to the DIP Agent and the Agent covering the time period from the Closing until the effective date of any plan confirmed by the Court. All Liens, Claims, and Interests will attach to

6699031v19

the Sale Proceeds to the same extent and with the same priority as existed prior to consummation of the Sale.

9.       At the conclusion of the Auction, the Debtors selected Nitya Health Operations LLC and Nitya Health RE LLC to be the "Back-up Bidder" (the "Nitya Back-up Bidder") as defined in the Bid Procedures, for certain facilities[6] and Greater Texas Emergency Center, LLC to be the Back-up Bidder (the "Greater Texas Back-up Bidder" and together with the Nitya Back-up Bidder, the "Back-up Bidders") for the Debtors' Yorktown facility (excluding accounts receivable).

10.      Notwithstanding anything to the contrary herein, the form of the Asset Purchase Agreement with Greater Texas is not finally approved by this Order.  Final approval will be at a hearing to be conducted on September 14, 2018 at 10:00 a.m.  If the Debtors and Greater Texas have not agreed on the form of the Asset Purchase Agreement by that time, the Court will dictate the terms and both Greater Texas and the Debtors have agreed to be bound by the Court's determination.  The rights of parties-in-interest to object to the final form of Asset Purchase Agreement (as dictated by the Court or otherwise) is preserved in this Order, but must be exercised at the September 14, 2018 hearing or is waived.

11.      Notwithstanding anything to the contrary herein, the form of the Asset Purchase Agreement with the Back-up Bidders will be considered at a telephonic hearing on September 18, 2018 at 1:30 p.m.   If the parties have not agreed on the form of the Asset Purchase Agreement by that time, the Court will schedule further proceedings on that issue, consistent with the terms of this Order.

---

[6] The Nitya Back-Up Bidder is the Back-Up Bidder for Baytown, Bellaire, Crosby, Kingwood, Pearland, Pasadena, Porter, Amarillo, Beaumont, Brownsville, Eastside, Harlingen, McAllen, Midland, Mueller, Odessa, Paris, Port Arthur, Texarkana.

17

12.     In the event that Debtors accept the bids of the Back-up Bidders, in accordance
with the terms hereof and on the terms and conditions of the Back-up Purchase Agreements, the
Debtors shall be permitted to close a sale to the Back-up Bidders. Further in the event that the
Debtors close a sale transaction with the Back-up Bidders (the "Back-up Transaction") this
Order and all relief granted herein and all protections afforded hereby shall apply to the Back-up
Bidders as the buyers in such Back-up Transaction, and the Back-up Bidders shall be considered
"Buyers" for purposes hereof and shall also apply to such Back-up Transaction with full force
and effect and such Back-up Transaction shall be considered a "Transaction" for all purposes
hereof.

## Binding Effect of Order

13.     This Order and the Purchase Agreements shall be binding upon all creditors of,
and equity interest holders in, the Debtors and any and all other parties in interest, including,
without limitation, any and all holders of Liens, Claims, and Interests (including holders of any
rights or claims based on any putative successor or transferee liability) of any kind or nature
whatsoever, all non-Debtor parties to the Desired 365 Contracts, the Buyers, the Debtors and
their affiliates and subsidiaries, and any trustee or successor trustee appointed in the Debtors'
Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code or any
subsequent bankruptcy that may be filed by the Debtors.  The Purchase Agreements and the
Transactions are not subject to rejection or avoidance (whether through any avoidance,
fraudulent transfer, preference or recovery, claim, action or proceeding arising under chapter 5 of
the Bankruptcy Code or under any similar state or federal law or any other cause of action) by
the Debtors, any chapter 7 or chapter 11 trustee of the Debtors' bankruptcy estates or any other
person or entity.  The Purchase Agreements, this Order, and the Debtors' obligations therein and
herein shall not be altered, impaired, amended, rejected, discharged or otherwise affected by any

18

chapter 11 plan proposed or confirmed in these bankruptcy cases, any order confirming any chapter 11 plan, or any subsequent order of this Court without the prior written consent of the Buyers, to the extent of any conflict between this Order or any Purchase Agreement and such future plan or order, the terms of this Order and the applicable Purchase Agreement shall control.

