**UNSECURED CREDITOR TRUST AGREEMENT**

**dated as of _____, 2019**

**among**

**Neighbors Legacy Holdings, Inc., *et al*.**

**as Settlors**

**and**

**Mark Shapiro**

**as Unsecured Creditor Trustee**

**EXHIBIT B**

# TABLE OF CONTENTS

**Page**

ARTICLE 1 Establishment of the Unsecured Creditor Trust ........................................... 5

  1.1    Establishment of the Unsecured Creditor Trust and Appointment of Trustee............... 5

  1.2    Transfer of Assets and Rights to the Unsecured Creditor Trust. .................................. 5

  1.3    Nature and Purpose of the Unsecured Creditor Trust. ................................................. 6

  1.4    Incorporation of Plan. .................................................................................................. 8

  1.5    Funding Expenses of the Unsecured Creditor Trust. ................................................... 8

  1.6    Appointment as Representative. ................................................................................... 8

ARTICLE 2 Unsecured creditor Trust Beneficiaries................................................................ 8

  2.1    Allocation of Unsecured Creditor Trust Assets. .......................................................... 9

  2.2    Interests Beneficial Only................................................................................................ 9

  2.3    Evidence of Beneficial Interests. ................................................................................... 9

  2.4    Securities Law Registration. .......................................................................................... 9

  2.5    Transfers. ....................................................................................................................... 9

  2.6    Access to the Trust Register by the Unsecured Creditor Trust Beneficiaries............... 10

  2.7    Absolute Owners........................................................................................................... 10

ARTICLE 3 The Trustee ........................................................................................................... 10

  3.1    Unsecured Creditor Trust Proceeds. ............................................................................ 10

  3.2    Collection of Income..................................................................................................... 10

  3.3    Payment of Unsecured Creditor Trust Expenses. ........................................................ 11

  3.4    Distributions.................................................................................................................. 11

  3.5    Tenure, Removal, and Replacement of the Trustee...................................................... 11

  3.6    Acceptance of Appointment by Successor Trustee. ..................................................... 12

  3.7    Role of the Trustee........................................................................................................ 12

  3.8    Authority of Trustee...................................................................................................... 13

  3.9    Limitation of Trustee's Authority................................................................................. 15

  3.10   Books and Records. ...................................................................................................... 16

  3.11   Inquiries into Trustee's Authority................................................................................. 16

  3.12   Compliance with Laws. ................................................................................................ 17

  3.13   Compensation and Reimbursement of the Trustee. ..................................................... 17

  3.14   Reliance by Trustee....................................................................................................... 17

  3.15   Investment and Safekeeping of Unsecured Creditor Trust Assets................................ 17

3.16    Standard of Care; Exculpation. ............................................................................ 17

ARTICLE 4 The Oversight Committee ........................................................................... 18

4.1    Establishment of the Oversight Committee. ....................................................... 18

4.2    Composition; Replacement. ................................................................................. 18

4.3    Governance of the Oversight Committee. ........................................................... 18

4.4    Advice and Direction to Trustee. ........................................................................ 18

4.5    Removal of Oversight Committee Member. ........................................................ 19

4.6    Standard of Care; Exculpation. ........................................................................... 19

4.7    Reliance by Oversight Committee. ...................................................................... 19

4.8    Termination of the Oversight Committee. ........................................................... 19

ARTICLE 5 Tax Matters ................................................................................................. 19

5.1    Federal Income Tax Treatment of the Unsecured Creditor Trust. ....................... 19

5.2    Allocations of Unsecured Creditor Trust Taxable Income. ................................. 20

5.3    Tax Withholdings by Trustee. ............................................................................. 21

ARTICLE 6 Distributions ............................................................................................... 21

6.1    Distributions; Withholding. ................................................................................ 21

6.2    Unsecured Creditor Trust Claims Pending. ........................................................ 22

6.3    Manner of Payment or Distribution. ................................................................... 22

6.4    Cash Distributions. .............................................................................................. 22

6.5    Delivery of Unsecured Creditor Trust Distributions. ......................................... 22

6.6    Disputed Claims Reserve. ................................................................................... 23

ARTICLE 7 Indemnification ........................................................................................... 23

7.1    Indemnification of Trustee. ................................................................................. 23

ARTICLE 8 Net Recovery ............................................................................................... 24

8.1    No Effect on Mutuality. ....................................................................................... 24

8.2    Section 502(h). .................................................................................................... 24

8.3    Net Recovery. ...................................................................................................... 24

ARTICLE 9 Reporting Obligations Of Trustee .............................................................. 25

9.1    Reports. ................................................................................................................ 25

ARTICLE 10 Term; Termination of the Unsecured Creditor Trust ................................ 25

10.1    Term; Termination of the Unsecured Creditor Trust. ....................................... 25

10.2    Continuance of Trust for Winding Up. .............................................................. 26

ARTICLE 11 Amendment and Waiver ........................................................................... 26

11.1    Amendment and Waiver. ................................................................................... 26

ARTICLE 12  Miscellaneous Provisions.............................................................................27

12.1  Intention of Parties to Establish the Unsecured Creditor Trust. ...............................27

12.2  Litigation Costs. ........................................................................................................27

12.3  Laws as to Construction.............................................................................................27

12.4  Jurisdiction. ...............................................................................................................27

12.5  Severability. ..............................................................................................................27

12.6  Notices. .....................................................................................................................28

12.7  Fiscal Year. ...............................................................................................................29

12.8  Construction; Usage...................................................................................................29

12.9  Counterparts; Facsimile; PDF...................................................................................30

12.10  Entire Agreement. ...................................................................................................30

12.11  No Bond. .................................................................................................................30

12.12  Effectiveness. ..........................................................................................................30

12.13  Investment Company Act. .......................................................................................30

12.14  Successor and Assigns. ...........................................................................................30

12.15  Particular Words. ....................................................................................................30

12.16  No Execution. ..........................................................................................................30

12.17  Irrevocability...........................................................................................................31

58324/0001-16671211v7

**THIS UNSECURED CREDITOR TRUST AGREEMENT** (this "Agreement"), dated as of March _____, 2019, is entered into by and between:

1.      Neighbors Legacy Holdings, Inc. and its affiliate debtors (collectively, the "Debtors")[1] and

2.      Mark Shapiro, as trustee (the "Trustee").

## RECITALS

**WHEREAS**, on July 12, 2018 and July 23, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").  The Debtors' cases are being jointly administered in the Bankruptcy Court under Case No. 18-33836 (MI) the "Chapter 11 Cases") and the Debtors are deemed consolidated pursuant to the Confirmation Order (defined below) for the purposes of, among others, distribution under the Plan (defined below);

**WHEREAS**, on March _____, 2019, the Bankruptcy Court entered an order [Docket No. _____] (the "Confirmation Order") confirming the First Amended Joint Plan of Liquidation of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code dated February 20, 2019 filed in the Chapter 11 Cases [Docket No. 757] (including any supplement to such Plan and the exhibits and schedules thereto, as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, the "Plan");

**WHEREAS**, this Agreement is executed in order to establish an unsecured creditor trust (the "Unsecured Creditor Trust") pursuant to, and to effectuate certain provisions of, the Plan and the Confirmation Order;

**WHEREAS**, the Trustee will hold and administer the Unsecured Creditor Trust Assets (defined below) for the benefit of the Unsecured Creditor Trust Beneficiaries (defined below) as contemplated by this Agreement, the Plan and Confirmation Order (collectively, the "Operative Documents");

**WHEREAS**, the Unsecured Creditor Trust is established for the sole purpose of liquidating and distributing the Unsecured Creditor Trust Assets pursuant to the Operative Documents, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Unsecured Creditor Trust;

**WHEREAS**, the Unsecured Creditor Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and the advance ruling guidelines contained in Rev. Proc. 94-95, 1994-2 C.B.  684;

---

[1] A schedule identifying the Debtors is attached hereto as Schedule A.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements contained in the Operative Documents, the Debtors and the Trustee, intending to be legally bound, agree as follows:

## ARTICLE 1

## Establishment of the Unsecured Creditor Trust

1.1     Establishment of the Unsecured Creditor Trust and Appointment of Trustee.

(a)     Pursuant to the Plan and the Confirmation Order, the Debtors and the Trustee hereby establish a trust which shall be known as the "Unsecured Creditor Trust" on behalf of and for the benefit of the Unsecured Creditor Trust Beneficiaries (defined below).