## Amendments to Purchase Agreements

14.    The Purchase Agreements and any related agreements, documents, or other instruments may be modified, amended, supplemented or restated by the parties thereto in a writing signed by both parties and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, supplement or restatement does not have a material adverse effect on the Debtors' estates.

## Transfer of the Assets Free and Clear

15.    The Buyers shall assume and be liable for only those liabilities expressly assumed by Buyers pursuant to the Purchase Agreements.  Except as expressly permitted or otherwise specifically provided for in the Purchase Agreements or this Order, pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing, the Assets shall be transferred to the Buyers free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever.  For purposes of this Order, "Liens," "Claims," and "Interests" shall mean:

       a.    any and all encumbrances, charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of offset, setoff and recoupment, successor liability, interests or rights under any agreement that is not a Desired 365 Contract, encroachments, encumbrances, restrictions on transferability of any type, any dedication under any gathering, transportation, treating, purchasing or similar agreement that is not assumed by or assigned to the Buyer, any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Assets, any

similar rights, and third-party interests or any other restrictions or limitations of any kind with respect to the Assets (collectively, "Liens");

b.    any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA (as defined below), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§2101 et seq.), (ii) any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability, (iii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (iv) any rights related to intercompany loans and receivables between the Debtors and any non-Debtor subsidiary or affiliate, (v) any and all claims or causes of action based upon or relating to any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not a Desired 365 Contract that will be assumed and assigned pursuant to this Order and the Purchase Agreement, (vi) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (vii) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority, and (viii) any and all other claims, causes of action, proceedings, warranties, guaranties, rights of recovery, setoff, recoupment, rights, remedies, obligations, liabilities, counterclaims, cross-

claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective affiliates, subsidiaries, directors, officers, agents, successors or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the Debtors' marketing and bidding process with respect to the Assets, the Assigned Contracts, the Assets, or the Transactions contemplated by the Purchase Agreement (collectively, "Claims"); and

c.   any and all equity or other interests of any kind or nature whatsoever in or with respect to (x) any of the Debtors or their respective affiliates, subsidiaries, successors or assigns, (y) the Assets, or (z) the Assigned Contracts or Assigned Leases (collectively, "Interests");

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing. Any and all such Liens, Claims, and Interests shall attach to the portion of the Sale Proceeds received by the Debtors ultimately attributable to the Assets against which they assert an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Assets, subject to any claims, defenses and objections, if any, that the Debtors or their estates may possess with respect thereto.

16.   Subject to and upon the occurrence of the Closing Date, except for the express rights and obligations of the Debtors and the Buyers under the Purchase Agreements after the Closing Date and any claims arising therefrom, the Debtors, their estates, and their successors or assigns, including any trustee under the Bankruptcy Code, to the extent permitted by law, are hereby deemed to have irrevocably and unconditionally released, remised, and forever

21

discharged each Buyer (and, with respect to each such Buyer, each of such Buyer's equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their respective capacity as such with respect to each such Buyer in its capacity as the Buyer under the Applicable Purchase Agreement, and not with respect to any other capacity or relationship with the Debtors) from any and all any and all claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens ,indemnities, guaranties, and franchises of any kind or character whatsoever (including (x) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law, (y) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code, and (z) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code, except to the extent asserted defensively in connection with any claim or interest asserted in the bankruptcy cases), in each case whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors that such entity would have been legally entitled to assert (whether individually or collectively) or which the Debtors, their affiliates, their estates, or their successors or assigns might now or subsequently may have, in each case based on or relating to, or in any manner arising from, in whole or in part, the actions of the Buyer with respect to the Debtors, their postpetition business or operations, these chapter 11 cases, the Assets, the Desired 365 Contracts that are actually

assumed by the Debtors and assigned to the Buyer, the Auction, the Sale, the negotiation and documentation thereof, the transactions contemplated thereby, and the agreements and ancillary documents memorializing and effectuating such sale(including, without limitation, the Purchase Agreement, but excluding the express rights and obligations of the Debtors and the Buyer under the Purchase Agreement after the Closing Date).