(b)     The Trustee is hereby appointed as trustee of the Unsecured Creditor Trust effective as of the effective date of the Plan as defined in Article I of the Plan and as noticed on the docket of the Bankruptcy Court by the Debtors (the "Effective Date") and agrees to accept and hold the Retained Causes of Action (as defined in the Plan), the GUC Settlement Cash (as defined in the Plan), and any other assets acquired by the Unsecured Creditor Trust on or after the Effective Date pursuant to this Agreement or the Plan (collectively, the "Unsecured Creditor Trust Assets"), in trust for the benefit of holders of Class 4 General Unsecured Claims (collectively, the "Unsecured Creditor Trust Beneficiaries") subject to the terms of the Operative Documents.  The Trustee and each successor trustee serving from time to time hereunder shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Unsecured Creditor Trust.

1.2     Transfer of Assets and Rights to the Unsecured Creditor Trust.

(a)     Title to Unsecured Creditor Trust Assets.  As of the Effective Date, pursuant to and in accordance with section 1141 of the Bankruptcy Code and the Operative Documents, the Debtors hereby irrevocably transfer, assign and deliver to the Unsecured Creditor Trust all of their respective right, title and interest in and to the Unsecured Creditor Trust Assets, free and clear of any and all Liens, Claims (other than Claims in the nature of setoff or recoupment), encumbrances or interests of any kind in such property of any other Person.  The Trustee agrees to accept and hold the Unsecured Creditor Trust Assets in trust for the Unsecured Creditor Trust Beneficiaries, subject to the terms of the Operative Documents.  Upon the transfer of the Unsecured Creditor Trust Assets to the Unsecured Creditor Trust, the Debtors or the Liquidating Trust (as defined in the Plan), as the case may be, shall have no interest in or claim to the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust, and the Unsecured Creditor Trust shall succeed to all of the Debtors' right, title and interest in and to the Unsecured Creditor Trust Assets.

(b)     Privileges.  The Debtors have various legal, statutory and common law privileges and rights, including, but not limited to, the attorney-client privilege, the work product privilege, the joint interest privilege, the right of immunity, and the rights of defenses, each and all asseretable by the Debtors, and, as applicable, attaching to any and all documents or communications (whether written or oral) (collectively, the "Debtors' Privileges").  The Debtors'

Privileges shall, upon the Effective Date, concurrently vest in both the Unsecured Creditor Trust and the Liquidation Trust (individually, for purposes of this provision, a "Trust", and collectively, for purposes of this provision, the "Trusts").  The joint and concurrent holding of the Debtors' Privileges and the rights provided by this Section shall not operate as a waiver or release of any of the Debtors' Privileges, and shall constitute a joint interest privilege between the Trusts.  Upon the Effective Date, the Trusts are authorized to: (i) take all necessary actions to effectuate the transfer of the Debtors' Privileges to the Trusts; and (ii) avail themselves, preserve, assert, control, and exercise the Debtors' Privileges.  Notwithstanding the foregoing sentence, the Trusts shall not, without compliance with the following sentences, waive, release, diminish, alter or otherwise effect the Debtors' Privileges (an "Effect on the Debtors' Privileges"). In order for the Trusts to cause an Effect on the Debtors' Privileges, the applicable Trust, absent a written agreement between the Trusts, must seek an Order from the Bankruptcy Court, which may be sought on an expedited basis, with notice to and an opportunity to be heard by the other Trust.  In addition, should a Trust be put on notice by a third party, in litigation or otherwise, that a Trust has allegedly caused an Effect on the Debtors' Privileges, then the Trust receiving such notice shall immediately advise the other Trust, which shall have an absolute right, in its sole discretion, to intervene in such matter, respond to such notice and allegation, and/or seek appropriate relief from the Bankruptcy Court, to, inter alia, challenge the alleged Effect on the Debtors' Privileges.

(c)     Further Assurances.  As promptly as practicable after the Effective Date, the Debtors agree to (i) at the reasonable request of the Trustee, execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), (ii) take, or cause to be taken, all such further actions as the Trustee may reasonably request in order to evidence or effectuate the transfer of the Unsecured Creditor Trust Assets and the Privileges to the Trustee and the consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of the parties hereunder and under the Operative Documents, and (iii) cooperate with the Trustee in administration of the Unsecured Creditor Trust Assets including the analysis and prosecution of the Retained Causes of Action to the extent reasonable.  Notwithstanding anything contained herein, without the express written consent of the Trustee, no Person or creditor of the Debtors shall be permitted to assert, bring, institute, or commence any Claim or Cause of Action that is transferred to the Unsecured Creditor Trust pursuant to the Plan.

1.3     Nature and Purpose of the Unsecured Creditor Trust.

(a)     Purpose.  The Unsecured Creditor Trust is organized for the primary purposes of (a) investigating, pursuing, litigating and, as applicable, settling, the Retained Causes of Action and any other Avoidance Actions and other Causes of Action or litigation, (b) collecting, receiving, holding, maintaining, administering and liquidating the Unsecured Creditor Trust Assets, (c) resolving all Disputed General Unsecured Claims, including objecting, prosecuting, settling and compromising such Disputed General Unsecured Claims (a "Claim Objection") (i) in any manner approved by the Bankruptcy Court or (ii) in the Trustee's discretion, subject to any relevant provisions of this Agreement, without Bankruptcy Court approval, (d) paying all expenses of the Unsecured Creditor Trust, (e) making all Distributions to the holders of Allowed General Unsecured Claims from the Unsecured Creditor Trust as provided for in the Operative Documents, and (f) otherwise implementing the Operative Documents and finally administering the Unsecured Creditor Trust, all pursuant to and in

6

accordance with the Operative Documents (herein, the "Trust Purposes").  The Unsecured Creditor Trust is organized and established as a trust pursuant to which the Trustee, subject to the terms and conditions contained herein and in the Plan, shall (i) hold the Unsecured Creditor Trust Assets and administer the same in accordance with this Agreement and the Plan in accordance with Treasury Regulation section 301.7701-4(d); and (ii) oversee and direct the expeditious and orderly liquidation of the Unsecured Creditor Trust Assets.  Accordingly, the sole purpose of the Unsecured Creditor Trust is to liquidate the Unsecured Creditor Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Unsecured Creditor Trust Assets, and consistent with, the liquidating purpose of the Unsecured Creditor Trust.

(b)     Actions of the Trustee.  Subject to the terms of this Agreement, the Trustee shall, in an expeditious and orderly manner, liquidate and convert to Cash the Unsecured Creditor Trust Assets, which includes, without limitation, pursuing recovery on the Retained Causes of Action and making timely distributions to Unsecured Creditor Beneficiaries.  The liquidation of the Unsecured Creditor Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any Retained Cause of Action or Claim Objection.  Except as set forth herein, the Trustee shall have the absolute right to pursue, settle and compromise or not pursue any and all Retained Cause of Action and Claim Objection as it determines is in the best interests of the Unsecured Creditor Trust Beneficiaries, and consistent with the purposes of the Unsecured Creditor Trust.  The Trustee shall have no liability for the outcome of any such decision except for any damages caused by gross negligence, bad faith, willful misconduct or knowing violation of law.

(c)     Relationship.  This Agreement is intended to create a trust and a trust relationship and the Unsecured Creditor Trust is to be governed and construed in all respects as a trust.  The Unsecured Creditor Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Trustee, or the Unsecured Creditor Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Unsecured Creditor Trust Beneficiaries, on the one hand, to the Unsecured Creditor Trust and the Trustee, on the other, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by the Operative Documents.

(d)     No Waiver of Claims.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Trustee may enforce all rights to commence and pursue, as appropriate, any and all Retained Cause of Action and Claim Objections after the Effective Date.  No Person may rely on the absence of a specific reference in the Plan and Disclosure Statement to any cause of action against such Person as any indication that the Trustee will not pursue any and all available causes of action against such Person consistent with the terms of this Agreement.  Unless any such causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Operative Documents or other Bankruptcy Court order, the Trustee expressly reserves all such causes of action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such causes of action upon, after, or as a consequence of the Confirmation Order.  The Trustee's

objection to the allowance of any General Unsecured Claims filed with the Bankruptcy Court with respect to which liability, priority, and/or amount (or any objections, affirmative defenses and/or counterclaims, whether or not litigated to Final Order) are disputed shall not in any way limit the ability or the right of the Trustee to assert, commence or prosecute any cause of action that is a Retained Cause of Action against the holder of such Claim.  Nothing contained in the Operative Documents shall be deemed to be a waiver, release, or relinquishment of any cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the applicable Petition Date, against or with respect to any Claim.  The Trustee shall have, retain, reserve, and be entitled to assert all such Claims, Claim Objections, Retained Causes of Action, other Causes of Action, rights of setoff, Privileges and other legal or equitable defenses which the Debtors had immediately prior to the applicable Petition Date fully as if the Chapter 11 Cases had not been commenced or such Claims, Claim Objections, Retained Causes of Action, other Causes of Action, rights of setoff, Privileges and other legal or equitable defenses had not been transferred to the Unsecured Creditor Trust in accordance with the Operative Documents, and all of the Debtors' legal and equitable rights respecting any Claim, Claim Objection or Retained Cause of Action under the Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.  The Trustee shall have the right to assert a Claim Objection against a subsequent transferee of a claim that is subject to disallowance in the hands of the original claimant as a voidable transfer.  Nothing in this Agreement shall be construed in a manner that is inconsistent with the Plan or the Confirmation Order.