17.     Buyers shall comply with (a) any internal privacy policy of the Debtors in effect as of Closing, and (b) the Health Insurance Portability and Accountability Act of 1995 and any similar laws or regulations applicable to the Debtors, to ensure that personally identifiable information, including any individually identifiable health information, is protected to the extent required under applicable law.

### Vesting of Assets in the Buyers

18.     The transfer of the Assets to the Buyers pursuant to the Purchase Agreements shall constitute a legal, valid, and effective transfer of the Assets on the Closing, and shall vest the Buyers with all of the Debtors' rights, title and interests in the Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever.  Upon releasing of any Liens, the Liens will attach to the Sale Proceeds received by the Debtors in the order and priority that existed prior to such releases.

19.     Each Buyer is hereby authorized in connection with the consummation of the Sale, but subject to the terms of the applicable Purchase Agreement, to allocate the Assets, including the Desired 365 Contracts, among its affiliates, agents, designees, assigns, and/or successors, in a manner as it in its sole discretion deems appropriate, and to assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Assets, including the Desired 365 Contracts, to its affiliates, designees, assignees and/or successors with all of the

rights and protections accorded to the Buyers under this Order and the Purchase Agreements with respect thereto, and the Debtors shall cooperate with and take all actions reasonably requested by the Buyer (at Buyer's expense unless otherwise provided in the Purchase Agreement) to effectuate any of the foregoing.

### Police and Regulatory Power of Governmental Units

20.     Nothing in this Order or any of the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Purchase Agreements authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets on account of the filing or pendency of these Chapter 11 Cases or, to the extent provided by section 525 of the Bankruptcy Code, the consummation of the Transactions contemplated by the Purchase Agreements, including, without limitation, the Sale and the Debtors' assumption and assignment of the Desired 365 Contracts to the Buyers. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

21.     This Order does not authorize any Buyer to operate in violation of applicable state law or regulation.  The Court expresses no view on whether the future operations will be

24

undertaken in a manner consistent with state law and will have no future supervisory role with respect to such operations; that is a matter left to the State of Texas.

**Assumption and Assignment of Assigned Contracts and Assigned Leases**

22.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Buyers of the Desired 365 Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

23.     The Debtors are hereby authorized, in accordance with the Purchase Agreements, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Buyers the Desired 365 Contracts, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever, which Desired 365 Contracts, by operation of this Order, shall be deemed assumed and assigned to the Buyers effective as of the Closing, and (ii) execute and deliver to the Buyers such documents or other instruments as the Buyers may deem necessary to assign and transfer the Desired 365 Contracts to the Buyers.

24.     Subject to the immediately preceding paragraph:

   a.     The Debtors are authorized to and shall assume all of the Desired 365 Contracts in accordance with section 365 of the Bankruptcy Code.

   b.     The Debtors are authorized to and shall assign each Desired 365 Contract to the Buyers in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Desired 365 Contract that prohibit or condition the assignment of such Desired 365 Contract on the consent of the non-Debtor counterparty thereto or allow the non-Debtor counterparty to such Assigned Contract or Assigned Lease to terminate, recapture, impose any penalty, condition, any renewal or extension, require a net worth requirement, or modify any term or condition upon the assignment of such Desired 365 Contract, shall constitute unenforceable anti-assignment provisions which are expressly preempted under section 365 of the Bankruptcy Code and be void and of no force or effect.

6699031v19

c.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Desired 365 Contracts by the Debtors to the Buyers have been satisfied.

d.    Upon the Closing, the Desired 365 Contracts shall be transferred and assigned to, and remain in full force and effect for the benefit of, the Buyers in accordance with their respective terms, notwithstanding any provision in any such Desired 365 Contract (including those of the type described in sections 365(b)(2), 365(e)(1) and 365(f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer.

e.    After the Debtors' transfer and assignment of the Desired 365 Contracts to the Buyers, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyers shall be fully and irrevocably vested in all right, title, and interest of each Desired 365 Contract free and clear of Liens, Claims, and Interests, and all non-Debtor counterparties to the Desired 365 Contracts are barred and enjoined from asserting against the Buyers or their assets, among other things, defaults, breaches or claims of pecuniary losses existing as of Closing or by reason of Closing.