1.4    <u>Incorporation of Plan.</u>  The Plan and the Confirmation Order are each hereby incorporated into this Agreement and made a part hereof by this reference; provided, however, unless otherwise specified herein, to the extent that there is conflict between the provisions of this Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this Agreement.

1.5    <u>Funding Expenses of the Unsecured Creditor Trust.</u>  On the Effective Date, the Debtors shall transfer the GUC Settlement Cash to the Unsecured Creditor Trust.  The GUC Settlement Cash shall be retained by the Trustee as a reserve to finance the operations of the Unsecured Creditor Trust.

1.6    <u>Appointment as Representative.</u>  Pursuant to sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, the Plan provides for the appointment of the Trustee as the duly appointed representative of the Debtors with respect to the Unsecured Creditor Trust Assets and, as such, subject to Sections 1.3 and 3.8 of this Agreement, the Trustee succeeds to all of the rights and powers of a trustee in bankruptcy with respect to prosecution of the Unsecured Creditor Trust Assets for the benefit of the Unsecured Creditor Trust Beneficiaries in accordance with the terms of the Operative Documents.

## ARTICLE 2

## Unsecured creditor Trust Beneficiaries

8

2.1    <u>Allocation of Unsecured Creditor Trust Assets.</u>  The allocation and distribution of the Unsecured Creditor Trust Assets to the Unsecured Creditor Trust Beneficiaries shall be accomplished as set forth in the Operative Documents.

2.2    <u>Interests Beneficial Only.</u>  The ownership of a beneficial interest in the Unsecured Creditor Trust shall not entitle any beneficiary to any title in the Unsecured Creditor Trust Assets as such (which title shall be vested in the Trustee) or to any right to call for a partition or division of the Unsecured Creditor Trust Assets or to require an accounting.

2.3    <u>Evidence of Beneficial Interests.</u>  Ownership of a beneficial interest in the Unsecured Creditor Trust will not be represented by certificates, securities, receipts or in any other form or manner whatsoever, except as maintained on the books and records of the Unsecured Creditor Trust by the Trustee or the Registrar (defined below).  The death, incapacity or bankruptcy of any Unsecured Creditor Beneficiary during the term of the Unsecured Creditor Trust shall not (i) operate to terminate the Unsecured Creditor Trust, (ii) entitle the representatives or creditors of the deceased party to an accounting, (iii) entitle the representatives or creditors of the deceased party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Unsecured Creditor Trust Assets or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Unsecured Creditor Trust Beneficiaries hereunder.

2.4    <u>Securities Law Registration.</u>  It is intended that the ownership of a beneficial interest of the Unsecured Creditor Trust and the entitlements hereunder, if any, of Unsecured Creditor Trust Beneficiaries, shall not constitute "securities." To the extent ownership of a beneficial interest in the Unsecured Creditor Trust or the entitlements of Unsecured Creditor Trust Beneficiaries are deemed to be "securities," the issuance of beneficial interests to Unsecured Creditor Trust Beneficiaries or the issuance to Unsecured Creditor Trust Beneficiaries of any entitlements under the Operative Documents (and any redistribution of any of the foregoing pursuant to the Plan or otherwise) shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act of 1933, as amended (the "Securities Act"), and any applicable state and local laws requiring registration of securities.  If the Trustee determines, with the advice of counsel, that the Unsecured Creditor Trust is required to comply with registration and/or reporting requirements of the Securities Act, the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), then the Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file reports with the Securities and Exchange Commission (the "SEC") to the extent required by applicable law.  Notwithstanding the foregoing procedure, nothing herein shall be deemed to preclude the Trustee from amending this Agreement to make such changes as are deemed necessary or appropriate by the Trustee, with the advice of counsel, to ensure that the Unsecured Creditor Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act or the Investment Company Act, except that no amendment to this Agreement may be made which would not be permitted by Article 11 of this Agreement.

2.5    <u>Transfers.</u>

(a)      Except as otherwise expressly provided in the Operative Documents, it is understood and agreed that the beneficial interests in the Unsecured Creditor Trust will be non-transferable during the term of this Agreement except with respect to a transfer by will or under the laws of descent and distribution. Such transfers will not be effective until appropriate written notification and proof thereof is submitted to the Trustee, and the Trustee may continue to pay all amounts to or for the benefit of the Unsecured Creditor Trust Beneficiaries until receipt of proper written notification and proof of any such transfer. The Trustee may rely upon such written proof without the requirement of any further investigation.  Payments under this Agreement may not be assigned, alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(b)      The Trustee shall act as a registrar (the "Registrar"), for the purpose of recording ownership of the beneficial interests of the Unsecured Creditor Trust as provided for in this Agreement.  The Trustee may appoint an institution to act as Registrar and pay reasonable compensation in respect of such services.

(c)      The Trustee shall cause to be kept, a registry of the Unsecured Creditor Trust Beneficiaries (the "Trust Register") which shall be maintained pursuant to such reasonable regulations as the Trustee and the Registrar may prescribe.

2.6      Access to the Trust Register by the Unsecured Creditor Trust Beneficiaries. Unsecured Creditor Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Registrar and the Trustee and in accordance with the reasonable regulations prescribed by the Registrar and the Trustee, to inspect and, at the sole expense of the Unsecured Creditor Trust Beneficiaries seeking the same, make copies of the Trust Register, in each case for a purpose reasonably related to such holder's interest in the Unsecured Creditor Trust.

2.7      Absolute Owners.  The Trustee may deem and treat an Unsecured Creditor Trust Beneficiary of record in the Trust Register as the absolute owner of such beneficial interest for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever and the Trustee shall not be charged with having received notice of any claim or demand to such beneficial interest or the interest therein of any other Person.

## ARTICLE 3

## The Trustee

3.1      Unsecured Creditor Trust Proceeds.  Any and all proceeds, income and/or recoveries obtained on account of or from the Unsecured Creditor Trust Assets, after payment of any and all expenses of the Unsecured Creditor Trust, shall be added to the Unsecured Creditor Trust Assets, held as a part thereof (and title therein shall be vested in the Trustee) and administered in accordance with the terms of this Agreement.

3.2      Collection of Income.  The Trustee shall collect all income earned with respect to the Unsecured Creditor Trust Assets, which shall thereupon be added to the Unsecured Creditor

Trust Assets, held as a part thereof (and title therein shall be vested in the Trustee) and administered in accordance with the terms of this Agreement.

3.3    <u>Payment of Unsecured Creditor Trust Expenses.</u>    The Trustee shall maintain the Unsecured Creditor Trust Assets (i) as is reasonably necessary to meet contingent liabilities and to maintain the value of the Unsecured Creditor Trust Assets during liquidation, (ii) to pay reasonable and necessary expenses (including but not limited to, the reasonable costs and expenses of the Trustee (including reasonable fees, costs, and expenses of professionals retained thereby), any taxes imposed on the Unsecured Creditor Trust or in respect of the Unsecured Creditor Trust Assets or reasonable fees and expenses in connection with, arising out of, or related to, the Unsecured Creditor Trust Assets and litigation associated therewith), (iii) to pay the costs and expenses of the valuations of the Unsecured Creditor Trust Assets incurred by the Trustee in accordance with Section 5.1(c) of this Agreement, (iv) to pay or reimburse amounts in accordance with Article 7 hereof and (v) to satisfy other liabilities incurred or assumed by the Unsecured Creditor Trust (or to which the Unsecured Creditor Trust Assets are otherwise subject) in accordance with the Operative Documents.

3.4    <u>Distributions.</u>    The Trustee shall make distributions of proceeds of the Unsecured Creditor Trust Assets in accordance with the provisions of Article 6 of this Agreement and the Plan.