f.    Any portion of any Assigned Lease which purports to permit a landlord thereunder to cancel the remaining term of such Assigned Lease if the Debtors discontinue their use or operation of the leased premises is void and of no force or effect, and shall not be enforceable against the Buyers, or their assignees and sublessees; and the landlords under any such Assigned Lease shall not have the right to cancel or otherwise modify the Assigned Lease or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assigned Lease to the Buyers, or the interruption of business activities at any of the leased premises.

g.    The failure of the Debtors to enforce at any time prior to the Closing Date one or more terms or conditions of any Desired 365 Contract shall not be a waiver of such terms or conditions, or of the Buyers' rights to enforce every term and condition of the Desired 365 Contracts.

h.    There shall be no rent accelerations, assignment fees, increases, or any other fees charged to any Buyer as a result of the assumption, assignment, and sale of the Desired 365 Contracts.

25.    All defaults and all other obligations of the Debtors under the Desired 365 Contracts occurring, arising or accruing prior to the assignment thereof to the Buyers at Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified

26

in section 365(b)(2) of the Bankruptcy Code) are deemed to have been cured or satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Desired 365 Contract set forth in a Cure Notice, which was served in compliance with the Bid Procedures Order, and is set forth on the schedule attached hereto as **Exhibit 6** (the "Cure Costs"), and which Cure Costs were satisfied, or shall be satisfied as soon as practicable, by the Debtors or by the Buyers, as the case may be, as provided in the Purchase Agreements.  For all Desired 365 Contracts for which a Cure Notice was served, the Debtors and the Buyer, as applicable, are each authorized and directed to pay their respective portion of all Cure Costs required to be paid by such parties in accordance with the Purchase Agreement upon the Closing. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability under any Desired 365 Contract that arises on or after the Closing Date, whether as a result of breach of a Desired 365 Contract on or after the Closing Date or otherwise other than to the Buyers pursuant to the Purchase Agreements.

### Ad Valorem Taxes

26.     The ad valorem tax liens of Brazoria County Tax Office, Crosby ISD, Crosby MUD, Harris County MUD #276, Humble ISD, City of Houston, Alief ISD, Valley Ranch MUD #1, Wichita County, Lubbock Central Appraisal District, Midland County, Tyler ISD, Potter County Tax Office, Angelina County, Cameron County, Cypress-Fairbanks ISD, City of El Paso, Ector CAD, Galveston County, Gregg County, City of Harlingen, Harlingen CISD, Harris County, Hidalgo County, Jefferson County, City of McAllen, Montgomery County, Orange County, Smith County, Texas City ISD, and Tom Green CAD (collectively, the "Taxing Authorities") for the 2018 tax year are hereby expressly retained against the Assets until payment is made to fully satisfy the 2018 ad valorem taxes, and any penalties or interest which may ultimately accrue to those 2018 taxes.

27

6699031v19

27.     Paragraph 46 of the *Final Order (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and Granting Adequate Protection, and (B) Authorizing Debtor to Obtain Postpetition Financing and Granting Liens and Superpriority Claims* (Doc. No. 193) (the "Final DIP Order") is incorporated by reference as if fully set forth herein.  In addition, the liens, if any, currently held by Brazoria County Tax Office, Crosby ISD, Crosby MUD, Harris County MUD #276, Humble ISD, City of Houston, Alief ISD, Valley Ranch MUD #1, Wichita County, Lubbock Central Appraisal District, Midland County, Tyler ISD, Potter County Tax Office (collectively, the "Additional Taxing Authorities") shall be subject to and entitled to the protections in paragraph 46 of the Final DIP Order.  For the avoidance of doubt, from the proceeds of the sale of any of the Debtors' assets located in the state of Texas that secure the claims filed by the Additional Taxing Authorities, unless modified as set forth in paragraph 46 of the Final DIP Order, the additional amount of $333,828.14 shall be set aside by the Debtors in the Taxing Authority Segregated Account (as defined in the Final DIP Order).