3.5    <u>Tenure, Removal, and Replacement of the Trustee.</u>

(a)    The Trustee will serve until the earliest of (i) the completion of all the Trustee's duties, responsibilities and obligations under the Operative Documents, (ii) the Trustee's resignation and the appointment of a successor pursuant to Section 3.5(b) of this Agreement, (iii) the Trustee's removal pursuant to Section 3.5(c) of this Agreement, (iv) the Trustee's death (if applicable) and (v) the termination of the Unsecured Creditor Trust in accordance with the Operative Documents.

(b)    The Trustee may resign by filing a notice with the Bankruptcy Court (a "<u>Resignation Notice</u>").  Such resignation will become effective on the later to occur of: (i) the day specified in such Resignation Notice and (ii) the appointment of a successor trustee as provided in Section 3.5(d) and the acceptance by such successor trustee of such appointment in accordance with Section 3.6 of this Agreement.  If a successor trustee is not appointed or does not accept its appointment within ninety (90) calendar days following the filing of the Resignation Notice, the Trustee shall, or any Unsecured Creditor Trust Beneficiary may, file a motion with the Bankruptcy Court, upon notice and a hearing, seeking the appointment of a successor trustee.

(c)    The Trustee may be removed (a) immediately by majority vote of the Oversight Committee (as defined below) for Cause and (b) sixty (60) calendar days following a unanimous vote by the Oversight Committee for any reason.  For the purposes of this Section 3.5(c), "Cause" shall mean an act of fraud, willful misconduct or gross negligence or a breach of fiduciary duty under this Agreement.

11

(d)      In the event of a vacancy in the position of the Trustee (whether by removal, resignation, or death, if applicable), the members of the Oversight Committee shall, by majority vote, designate a successor trustee.

(e)      Immediately upon the appointment of any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Trustee hereunder will be vested in and undertaken by the successor trustee without any further act, and the successor trustee will not be liable personally for any act or omission of the predecessor Trustee.  A successor trustee shall have all the rights, privileges, powers, and duties of the predecessor Trustee under the Operative Documents.  The predecessor Trustee shall thereupon cease to have any further rights, powers, privileges or duties hereunder, except the right to receive unpaid compensation due as of the date of the appointment of the successor trustee pursuant to any agreement then in effect.

(f)      Upon the appointment of a successor trustee, the predecessor Trustee (or the duly appointed legal representative of a deceased Trustee) shall, if applicable, when requested in writing by the successor trustee or the Bankruptcy Court, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed all the estates, properties, rights, powers and trusts of such predecessor Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets, documents, instruments, records and other writings relating to the Unsecured Creditor Trust and the Unsecured Creditor Trust Assets and the entitlements of the Unsecured Creditor Trust Beneficiaries hereunder, then in its possession and held hereunder, and shall execute and deliver such documents, instruments and other writings as may be requested by the Bankruptcy Court or a successor trustee to effect the termination of such predecessor Trustee's capacity under the Unsecured Creditor Trust, the Operative Documents and otherwise assist and cooperate, without cost or expense to the predecessor Trustee, in effectuating the assumption of its obligations and functions by the successor trustee.

(g)      The death, resignation or removal of the Trustee shall not terminate the Unsecured Creditor Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

3.6      Acceptance of Appointment by Successor Trustee.  Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations and duties of the predecessor Trustee on the same terms and conditions hereunder and accepting the terms of this Agreement and agreeing that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor trustee and all of its heirs, and legal and personal representatives, successors and assigns, and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of the predecessor Trustee hereunder with like effect as if originally named herein.

3.7      Role of the Trustee.  In furtherance of and consistent with the Unsecured Creditor Trust Purposes and the Operative Documents, the Trustee, subject to the terms and conditions contained in the Operative Documents, shall have the power to (i) prosecute, compromise and settle, abandon or dismiss for the benefit of the Unsecured Creditor Trust all Claim Objections, Retained Causes of Action, rights, Avoidance Actions and Causes of Action transferred to the

58324/0001-16671211v7

Unsecured Creditor Trust (whether such suits are brought in the name of the Unsecured Creditor Trust, the Trustee or otherwise), and (ii) otherwise perform the functions and take the actions provided for or permitted in the Operative Documents.  In all circumstances, the Trustee shall act in the best interests of the Unsecured Creditor Trust Beneficiaries and in furtherance of the Unsecured Creditor Trust Purposes.

3.8     Authority of Trustee.  Subject only to any limitations contained herein, the Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Unsecured Creditor Trust, and is expressly authorized to:

(a)     hold legal title to any and all rights of the Unsecured Creditor Trust Beneficiaries in or arising from the Unsecured Creditor Trust Assets, including collecting, receiving any and all money and other property belonging to the Unsecured Creditor Trust (including any Unsecured Creditor Trust Proceeds) and the right to vote any claim or interest relating to an Unsecured Creditor Trust Claim in a case under the Bankruptcy Code and receive any distribution thereon;

(b)     exercise and perform the rights, powers and duties held by each Debtor's estate with respect to the Unsecured Creditor Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a trustee under sections 704 and 1106 of the Bankruptcy Code, including commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges;

(c)     take possession and control, administer, maintain and dispose of documents, books and records related to the Unsecured Creditor Trust Assets;

(d)     protect and enforce the rights to the Unsecured Creditor Trust Assets by any method deemed appropriate including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(e)     obtain reasonable insurance coverage with respect to the liabilities and obligations of the Trustee under this Agreement (in the form of an errors and omissions policy or otherwise);

(f)     retain and pay such counsel and other professionals, including any professionals previously retained by the Official Committee of Unsecured Creditors (the "Creditors' Committee"), as the Trustee shall select to assist the Trustee in its duties, on such terms as the Trustee deems reasonable and appropriate, without Bankruptcy Court approval.  The Trustee may commit the Unsecured Creditor Trust to and shall pay such counsel, experts, litigation consultants, and other professionals reasonable compensation for services rendered (including on an hourly, contingency, or modified contingency basis) and reasonable and documented out-of- pocket expenses incurred;

(g)     retain and pay an accounting firm to perform such reviews and/or audits of the financial books and records of the Unsecured Creditor Trust as may be required by applicable laws (including, if applicable, securities laws) and/or this Agreement, and to prepare and file any tax returns, informational returns or periodic and current reports for the Unsecured Creditor Trust

13

as required by applicable laws (including, if applicable, securities laws) and/or by this Agreement.  The Trustee may commit the Unsecured Creditor Trust to and shall pay such accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(h)     retain, enter into fee arrangements with and pay such third parties to assist the Trustee in carrying out its powers, authorities and duties under this Agreement.  The Trustee may commit the Unsecured Creditor Trust to and shall pay all such Persons reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, as well as commit the Unsecured Creditor Trust to indemnify any such Persons in connection with the performance of services (provided that such indemnity shall not cover any losses, costs, damages, expenses or liabilities that result from the gross negligence, bad faith, willful misconduct or knowing violation of law by such Persons);

(i)     in the exercise of its reasonable discretion, waive any privilege (including the Privileges) or any defense on behalf of the Unsecured Creditor Trust or, with respect to the Unsecured Creditor Trust Claims;

(j)     investigate, analyze, initiate, compromise, settle, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, release, withdraw, abandon, dismiss, exercise rights, powers and privileges with respect to, litigate to judgment or otherwise administer, in accordance with the terms set forth herein, all causes of action, objections, Claim Objections and Retained Causes of Action in favor of or against the Unsecured Creditor Trust without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, except as set forth in Section 3.9, below;

(k)     avoid and recover transfers of the Debtors' property as provided for in the Operative Documents, and as may be permitted by the Bankruptcy Code or applicable state law;

(l)     invest any moneys held as part of the Unsecured Creditor Trust in accordance with the terms of Section 3.15 of this Agreement, limited, however, to such investments that are consistent with the Unsecured Creditor Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and in accordance with Rev. Proc 94-45, 1994-2 C.B.  684;

(m)     request any appropriate tax determination with respect to the Unsecured Creditor Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(n)     seek the examination of any Person, subject to the provisions of Bankruptcy Rule 2004 or any other applicable law or rule;

(o)     intervene, remove or otherwise seek authority to participate in any pending litigation by or against the Debtors as of the Effective Date;

(p)     make distributions in accordance with Article 6 of this Agreement; and

(q)     take or refrain from taking any and all other actions that the Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Unsecured Creditor Trust Assets, or to otherwise carry out the purposes hereof.