### No Successorship or Transferee Liability

28.     Neither the Buyers nor any of their affiliates are or shall be deemed, as a result of the consummation of the Transactions contemplated herein, to: (a) be legal successors to the Debtors or their estates by reason of any theory of law or equity, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect.  Neither the Buyers nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the Purchase Agreements or this Order.  Without limiting the effect or scope of the foregoing, as a result of the closing of the Transactions, except as set forth in the Purchase Agreements, the Buyers shall have no

6699031v19

successor, derivative or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of successor or transferee liability, antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, recorded or unrecorded, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, except as set forth in the Purchase Agreements, or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates, or otherwise as a result of the Transactions.

## Modification of the Automatic Stay

29.     The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Purchase Agreements and the provisions of this Order, without further order of the Court, including to allow:  (i) the Buyers to give the Debtors any notice provided for in the Purchase Agreements, and (ii) the Buyers and the Debtors take any and all actions permitted by the applicable Purchase Agreements in accordance with the terms and conditions thereof.

## Release of Liens By Creditors; Collection of Assets

30.     Except as expressly provided to the contrary in this Order or in the Purchase Agreements, each holder of any valid Lien, Claim or Interest against the Assets including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory

6699031v19

authorities, lenders, trade creditors, litigation claimants and other persons holding Lien, Claims, or Interests of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Debtors' interests in the Assets to the Buyers shall, as of the Closing, be deemed to have waived and released such Lien, Claim or Interest, without regard to whether such holder has executed or filed any applicable release, and such Lien, Claim or Interest shall automatically, and with no further action by any party, attach to the portion of the Sale Proceeds received by the Debtors ultimately attributable to the Assets against which they assert an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Assets, subject to any claims, defenses and objections, if any, that the Debtors, their estates, or any other party in interest may possess with respect thereto. All such entities referenced in the preceding sentence shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liens, Claims, or Interests against the Buyers, their successor and assigns, their affiliates and representatives or their interests in the Assets. Notwithstanding the foregoing, any such holder of such a Lien, Claim or Interest is directed to execute and deliver any waivers, releases, or other related documentation reasonably requested by the Debtors or the Buyers to evidence the release of its Liens, Claims, or Interests in the Assets. Any person or entity that has filed any financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens*, or any other documents or

agreements evidencing a Lien on the Debtors or any of the Assets conveyed pursuant to the Purchase Agreements and this Order is directed to deliver to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens which the person or entity has with respect to the Debtors or the Assets or otherwise.

31.     In the event that such termination statements, instruments of satisfaction, or releases of all Liens are not filed in accordance with the foregoing paragraph, the Debtors and the Buyers are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Assets of any kind or nature whatsoever.

### Effect of Recordation of Order

32.     This Order, if filed, registered, or otherwise recorded, shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims and Interests of any kind or nature whatsoever existing as to the Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected; provided that this Order shall be binding and effective regardless of whether any such filing, registration or recordation occurs.   The Liens, Claims and Interests that are unconditionally released, discharged, and terminated pursuant to this Order include, without limitation, those certain Liens, Claims, and Interests evidenced by the financing statements (as they pertain to the Assets), mortgages, deeds of trust, mechanic's liens, *lis pendens*, notations of liens on certificates of title etc.

33.     This Order, if filed, registered, or otherwise recorded, shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars

31

of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Assets; provided that this Order shall be binding and effective regardless of whether any such filing, registration or recordation occurs.

34.     Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreements, including, without limitation, recordation of this Order.

## Prohibition of Actions Against the Buyers

35.     Except for the Specifically Assumed Liabilities or as expressly permitted or otherwise specifically provided for in the Purchase Agreements or this Order, the Buyers and their affiliates shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets or otherwise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreements, the Buyers and their affiliates shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and the Buyers and their affiliates shall have no successor or vicarious liabilities of any kind or character including, without limitation, any theory of antitrust, warranty, product liability, environmental, successor or transferee liability, labor law, ERISA, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, without limitation,

liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing or any claims under the WARN Act or any claims related to wages, benefits, severance or vacation pay owed to employees or former employees of the Debtors.