3.9     Limitation of Trustee's Authority.

(a)     Notwithstanding anything herein to the contrary, the Unsecured Creditor Trust shall not (i) be authorized to engage in any trade or business on behalf of the Unsecured Creditor Trust, (ii) take such actions inconsistent with the orderly liquidation of Unsecured Creditor Trust Assets as are required or contemplated by applicable law, the Plan, the Confirmation Order, or this Agreement, or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Unsecured Creditor Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701- 4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

(b)     Notwithstanding anything herein to the contrary, the Trustee shall not be permitted to take any of the actions described below (the "Prior Notice Actions") without prior notice to the Oversight Committee. If the Trustee intends to take any one or more of the Prior Notice Actions, the Trustee shall provide at least ten (10) Business Days prior notice thereof to the Oversight Committee, which notice shall reasonably describe the intended Prior Notice Action(s) and advise the Oversight Committee of its right to object by an objection deadline that is at least ten (10) Business Days after the date such notice is mailed. If no objections to the proposed Prior Notice Action(s) are actually received by the majority of the members of the Oversight Committee, the Trustee shall be authorized to carry out the specified Prior Notice action(s). If, on the other hand, the majority of the members of the Oversight Committee object to the proposed Prior Notice Action(s) by objection actually received by the Trustee on or before the objection deadline, then the Trustee shall not be authorized to carry out any Prior Notice Action(s) not approved. For the purpose hereof, each of the following shall constitute Prior Notice Actions:

(i)     the retention of any professional (including, without limitation, attorneys, accountants and appraisers) by the Trustee after the Effective Date of the Plan, including the terms of such retention;

(ii)     any settlement or withdrawal of a Retained Cause of Action where the amount in controversy exceeds $500,000;

(iii)     any settlement or withdrawal of a Claim Objection where the Allowed General Unsecured Claim will exceed $250,000;

(iv)     any determination to seek audited financial statements for the Unsecured Creditor Trust;

(v)     any determination to make the Unsecured Creditor Trust a reporting entity;

(vi)     any action to enter into any one or more of the following to the extent the same results in aggregate expenditures greater than $50,000 during any fiscal year:

A     obtaining insurance coverage of the type described in Sections 3.8(e) hereof or otherwise;

B     any agreement to provide services by a third-party vendor (other than professional services) to the Unsecured Creditor Trust; or

C     any non-ordinary course transaction for a trust of the nature of intent of the Unsecured Creditor Trust.

(vii)    any material amendment or modification to the agreement governing the Trustee's compensation, as described in Section 3.13 hereof;

(viii)    any material amendment or modification to this Agreement; provided however an amendment or modification for purposes of implementing the intent of the Operative Documents shall not constitute a material amendment or modification.

(c)     The Unsecured Creditor Trust shall not hold 50% or more of the stock (in either vote or value) of any Person that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in a Person that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Unsecured Creditor Trust Assets.

3.10    Books and Records.

(a)     The Trustee shall maintain books and records relating to the Unsecured Creditor Trust Assets, the status of Claims against the Unsecured Creditor Trust Assets and income of the Unsecured Creditor Trust and the payment of expenses and liabilities of, claims against or assumed by, the Unsecured Creditor Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements, if any, of the Unsecured Creditor Trust as well as the reporting requirements set forth in Article 9 of and elsewhere in this Agreement.

(b)     Unsecured Creditor Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Trustee, and in accordance with the reasonable regulations prescribed by the Trustee, to inspect and, at the sole expense of such holder seeking the same, make copies of the books and records relating to the Unsecured Creditor Trust on any Business Day and as often as may be reasonably be desired, in each case for a purpose reasonably related to such holder's interest in the Unsecured Creditor Trust.

3.11    Inquiries into Trustee's Authority.  Except as otherwise set forth in the Operative Documents, no Person dealing with the Unsecured Creditor Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation or disposition of the Unsecured Creditor Trust Assets.

3.12     Compliance with Laws.  Any and all distributions of Unsecured Creditor Trust Assets shall be in compliance with applicable laws, including applicable federal and state securities laws.

3.13     Compensation and Reimbursement of the Trustee.  Notwithstanding anything to the contrary contained herein, the Trustee shall be compensated for its services, and reimbursed for its reasonable out-of-pocket expenses incurred in connection with the performance of its duties hereunder solely from the Unsecured Creditor Trust Assets, in accordance with and pursuant to the terms of a separate agreement to be negotiated with, and approved by, the Creditors' Committee prior to the Effective Date of the Plan.

3.14     Reliance by Trustee.  Except as otherwise provided herein:

(a)     the Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties including, but not limited to, documents, analyses and information provided or to be provided by the Debtors and their professionals, whether such professionals were retained in the Chapter 11 Cases or otherwise; and

(b)     Persons dealing with the Trustee shall look only to the Unsecured Creditor Trust Assets to satisfy any liability incurred by the Trustee to such Person in carrying out the terms of this Agreement, and the Trustee shall not have any personal obligation to satisfy any such liability.

3.15     Investment and Safekeeping of Unsecured Creditor Trust Assets.  The Trustee shall invest all Unsecured Creditor Trust Assets (pending distribution in accordance with Article 6 of this Agreement) only in Cash and Government securities as defined in section 2(a)(16) of the Investment Company Act; provided, however, that (a) the scope of any such permissible investments shall be further limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701- 4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, and (b) the Trustee may retain any Unsecured Creditor Trust Proceeds received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets in Cash.

3.16     Standard of Care; Exculpation.  Neither the Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Trustee in good faith, other than (i) acts or omissions resulting from the Trustee's or any such agent's, representative's or professional's gross negligence, bad faith, willful misconduct or knowing violation of law or (ii) acts or omissions from which the Trustee or any such agent, representative or professional derived an improper personal benefit.  The Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, accountants, financial advisors and agents. Notwithstanding such authority, the Trustee shall be under no obligation to consult with its

attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Trustee, unless such determination is based on gross negligence, bad faith, willful misconduct or knowing violation of law.  No amendment, modification or repeal of this Section 3.16 shall adversely affect any right or protection of the Trustee or any of its agents, representatives or professionals that exists at the time of such amendment, modification or repeal.

# ARTICLE 4

## The Oversight Committee

4.1     Establishment of the Oversight Committee.  On the Effective Date, the Oversight Committee shall be established as set forth herein.  The members of the Oversight Committee shall serve without compensation.  The members of the Oversight Committee shall be entitled to their reasonable and necessary out-of-pocket expenses incurred in fulfilling the obligations of the Oversight Committee without mark-up; provided however the members of the Oversight Committee shall not be entitled to reimbursement of legal, accounting or other advisory fees.

4.2     Composition; Replacement.  The Oversight Committee shall be comprised of three (3) members, each of which must have been a member of the Creditors' Committee.  In the case of an inability or unwillingness of any member of the Oversight Committee to serve subsequent to his or her original appointment and acceptance, such member shall be replaced by designation of the remaining members of the Oversight Committee and the Trustee.  If any position on the Oversight Committee remains vacant for more than thirty (30) calendar days, such vacancy may be filled within fifteen (15) calendar days thereafter by the designation of the Trustee without the requirement of a vote by the other members of the Oversight Committee.  Each replacement member of the Oversight Committee must be an Unsecured Creditor Trust Beneficiary.  The Oversight Committee will continue to fully function even while a position on the applicable Oversight Committee remains vacant.

4.3     Governance of the Oversight Committee.  All authorizations, directions and advice rendered by the Oversight Committee to the Trustee on the Prior Notice Actions shall be by majority vote of the Oversight Committee.

4.4     Advice and Direction to Trustee.  The Oversight Committee shall provide advice, instruction and direction on matters arising in the administration of the Unsecured Creditor Trust and in the disposition and distribution of the Unsecured Creditor Trust Assets, and in the pursuit of applicable Retained Causes of Actions and Claim Objections, as requested by the Trustee, or as otherwise specifically provided herein.  Privileged communications may be shared among the Trustee and the Oversight Committee (and their respective professionals) without compromising the privileged nature of the communications in accordance with the "joint interest" doctrine.  For the avoidance of doubt, this Agreement shall constitute an acknowledgment that the Trustee and the Oversight Committee (and each of its members individually) share a "joint interest" with respect to, among other things, the Unsecured Creditor Trust and the Unsecured Creditor Trust Assets.

4.5    Removal of Oversight Committee Member.  Any member of the Oversight Committee may be removed by the Bankruptcy Court for cause shown on a motion by any member of the Oversight Committee or by the Trustee.

4.6    Standard of Care; Exculpation.  Neither the Oversight Committee nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Oversight Committee, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct as determined by Final Order of a court with competent jurisdiction.  The Oversight Committee or any member may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with the Trustee's counsel and any other of the Trustee's professionals and/or with counsel and other professional advisors directly retained by the Oversight Committee or counsel to a member of the Oversight Committee, and the Oversight Committee or member thereof shall not be liable for anything done or omitted or suffered to be done in accordance with the advice or opinions of such professionals.  If the Oversight Committee or any member determines not to consult with counsel, accountants or other professionals, it shall not be deemed to impose any liability on the Oversight Committee, or its members and/or designees.