36.     Effective upon the Closing, with the sole exception of any enforcement of rights related to the Specifically Assumed Liabilities, all persons and entities shall be, and hereby are, forever barred and estopped from (a) taking any action that would adversely affect or interfere with the ability of the Debtors to transfer the Assets to the Buyers in accordance with the terms of this Order and the Purchase Agreements and (b) asserting, prosecuting, or otherwise pursuing, whether in law or in equity, in any judicial, administrative, arbitral or other proceeding, any Liens, Claims or Interests of any kind or nature whatsoever against the Buyers and their successors, designees, assigns, or property, or the Assets conveyed under this Order in accordance with the Purchase Agreements.

## No Interference

37.     Following the Closing, no holder of a Lien, Claim and/or Interest in or against the Debtors or the Assets shall interfere with any Buyer's title to or use and enjoyment of the Assets based on or related to such Lien, Claim, and/or Interest or based on any actions the Debtors may take in their chapter 11 cases.  Moreover, following the entry of this Order, no unsuccessful Bidder (including the Back Up Bidder, and their respective officers, directors, employees, owners and representatives) will directly or indirectly interfere with the Buyers' consummation of the transactions contemplated in the Purchase Agreements and/or contact any of the Buyers to influence them with respect to fulfilling their obligations under their respective Purchase Agreements.

6699031v19

## Retention of Jurisdiction

38.     This Court retains jurisdiction prior to, on, and after Closing to, among other things, interpret, enforce and implement the terms and provisions of this Order and the Purchase Agreements, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, without limitation, retaining jurisdiction to:  (a) compel delivery of the Assets or performance of other obligations owed to the Buyers; (b) compel performance of obligations owed to the Debtors and/or the Buyers; (c) resolve any disputes arising under or related to the Purchase Agreements; (d) interpret, implement, and enforce the provisions of this Order; (e) compel delivery of any waivers, releases, or other related documentation reasonably requested by the Debtors or the Buyers to evidence the release of any Liens, Claims, or Interests in the Assets; (f) protect the Buyers and their affiliates against (i) any Liens, Claims and Interests in or against the Debtors, the Buyers, or the Assets of any kind or nature whatsoever and (ii) any creditors, equity interest holders, or other parties in interest regarding the turnover of the Assets to the Buyers that may be in their possession; and (g) protect the Buyers and the Debtors and their affiliates against any liabilities (other than any liabilities retained by the Debtors under the Purchase Agreements) in any way relating to the Assets arising on or after the Closing Date other than to the Buyers pursuant to the Purchase Agreements.

## No Stay of Order

39.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyers are free to close the Sale under the Purchase Agreements at any time pursuant to the terms

6699031v19

thereof. The Sale transactions contemplated by the Purchase Agreements are undertaken by the Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyers (including the assumption and assignment by the Debtor of any of the Assigned Contracts or Assigned Leases), unless such authorization is duly stayed pending such appeal.

### Good Faith Purchasers

40.     The Sales contemplated by the Purchase Agreements is undertaken by the Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Buyers have acted without collusion in undertaking the Sale and Transactions contemplated by the Purchase Agreements. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyers (including the assumption and assignment by the Debtors of any of the Desired 365 Contracts), unless such authorization is duly stayed pending such appeal. Each Buyer is a buyer in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

41.     There has been no showing that the Debtors or the Buyers engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

### Inconsistencies with Prior Orders, Pleadings or Agreements

42.     To the extent of any conflict between the Purchase Agreements and this Order, the terms of the Purchase Agreements shall govern the rights and obligations of the parties thereto. To the extent this Order is inconsistent or conflicts with any prior order or pleading in

35

these Chapter 11 Cases, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale.  For the avoidance of doubt, if the Debtors' chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, the Order shall be binding on the chapter 7 trustee in such chapter 7 cases.

### Failure to Specify Provisions

43.    The failure to specifically reference any particular provisions of the Purchase Agreements or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and other related documents be authorized and approved in their entirety.

### Non-Severability

44.    The provisions of this Order are non-severable and mutually dependent.

Dated:    9-12    , 2018
    Houston, Texas

MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

6699031v19