4.7    Reliance by Oversight Committee.  The Oversight Committee may rely, and shall be fully protected personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Oversight Committee has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.

4.8    Termination of the Oversight Committee.  Upon the certification by the Trustee that all Disputed Claims have been disposed of and all Unsecured Creditor Trust Assets have been distributed, abandoned or otherwise disposed of, the members of the Oversight Committee shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

## ARTICLE 5

## Tax Matters

5.1    Federal Income Tax Treatment of the Unsecured Creditor Trust.

(a)    For all federal income tax purposes, all parties (including the Debtors, the Unsecured Creditor Trust, the Trustee and the Unsecured Creditor Trust Beneficiaries) shall treat the transfer of the Unsecured Creditor Trust Assets to the Unsecured Creditor Trust for the benefit of the Unsecured Creditor Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, as (a) a transfer of the Unsecured Creditor Trust Assets directly to those holders of Allowed Claims receiving a beneficial interest in the Unsecured Creditor Trust (other than to the extent allocable to Disputed Claims), followed by (b) the transfer by such Persons to

19

the Unsecured Creditor Trust of the Unsecured Creditor Trust Assets in exchange for beneficial interests in the Unsecured Creditor Trust (and in respect of the Unsecured Creditor Trust Assets allocable to the Disputed Claims Reserve (defined below), as a transfer to the Disputed Claims Reserve by the Debtors. Accordingly, those holders of beneficial interests in the Unsecured Creditor Trust shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Unsecured Creditor Trust Assets. The foregoing treatment also shall apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS, upon audit, or otherwise if not contested by the Trustee), the Trustee shall (i) file returns for the Unsecured Creditor Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Operative Documents and (ii) annually send to each Unsecured Creditor Trust Beneficiary a separate statement setting forth such holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders and parties to report such items on their federal income tax returns. The Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Unsecured Creditor Trust that are required by any governmental unit.

(c)     As soon as possible after the Effective Date, but in no event later than ninety (90) calendar days thereafter (i) the Trustee may, but does not have to in its sole discretion, determine the fair market value as of the Effective Date of all assets transferred to the Unsecured Creditor Trust and (ii) the Trustee shall apprise, in writing, the Unsecured Creditor Trust Beneficiaries of such valuation. In connection with the preparation of the valuation contemplated hereby, the Trustee shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary in connection therewith. The Unsecured Creditor Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Trustee in connection therewith.

(d)     The Trustee may request an expedited determination of taxes of the Unsecured Creditor Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Unsecured Creditor Trust for all taxable periods through the dissolution of the Unsecured Creditor Trust.

(e)     The Trustee shall be responsible for payments, out of the Unsecured Creditor Trust Assets, of any taxes imposed on the Unsecured Creditor Trust or the Unsecured Creditor Trust Assets. The Trustee may require any of the Unsecured Creditor Trust Beneficiaries to furnish to the Trustee its Employer or Taxpayer Identification Number as assigned by the IRS and the Trustee may condition any distribution or payment to any of them upon receipt of such identification number.

5.2     Allocations of Unsecured Creditor Trust Taxable Income. Allocations of Unsecured Creditor Trust taxable income among the Unsecured Creditor Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable

income would be distributed (without regard to any restrictions on distributions described in the Plan or herein) if, immediately prior to such deemed distribution, the Unsecured Creditor Trust had distributed all of its other assets (valued at their tax book value) to the Unsecured Creditor Trust Beneficiaries, in each case up to the tax book value of the assets treated as contributed by such holders, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Unsecured Creditor Trust (including all distributions held in escrow pending the resolution of Disputed Claims). Similarly, taxable loss of the Unsecured Creditor Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Unsecured Creditor Trust Assets. The tax book value of the Unsecured Creditor Trust Assets for this purpose shall equal their fair market value on the Effective Date as determined under Section 5.1(c) above, adjusted in either case in accordance with tax accounting principles prescribed by the Tax Code, and applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements.

5.3     Tax Withholdings by Trustee. The Trustee shall be authorized to collect such tax information from Unsecured Creditor Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as the Trustee, in its sole discretion, deems necessary to effectuate the Operative Documents. The Trustee shall take reasonable steps and give reasonable notices to Unsecured Creditor Trust Beneficiaries to alert them to this requirement. In order to receive distributions pursuant to the Plan and this Agreement, all Unsecured Creditor Trust Beneficiaries shall be required to identify themselves to the Trustee and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. This identification requirement applies to all Unsecured Creditor Trust Beneficiaries, including those Beneficiaries who hold their Claims in "street name." The Trustee may refuse to make a distribution to any Unsecured Creditor Trust Beneficiary that fails to furnish such information in a timely fashion and, until such information is delivered, may treat such Beneficiary's Claim as a Disputed Claim. If any requested tax information is not furnished by an Unsecured Creditor Trust Beneficiary to the Trustee within six (6) months of the original request for such information (the "Withholding Deadline"), no further distributions shall be made to such Unsecured Creditor Trust Beneficiary. If the Trustee fails to withhold in respect of amounts received or distributable to any Unsecured Creditor Trust Beneficiary and the Trustee or the Unsecured Creditor Trust is later determined to be liable for the amount of such withholding, such Unsecured Creditor Trust Beneficiary shall reimburse the Trustee or the Unsecured Creditor Trust, as appropriate, for such liability (to the extent such amounts were actually distributed to such holder).

## ARTICLE 6

### Distributions

6.1     Distributions; Withholding. The Trustee shall distribute to the Unsecured Creditor Trust Beneficiaries, in accordance with this Article 6, all available monies from the liquidation of Unsecured Creditor Trust Assets; provided, however, that the Unsecured Creditor Trust may retain and not distribute to the Unsecured Creditor Trust Beneficiaries, and maintain as a reserve, such amounts as determined by the Trustee (i) as are reasonably necessary to meet

contingent liabilities of the Unsecured Creditor Trust, (ii) to pay reasonable and necessary expenses incurred in connection with administration of the Unsecured Creditor Trust and any taxes imposed on the Unsecured Creditor Trust or in respect of the Unsecured Creditor Trust Assets, and (iii) as are reasonably necessary to establish and maintain the Disputed Claims Reserve (defined below).  All distributions and/or payments to be made to Unsecured Creditor Trust Beneficiaries pursuant to this Agreement shall be made to each Unsecured Creditor Trust Beneficiary pro rata based on the amount of such beneficial interest held by such holder compared with the aggregate amount of beneficial interests outstanding, subject, in each case, to the terms of the Operative Documents.  The Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

6.2     <u>Unsecured Creditor Trust Claims Pending.</u>  Notwithstanding anything to the contrary contained in the Operative Documents, the Oversight Committee may not authorize or direct the Trustee to pay, and the Trustee shall not make, any Distribution to any holder of a Claim who has or may have any liability to the Unsecured Creditor Trust with respect to a claim or Retained Cause of Action, which Distribution may be paid, if at all, only after the holder of such Claim has discharged its liability to the Unsecured Creditor Trust on account of such claim or Retained Cause of Action, by settlement or otherwise.  Distributions that would otherwise be paid to any holder of a Claim that has or may have any liability to the Unsecured Creditor Trust with respect to a claim or Retained Cause of Action that has not yet been resolved shall be held in reserve.

6.3     <u>Manner of Payment or Distribution.</u>

(a)     All distributions to be made by the Trustee to the Unsecured Creditor Trust Beneficiaries shall be payable to Unsecured Creditor Beneficiaries of record as of the 20th calendar day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day.  If the distribution shall be in Cash, the Trustee shall distribute such Cash by wire, check, or such other method as the Trustee deems appropriate under the circumstances.

(b)     To the extent that a Person becomes entitled to a Claim pursuant to section 502(h) of the Bankruptcy Code on account of recoveries obtained with respect to the Unsecured Creditor Trust Claims, the Trustee will be responsible for making distributions on account of such Claims pursuant to Section 8.2 of this Agreement.

6.4     <u>Cash Distributions.</u>  No Cash distributions shall be required to be made to any Unsecured Creditor Trust Beneficiary in an amount less than $50.00.  Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions.  The foregoing shall not apply to the final distribution made to the Unsecured Creditor Trust Beneficiaries.

6.5     <u>Delivery of Unsecured Creditor Trust Distributions.</u>

(a)     All distributions under this Agreement to an Unsecured Creditor Trust Beneficiary shall be made at the address of such Beneficiary as set forth in the Trust Register or at such other address or in such manner as such Beneficiary shall have specified for payment

purposes in a written notice to the Trustee and the Registrar at least twenty (20) calendar days prior to such distribution date.

(b)     If any distribution to any Unsecured Creditor Trust Beneficiary is returned as undeliverable, and after reasonable efforts the Trustee has been unable to determine the current address of such Beneficiary, such undeliverable or unclaimed distribution shall be deemed unclaimed property six months after the date of such distribution, and shall be reallocated to the remaining Unsecured Creditor Trust Beneficiaries and distributed to such remaining Unsecured Creditor Trust Beneficiaries in accordance with the terms of this Agreement and there shall be no further distribution to such Unsecured Creditor Trust Beneficiary.  Any such undeliverable or unclaimed distributions shall not be subject to (i) any claims by such Unsecured Creditor Trust Beneficiary or (ii) the unclaimed property or escheat laws of any state or governmental unit.

6.6     <u>Disputed Claims Reserve.</u>  The Trustee may, but shall not be required, to establish a disputed claims reserve (the "Disputed Claims Reserve"), which shall include assets held separately from other assets of the Unsecured Creditor Trust, subject to an allocable share of all expenses and obligations for the Unsecured Creditor Trust, on account of Disputed Claims.  The amount of the Disputed Claims Reserve shall be equal to the amount necessary to satisfy the distributions to which the holders of the relevant Disputed Claims would be entitled to receive if all such Disputed Claims were to be subsequently Allowed.  The Trustee may, for U.S.  federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of that section (ii) allocate taxable income or loss to the Disputed Claims Reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the Disputed Claims Reserve and distribute the same as provided in this Article 6 as, when, and to the extent, such Disputed Claims either become Allowed or are otherwise resolved.  The Unsecured Creditor Trust Beneficiaries shall be bound by such election, if made by the Trustee, and as such shall, for U.S.  federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

## ARTICLE 7

## <u>Indemnification</u>

7.1     <u>Indemnification of Trustee.</u>

(a)     To the fullest extent permitted by law, the Unsecured Creditor Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Trustee, and each of its respective directors, members, shareholders, partners, officers, agents, employees, attorneys and other professionals (collectively, the "<u>Indemnified Persons</u>") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including reasonable fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does, or refrains from doing for the business or affairs of the Unsecured Creditor Trust,

58324/0001-16671211v7

except to the extent that the loss, cost, damage, expense or liability resulted (x) from the Indemnified Person's gross negligence, bad faith, willful misconduct or knowing violation of law or (y) from an act or omission from which the Indemnified Person derived an improper personal benefit.  To the extent reasonable, the Unsecured Creditor Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Unsecured Creditor Trust.  The indemnification provided under this Section 7.1 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee and/or any other Indemnified Person, and shall inure to the benefit of the Trustee's and each other Indemnified Person's heirs, successors and assigns.

(b)     Any Indemnified Person may waive the benefits of indemnification under this Section 7.1, but only by an instrument in writing executed by such Indemnified Person.

(c)     The rights to indemnification under this Section 7.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution.  Nothing in this Section 7.1 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Agreement, or any other agreement or instrument to which that Person is a party.

## ARTICLE 8

### Net Recovery

8.1     <u>No Effect on Mutuality.</u>  Notwithstanding anything contained in this Agreement to the contrary, nothing herein shall affect the mutuality of obligations, if any, of any holder of any Claim under section 553 of the Bankruptcy Code.  Notwithstanding anything in this Agreement to the contrary, the transfer of the Unsecured Creditor Trust Claims to the Unsecured Creditor Trust does not diminish, and fully preserves, any defenses a defendant would have if such Unsecured Creditor Trust Claims had been retained by the Debtors.

8.2     <u>Section 502(h).</u>  Notwithstanding anything contained this Agreement to the contrary, in the event that a compromise and settlement of a Retained Cause of Action or a Final Order with respect to a Retained Cause of Action provides for a Claim to be Allowed pursuant to section 502(h) of the Bankruptcy Code against one or more of the Debtors, the distributions to be made hereunder on account of such Claim pursuant to the Plan shall be funded by the Unsecured Creditor Trust, in the amount(s), from time to time, that all similarly situated holders of Claims are entitled to receive hereunder.

8.3     <u>Net Recovery.</u>  Notwithstanding anything contained in this Agreement to the contrary, in the event that a defendant in a litigation brought by the Trustee for and on behalf of the Unsecured Creditor Trust (i) is required by a Final Order to make payment to the Unsecured Creditor Trust (the "Judgment Amount") and (ii) is permitted by a Final Order to assert a right of setoff under sections 553, 555, 556, 559, 560 and 561 of the Bankruptcy Code or applicable non-bankruptcy law against the Judgment Amount (a "Valid Setoff"), (y) such defendant shall be

24

obligated to pay only the excess, if any, of the Judgment Amount over the Valid Setoff and (z) none of the Unsecured Creditor Trust or the Unsecured Creditor Trust Beneficiaries shall be entitled to assert a claim against the Debtors with respect to the Valid Setoff.

## ARTICLE 9

## Reporting Obligations Of Trustee

9.1     Reports.

(a)     The Trustee shall file quarterly reports with the Bankruptcy Court (and serve the same upon counsel for the Liquidating Trust), and provide annual reports to the Unsecured Creditor Trust Beneficiaries, with respect to (i) the prosecution and resolution of the Unsecured Creditor Trust Assets, (ii) the status of Claims against the Unsecured Creditor Trust Assets, and (iii) expenditures, receipts, and distributions of the Unsecured Creditor Trust.  The Trustee shall cause to be prepared, as applicable, either at such times as may be required by the Exchange Act, if applicable, or, not less than annually, financial statements of the Unsecured Creditor Trust, to be delivered to Unsecured Creditor Trust Beneficiaries together with annual income tax reporting of the Unsecured Creditor Trust.

(b)     Within ten (10) Business Days after the end of the relevant report preparation period the Trustee shall cause notice of any information reported pursuant to Section 9.1(a) to be filed with the Bankruptcy Court.

(c)     The Trustee may post any report required to be provided under this Section 9.1 on a web site maintained by the Trustee in lieu of actual notice to the Unsecured Creditor Trust Beneficiaries (unless otherwise required by law).

(d)     All of the foregoing reports, and the information and documents upon which such reports are based, shall be made available to Unsecured Creditor Trust Beneficiaries in accordance with Section 3.10 hereof.

## ARTICLE 10

## Term; Termination of the Unsecured Creditor Trust

10.1     Term; Termination of the Unsecured Creditor Trust.

(a)     The Unsecured Creditor Trust shall commence on the Effective Date and terminate no later than the fifth anniversary of the Effective Date; provided, however, that, on or prior to the date that is ninety (90) calendar days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Unsecured Creditor Trust if it is necessary to the liquidation of the Unsecured Creditor Trust Assets.  Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained not less than ninety (90) calendar days prior to the expiration of each extended term; provided, however, that in no event shall the term of the Unsecured Creditor Trust extend past the tenth (10th) anniversary of the Effective Date; provided further that neither this Agreement nor the continued existence of the Unsecured Creditor Trust shall prevent the Debtors or

Liquidating Trust from closing the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code and obtaining a final decree pursuant to Bankruptcy Rule 3022.

(b)     The Unsecured Creditor Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing all of or the last of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code and (ii) the Trustee has administered all Unsecured Creditor Trust Assets and performed all other duties required by the Plan, the Confirmation Order, this Agreement and the Unsecured Creditor Trust.

(c)     If at any time the Trustee determines that the expense of administering the Unsecured Creditor Trust is likely to exceed the value of the remaining Unsecured Creditor Trust Assets, the Trustee may (i) donate any balance to a non-religious charitable organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code of 1986, as amended, that is unrelated to the Debtors and any insider of the Debtors and (ii) dissolve the Unsecured Creditor Trust.  If the aims or purposes of any charities satisfying the conditions of clause (i) above relate to benefitting cancer research, then the Trustee shall choose any recipients of any donations from among such charities.

10.2    Continuance of Trust for Winding Up.  After the termination of the Unsecured Creditor Trust and for the purpose of liquidating and winding up the affairs of the Unsecured Creditor Trust, the Trustee shall continue to act as such until its duties have been fully performed.  Prior to the final distribution of all of the remaining Unsecured Creditor Trust Assets, the Trustee shall be entitled to reserve from such assets any and all amounts required to provide for its own reasonable costs and expenses, in accordance with the terms of this Agreement, until such time as the winding up of the Unsecured Creditor Trust is completed.  Upon termination of the Unsecured Creditor Trust, the Trustee shall retain for a period of three years the books, records, lists of the Unsecured Creditor Trust Beneficiaries, the Trust Register, and other documents and files that have been delivered to or created by the Trustee.  Except as otherwise specifically provided herein, upon the termination of the Unsecured Creditor Trust, the Trustee shall have no further duties or obligations hereunder.

# ARTICLE 11

## Amendment and Waiver

11.1    Amendment and Waiver.

(a)     The Trustee may amend, supplement or waive any provision of, this Agreement, without notice to or the consent of the Unsecured Creditor Trust Beneficiaries or the approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect or inconsistency in this Agreement; (ii) to comply with any requirements in connection with the U.S.  Federal income tax status of the Unsecured Creditor Trust as a "liquidating trust"; (iii) to comply with any requirements in connection with maintaining that the Unsecured Creditor Trust is not subject to registration or reporting requirements of the Exchange Act, the Trust Indenture Act or the Investment Company Act; (iv) to make the Unsecured Creditor Trust a reporting entity and, in such event, to comply with any requirements in connection with satisfying the registration or reporting requirements of the Exchange Act, the Trust Indenture Act or the Investment Company

Act; and (v) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Agreement and the Plan; provided, however, that notice shall be given to the Unsecured Creditor Trust Beneficiaries and the Liquidating Trust promptly after such amendment, supplement or waiver is effective.

(b)     Any provision of this Agreement that the Trustee cannot amend pursuant to Section 11.1(a) of this Agreement may be amended or waived by the Trustee, subject to approval of the Oversight Committee as set forth in Section 3.9 of this Agreement, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing.

(c)     Notwithstanding anything contained in this Section 11.1, no amendment, supplement, or waiver may be made to this Agreement that (i) would adversely affect the payments and/or distributions to be made under this Agreement to (or on behalf or for the account of) any Unsecured Creditor Trust Beneficiary, or (ii) is inconsistent with the purpose and intention of the Unsecured Creditor Trust to liquidate in an expeditious but orderly manner the Unsecured Creditor Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

## ARTICLE 12

## Miscellaneous Provisions

12.1     <u>Intention of Parties to Establish the Unsecured Creditor Trust.</u>  This Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended in accordance with Section 11.1 to comply with such federal income tax laws, which amendments may apply retroactively.

12.2     <u>Litigation Costs.</u>  If, during the term of this Agreement, any dispute arises among the parties to this Agreement regarding the provisions of this Agreement or the enforcement thereof, each party shall bear its own costs and expenses, including attorneys' fees.

12.3     <u>Laws as to Construction.</u>  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

12.4     <u>Jurisdiction.</u>  Without limiting any Person's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties, including the Unsecured Creditor Trust Beneficiaries, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

12.5     <u>Severability.</u>  If any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of

such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

12.6   Notices.  All notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by first class U.S. mail; or (iv) sent by commercial delivery service or courier.

Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

| If to the Trustee: | |
| --- | --- |
| | |
| (with a copy to) | |
| | |
| If to the Debtors: | Chad J. Shandler<br>c/o FTI Consulting<br>Three Times Square<br>9th Floor<br>New York, NY 10036 |
| | |
| (with a copy to) | Porter Hedges LLP<br>1000 Main Street, 36th Floor<br>Houston, TX  77002<br>Telephone: (713) 226-6000<br>Facsimile: (713) 228-1331<br>Attn:   John F. Higgins, Esq.<br>        Eric M. English, Eq.<br>        Genevieve M. Graham, Esq. |
| | |
| If to the Unsecured Creditor Trust Beneficiaries: | To the name and address set forth on the registry maintained by the Trustee. |

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication; and (iii) if by mail, on the date of receipt.  Any Person from time to time may change his, her or its address, facsimile number, or other information for the purpose of notices to that Person by giving notice specifying such change to the Trustee.  The Unsecured Creditor Trust shall only be require to provide notices to (i) an adverse party on a particular matter, (ii) the Oversight Committee, (iii) the Prepetition Secured Parties and (iv) any Party that refiles a request for notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure after the Effective Date.

12.7     <u>Fiscal Year.</u>  The fiscal year of the Unsecured Creditor Trust will begin on the first day of the month following the Effective Date and end on the last day of the month on which the Effective Date occurred of each calendar year.

12.8     <u>Construction; Usage.</u>

(a)     <u>Interpretation</u>.  In this Agreement, unless a clear contrary intention appears:

(i)     the singular number includes the plural number and vice versa;

(ii)     reference to any Person includes such Person's successors and assigns but, if applicable, only if such successors and assigns are not prohibited by this Agreement, and reference to a Person in a particular capacity excludes such Person in any other capacity or individually;

(iii)     reference to any gender includes each other gender;

(iv)     reference to any agreement, document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof;

(v)     reference to any Applicable Law means such Applicable Law as amended, modified, codified, replaced or reenacted, in whole or in part, and in effect from time to time, including rules and regulations promulgated thereunder, and reference to any section or other provision of any Applicable Law means that provision of such Applicable Law from time to time in effect and constituting the substantive amendment, modification, codification, replacement or reenactment of such section or other provision;

(vi)     "hereunder," "hereof," "hereto," and words of similar import shall be deemed references to this Agreement as a whole and not to any particular Article, Section or other provision hereof;

(vii)     reference to Articles, Sections, Schedules or Exhibits herein shall be deemed to be references to the Articles, Sections, Schedules and Exhibits to this Agreement unless otherwise specified;

(viii)     "including" means including without limiting the generality of any description preceding such term; and

(ix)     references to documents, instruments or agreements shall be deemed to refer as well to all addenda, exhibits, schedules or amendments thereto.

(b)     <u>Legal Representation of the Parties</u>.  This Agreement was negotiated by the parties hereto with the benefit of legal representation and any rule of construction or interpretation otherwise requiring this Agreement to be construed or interpreted against any party hereto shall not apply to any construction or interpretation hereof.

58324/0001-16671211v7

(c)    Headings.  The headings contained in this Agreement are for the convenience of reference only, shall not be deemed to be a part of this Agreement and shall not be referred to in connection with the construction or interpretation of this Agreement.

12.9    Counterparts; Facsimile; PDF.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.  Any facsimile or portable document format copies hereof or signature hereon shall, for all purposes, be deemed originals.

12.10    Entire Agreement.  This Agreement (including the Recitals), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Agreement is intended or shall be construed to confer upon or to give any Entity or Person other than the parties hereto and their respective heirs, administrators, executors, permitted successors, or permitted assigns any right to remedies under or by reason of this Agreement, except that the Persons identified in Article 7 hereof are intended third party beneficiaries of Article 7 hereof and shall be entitled to enforce the provisions thereof as if they were parties hereto.

12.11    No Bond.  The Trustee shall serve without bond, and notwithstanding any state or federal law to the contrary, the Trustee (including any successor trustee) shall be exempt from giving any bond or other security in any jurisdiction.

12.12    Effectiveness.  This Agreement shall become effective on the Effective Date.

12.13    Investment Company Act.  This Unsecured Creditor Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Unsecured Creditor Trust does not and will not hold itself out as, an "investment company" or an entity "controlled" by an "investment company" as such terms are defined in the Investment Company Act.

12.14    Successor and Assigns.  This Agreement shall inure to the benefit of the parties hereto and the intended third party beneficiaries identified in Section 12.10 hereof (to the extent specified therein), and shall be binding upon the parties hereto, and each of their respective successors and assigns to the extent permitted by this Agreement and applicable law.

12.15    Particular Words.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

12.16    No Execution.  All funds in the Unsecured Creditor Trust shall be deemed in *custodia legis* until such times as the funds have actually been paid to or for the benefit of an Unsecured Creditor Trust Beneficiary, and no Unsecured Creditor Trust Beneficiary or any other Person can execute upon, garnish or attach the Unsecured Creditor Trust Assets in any manner or

compel payment from the Unsecured Creditor Trust except by an order of the Bankruptcy Court. Distributions from the Unsecured Creditor Trust will be governed solely by the Plan and this Agreement.

12.17   <u>Irrevocability.</u>  The Unsecured Creditor Trust is irrevocable but is subject to amendment and waiver as provided for in this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**THE DEBTORS:**

**NEIGHBORS LEGACY HOLDINGS, INC.,**
(on behalf of itself and the other Debtors.)

By: _____
Name:  Chad J. Shandler
Title:  Chief Restructuring Officer

**TRUSTEE:**

By: _____
Name: Mark Shapiro
Title: Trustee

58324/0001-16671211v7