

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
03/22/2019

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS, INC.,** *et al.*, | § | **Case No. 18-33836 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

## ORDER APPROVING DEBTORS' SECOND AMENDED DISCLOSURE STATEMENT AND CONFIRMING DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Neighbors Legacy Holdings, Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") having filed

a.   on July 12, 2018, and July 23, 2018 (collectively, the "Petition Date"),[2] these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.   on February 20, 2019, the Debtors' *First Amended Joint Plan of Liquidation of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 772], as such has been modified or amended consistent with this Confirmation Order (the "Plan"),[3] attached as **Exhibit A**;

c.   on February 20, 2019, the Debtors' *Second Amended Disclosure Statement for Joint Plan of Liquidation of Neighbors Legacy Holdings, Inc. and its*

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/neighbors. The location of Debtors' principal place of business and the Debtors' service address is: 10800 Richmond Avenue, Houston, Texas 77042.

[2] On July 23, 2018, NEC Beaumont Emergency Center, LP (Case No. 18-34031) and NEC Beaumont Asset Holdings, LLC (Case No. 18-34030) each commenced a case by filing a petition for relief under Chapter 11 of the Bankruptcy Code (the "Beaumont Cases"). The Beaumont Cases are jointly administered with the above-captioned case by Orders entered in each Beaumont Case Directing that Certain Orders in the Chapter 11 Cases of Neighbors Legacy Holdings, Inc., et al. Apply to the Beaumont Cases (Docket No. 3 in NEC Beaumont Asset Holdings, LLC and Docket No. 4 in NEC Beaumont Emergency Center, LP).

[3] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.

7187975v5

*Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 773] (the "Disclosure Statement");

d.      on March 21, 2019, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Chapter 11 Plan of Reorganization* [Docket No. 839] (the "Confirmation Brief");

e.      on March 15, 2019, the Notice of Filing Plan Supplement [Docket No. 802] (the "Plan Supplement")

And the Court having

a.      entered its *Order (i) Conditionally Approving Disclosure Statement; (ii) Scheduling Confirmation Hearing; (iii) Establishing Voting Deadline and Procedures for Filing Objections to Confirmation; (iv) Approving Form of Ballots; and (v) Establishing Solicitation and Tabulation Procedures* (the "Disclosure Statement Order") [Doc. No. 775], which granted conditional approval of the Disclosure Statement, approved the solicitation procedures, vote tabulation procedures, and forms of ballots, and set approval of the Debtors' Disclosure Statement and Plan for a combined hearing on March 22, 2019 (the "Combined Hearing");

b.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Plan Supplement, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c.      held the Combined Hearing;

a.      heard the statements, arguments, and objections made by counsel in respect of Confirmation;

b.      considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation; and

d.      overruled any and all objections to the Plan or Disclosure Statement and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein.

The Court finds that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan. The Court further finds that the transactions contemplated under the Plan, the legal and factual bases set forth in the documents filed in support of Confirmation, the

7187975v5

evidence proffered or adduced by counsel at the Combined Hearing, and the entire record of the Chapter 11 Cases establish just cause for the relief granted herein. After due deliberation and finding good cause to grant the relief in this Order, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

a.      <u>Jurisdiction and Core Proceeding</u>.  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.

b.      <u>Retention of Jurisdiction</u>.   The Court finds and concludes that the Court's retention of jurisdiction as set forth in Article XIII of the Plan comports with 28 U.S.C. § 1334. The Court further finds that the Debtors are proper debtors under Bankruptcy Code § 109.

### Notice, Solicitation and Acceptance

c.      <u>Adequate Notice of Combined Hearing</u>.  The Court finds and concludes that (a) proper, timely and adequate notice of the Disclosure Statement, Plan, Plan Supplement, and time for filing objections to the Disclosure Statement and Plan, together with all deadlines for voting to accept or reject the Plan, was provided, and (b) proper, timely and adequate notice of the Combined Hearing was provided to all holders of Claims and Equity Interests.  No other or further notice of approval of the Disclosure Statement, Confirmation of the Plan or the Combined Hearing is necessary or required.

7187975v5

d.      Adequate Information.      The Disclosure Statement contains "adequate information" (as such term is defined in Bankruptcy Code § 1125(a) and used in Bankruptcy Code § 1126(b)(2)) with respect to the Debtors, the Plan, and the transactions contemplated therein.

e.      Good Faith Solicitation (11 U.S.C. § 1125(e)).  The Court finds and concludes that the Debtors have solicited acceptances of the Plan in good faith, in compliance with the Bankruptcy Code and in accordance with the Disclosure Statement Order.  The Debtors and each of their agents, managers, officers, employees, attorneys, and other professionals are deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan and are therefore entitled to the protections afforded by 11 U.S.C. § 1125(e) and are not, and shall not be, on account of such issuance or solicitation, liable at any time for the violation of any law, rule, or regulation governing the solicitation of acceptances of the Plan or the distribution or dissemination of any information contained in the Plan, the Disclosure Statement, and any and all related documents.  The Debtors have complied with the Disclosure Statement Order.

f.      Voting.  As evidenced by the *Certificate of Service of Leanne V. Rehder Scott* [Docket No. 791] and the *Certification of Leanne V. Rehder Scott With Respect to the Tabulation of Votes on the Debtors' First Amended Joint Plan of Liquidation* [Docket No. 832], votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

**Compliance with Bankruptcy Code § 1129**

g.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with all applicable provisions of the Bankruptcy Code as required by section

1129(a)(1) of the Bankruptcy Code, including, without limitations, sections 1122 and 1123 of the Bankruptcy Code.

(i) <u>Proper Classification—Sections 1122 and 1123</u>. In accordance with Bankruptcy Code §§ 1122(a) and 1123(a), the Court finds and concludes that the Plan: (a) in addition to Administrative Claims, Priority Tax Claims, Professional Claims, and DIP Claims, which need not be classified, classifies eight Classes of Claims and Equity Interests for the Debtors. The Claims and Equity Interests allocated to each Class are substantially similar to other Claims and Equity Interests, as applicable, in each such Class, and such Classes do not unfairly discriminate among holders of Claims and Equity Interests; (b) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (c) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (d) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agreed to less favorable treatment of its respective Claim or Equity Interest; (e) provides for adequate means for the Plan's implementation; and (f) does not provide for the issuance of non-voting equity securities. Following the Effective Date, the Debtors shall take such actions as may be required under state law to wind down their affairs and effectuate dissolution of each corporate entity. Based on the foregoing, the Plan satisfies the requirements of Bankruptcy Code §§ 1122(a) and 1123(a).

(ii) <u>Compliance with 11 U.S.C. § 1123(b)</u>. As permitted by Bankruptcy Code § 1123(b), the Plan: (a) impairs the rights of the holders of certain Classes of Claims and Equity Interests; (b) provides for rejection of all Executory Contracts and Unexpired Leases not assumed as of the Effective Date; (c) provides for the settlement or adjustment of Claims or Equity Interests belonging to the Debtors or their Estates; (d) incorporates procedures for resolving disputed, contingent and unliquidated Claims; (e) contains procedures for making distributions to Allowed Claims and establishing reserves for Claims that have not become Allowed Claims; (f) releases certain Claims and Causes of Action against specified parties; (g) enjoins certain acts by holders of Claims or Equity Interests; (h) exculpates the Debtors and their Professionals from certain Claims and Causes of Action; and (i) includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estates. Based on the foregoing, the Plan satisfies the requirements of Bankruptcy Code § 1123(b).

h. <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. In accordance with Bankruptcy Code § 1129(a)(2), the Court finds and concludes that the Debtors

have complied with the applicable provisions of the Bankruptcy Code.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots and all related documents and notices, and in soliciting and tabulating votes on the Plan.

i.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  In accordance with Bankruptcy Code § 1129(a)(3), the Court finds and concludes that the Debtors have proposed the Plan in good faith and not by any means forbidden by law, and the Debtors and each of the constituents involved in negotiating the Plan, including the Committee and the Prepetition Agent, and each of their respective members, advisors and professionals, have acted, and are presently acting, in good faith in conjunction with all aspects of the Plan.  The Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  All transactions contemplated by the Plan were negotiated and consummated at arm's length, without collusion, and in good faith.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation and solicitation of the Plan.  The Debtors filed these Chapter 11 Cases and proposed the Plan with legitimate and honest purposes including, among other things, (1) facilitating the efficient and economic resolution of all disputes between the Debtors and the other parties in interest concerning Claims, distributions, releases and payment of Professional Fees; (2) maximizing the recovery to holders of Allowed Claims, including those in Class 4 consisting of General Unsecured Claims, under the circumstances of these Chapter 11 Cases; and (3) aiding the orderly liquidation of the Debtors and the Estates through an efficient sale of the Debtors' assets under chapter 11.  Furthermore,

7187975v5

the Plan is in the best interests of the Debtors' Estates and holders of Claims and Equity Interests.

j.      <u>Releases, Exculpations and Injunctions</u>.    The releases, exculpations, and injunction provisions set forth in Article XI of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Such provisions (a) are within the jurisdiction of the Court; (b) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) are integral elements of the Plan and the resolution of the Chapter 11 Cases, such that the failure to effect such provision would seriously impair the Debtors' ability to confirm the Plan; (c) confer material benefits on, and are in the best interests, of the Debtors, the Debtors' Estates, and Holders of Claims and Interests; (e) are, inter alia, supported by extensive consideration; (f) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (g) are consistent with sections 105, 1123, 1129, and other applicable sections of the Bankruptcy Code.

k.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.    In accordance with Bankruptcy Code § 1129(a)(4), the Court finds and concludes that all payments made or to be made by the Debtors for services or for costs and expenses in, or in connection with, these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to approval of, the Court as reasonable, unless otherwise ordered by the Court.  The Court retains jurisdiction to hear and determine all applications for Professional Fees incurred on or before the Effective Date.  Reasonable fees and expenses incurred by Plan Trustees and Professionals, after the Effective Date, shall be paid in Cash from the applicable Plan Trust, in the ordinary course of business, without any further

notice to or action or approval of the Court, in accordance with the Plan and the Plan Trust Agreements.

l.      Identity of Officers (11 U.S.C. § 1129(a)(5)).  In accordance with § 1129(a)(5), the Court finds and concludes that the board of managers or directors of each Debtor shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors, as applicable. The Debtors have disclosed the identity of the Plan Trustees.

m.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  In accordance with Bankruptcy Code § 1129(a)(7), based on the liquidation analysis attached to the Disclosure Statement and the terms of the settlement among the Prepetition Agent, the DIP Agent, the Prepetition Lenders, the DIP Lenders, the Committee, and the Debtors embodied in the Plan pursuant to which certain junior creditors shall receive distributions to which they may not be entitled in a chapter 7 liquidation, the Court finds and concludes that with respect to Impaired Classes of Claims or Equity Interests (i.e., Classes 3, 4, 5, 6, 7, and 8), each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

n.      Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)).  In accordance with Bankruptcy Code § 1129(a)(8), the Court finds and concludes that: (1) Class 1, consisting of Other Priority Claims and Class 2, consisting of Other Secured Claims, are not Impaired under the Plan and are deemed to have accepted the Plan under Bankruptcy Code § 1126(f); (2) Class 3, consisting of Prepetition Secured Loan Claims, and Class 4, consisting of

7187975v5

General Unsecured Claims, are Impaired Classes that have accepted the Plan in accordance with Bankruptcy Code § 1126(c); and (3) Class 5, consisting of Section 510(b) Claims, Class 6, consisting of Intercompany Claims, Class 7, consisting of Intercompany Interests, and Class 8, consisting of Neighbors equity interests, are Impaired Classes deemed to have rejected the Plan in accordance with Bankruptcy Code § 1126(g).  With respect to any Class that has rejected the Plan, the Court finds and concludes that, pursuant to Bankruptcy Code § 1129(b)(1) and (2), the Plan does not discriminate unfairly, and is fair and equitable because no holder junior to those in this Class will receive or retain any property under the Plan.  Accordingly, the Plan can be confirmed under Bankruptcy Code § 1129(b) with respect to these Classes.

o.      <u>Treatment of Administrative and Priority Claims (11 § U.S.C. § 1129(a)(9))</u>.  The Court finds and concludes that the Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(1) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

p.      <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  In accordance with Bankruptcy Code § 1129(a)(10), the Court finds and concludes that at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, without including acceptances of the Plan by any insider.

q.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan contemplates the liquidation of the Debtors' assets for distribution in accordance with the Plan.  The Plan provides sufficient measures for the funding of distributions to be made under the Plan.  Confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors.  Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

r.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  In accordance with Bankruptcy Code § 1129(a)(12), the Court finds and concludes that, to the extent that fees payable to the U.S. Trustee under 28 U.S.C. § 1930 have not been paid, the Plan provides for the payment of all such fees on the Effective Date and as they come due after the Effective Date.

s.      Other Provisions of 11 U.S.C. 1129(a).  The Court finds and concludes that the provisions of 11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15), and (a)(16) are not applicable to the Debtors.

t.      No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  The Plan does not discriminate unfairly and is fair and equitable with respect to any Class that has rejected the Plan, as required by Bankruptcy Code § 1129(b)(1).  Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes.

u.      Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, the Court finds and concludes that Bankruptcy Code § 1129(c) is inapplicable to these Chapter 11 Cases.

v.      Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The Court finds and concludes that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.[4]

w.      Based on the foregoing, the Debtors, as proponents of the Plan, have met their burden of proving the elements of Bankruptcy Code § 1129.

---

[4] The Court finds and concludes that Bankruptcy Code § 1129(e) does not apply to the Debtors or the Plan.

7187975v5

**Modifications to the Plan**

x.      The Court finds and concludes that all modifications made to the Plan, if any, after solicitation of votes on the Plan had commenced, as reflected in this Order, as set forth on the record at the Combined Hearing, or as reflected in the Plan, satisfy the requirements of Bankruptcy Code § 1127(a) and Bankruptcy Rule 3019, are not material or do not adversely affect the treatment and rights of the holders of any Claims or Equity Interests under the Plan who have not otherwise accepted such modifications.  Accordingly, the Debtors have satisfied Bankruptcy Code § 1127(c) and Bankruptcy Rule 3019 with respect to the Plan, as modified, and holders of Claims or Equity Interests that have accepted or rejected the Plan (or are deemed to have accepted or rejected the Plan) are deemed to have accepted or rejected, as the case may be, the Plan as modified on the date of this Order, pursuant to Bankruptcy Code § 1127(d) and Bankruptcy Rule 3019.

**Exemptions**

y.      Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a)). The Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), any transfers from the Debtors to the applicable Plan Trust or any other Person or Entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment.  The appropriate federal, state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or other documents as set forth in the Plan without the payment of any such tax or governmental assessment.

7187975v5

**Transactions Pursuant to the Plan**

z.    <u>Rule 9019 Settlement; Releases and Discharges</u>.  The Court finds and concludes that pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Impaired Claims against and Equity Interests in the Debtors.  Such compromises and settlements are made in exchange for consideration and are in the best interests of the holders of Impaired Claims and Equity Interests, are within the range of possible litigation outcomes, are fair, equitable, reasonable, and are integral elements of the resolution of these Chapter 11 Cases in accordance with the Plan.

aa.    <u>Release and Exculpation</u>.  The failure to effect the release and exculpation provisions of the Plan would impair the Debtors' ability to confirm the Plan.  Accordingly, the compromises and settlements embodied in the release and exculpation provisions described in Article XI of the Plan are approved and incorporated by reference into and as an integral part of this Order.

bb.    <u>Plan Provisions Valid and Binding</u>.  The Court finds and concludes that, upon entry of this Order, each term and provision of the Plan and the Plan Supplement, including the Creditor Trust Agreement, is valid, binding, and enforceable pursuant to its terms.

cc.    <u>Plan Documents Valid and Binding</u>.  The Court finds and concludes that the Plan Trust Agreements and all other documents reasonably necessary to implement the Plan shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements.  The Court further finds and concludes that the Plan Trust Agreements and all other documents reasonably necessary to implement the Plan are in the best interests of the Debtors, their Estates and the Plan Trusts and have been negotiated in good faith and at arm's length.

dd.     <u>Executory Contracts and Unexpired Leases</u>.  The Court finds and concludes that the Debtors have exercised reasonable business judgment in determining to reject Executory Contracts and Unexpired Leases pursuant to Article VI of the Plan.

ee.     <u>Compliance with Bankruptcy Rule 3016</u>.  In accordance with Bankruptcy Rule 3016(a), the Court finds and concludes that the Plan is dated and the entities that submitted it, and filed it, are identified.

ff.     <u>Deemed Consolidation</u>.   The deemed consolidation of the Debtors' Estates provided for in the Plan (i.e. solely for the purposes of voting and receiving distributions) is in the best interests of the Debtors and their Estates.  All of the Debtors are owned by the same Debtor parent and share operating methods and certain financial obligations.

<strong><u>Miscellaneous Provisions</u></strong>

gg.     The Court finds that Confirmation of the Plan is in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests, and all other parties in interest.

hh.     All findings of fact and conclusions of law announced by this Court on the record in connection with the Confirmation of the Plan or otherwise at the Combined Hearing are incorporated herein by reference.

ii.     All findings of fact that are conclusions of law shall be deemed to be conclusions of law, and all conclusions of law which are findings of fact shall be deemed to be findings of fact.

<strong><u>ORDER</u></strong>

Based on the foregoing Findings of Fact and Conclusions of Law, it is **ORDERED AS FOLLOWS**:

1.     <u>Disclosure Statement</u>.  The Disclosure Statement contains adequate information within the meaning of Bankruptcy Code § 1125 and is **APPROVED** on a final basis, and all

7187975v5

objections, statements, and reservations of rights with respect to the Disclosure Statement are overruled.

2.     <u>Confirmation</u>.  The Plan, as attached to this Order and with the modifications and clarifications embodied in this Order, is hereby **CONFIRMED**. The terms of this Order are controlling if any inconsistency exists between the Plan, the Plan Trust Agreements, and this Order.  All objections and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived, or settled are overruled on the merits.  The failure specifically to include or to refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

3.     <u>Binding Effect</u>.  The Plan, its provisions and this Order shall be, and hereby are, binding upon the Debtors and any Creditor or equity security holder of the Debtors, whether or not the Claim or Equity Interest of such Creditor or equity security holder is Impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

4.     <u>Deemed Consolidation</u>.  The deemed consolidation solely for purposes of voting and determining distributions under the Plan, as described more particularly in Article V.A of the Plan, is **APPROVED**.  Each holder of an Allowed Claim who asserts a Claim with an identical basis against multiple Debtors shall be entitled to a single satisfaction of such Claims.  Further, this deemed consolidation will not affect (other than for purposes related to funding distributions under the Plan) the legal and organizational structure of the Debtors or pre- and post-Petition Date guaranties, Liens, and security interests, or distributions out of any insurance policies or

14

proceeds of policies.  No holder of an Allowed Claim shall receive more favorable treatment on account of such Claims had this deemed consolidation not been effected.

5.      <u>Plan Classification Controlling</u>.  The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims or Equity Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors, the Plan Trustees or Holders of Claims or Equity Interests except for voting purposes.

6.      <u>Allowance of Claims</u>.  As provided in Article VIII.A of the Plan, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of time fixed by the Bankruptcy Code, Bankruptcy Rules, or Court, unless otherwise set forth in the Plan or ordered by a Final Order of the Court.  The deemed allowance of a Claim for voting purposes shall in no way limit the rights of any party to challenge any Claim in accordance with the Bankruptcy Code, Bankruptcy Rules, Plan and this Order.

7.      <u>Plan Trustees</u>.  The Plan Trustees shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under the Plan and the Plan Trust Agreements, and as otherwise provided in this Order.  The Plan Trustees shall be the exclusive trustees of the Plan Trust Assets, pursuant to the Plan, for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. §

6012(b)(3), as well as the representatives of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).  Matters relating to the appointment, removal and resignation of the Plan Trustees and the appointment of any successor Plan Trustee are set forth in the applicable Plan Trust Agreements.  The Plan Trustees shall be required to perform their duties as set forth in the Plan and the Plan Trust Agreements.

8.    Authority to Pursue, Settle, or Abandon Retained Causes of Action.  From and after the Effective Date, prosecution and settlement of all Retained Causes of Action shall be the sole responsibility of the Unsecured Creditor Trustee pursuant to the Plan, this Order, and the Unsecured Creditor Trust Agreement. From and after the Effective Date, the Unsecured Creditor Trustee shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of the estates pursuant to section 1123(b)(3) of the Bankruptcy Code, subject to any approval or consultation rights set forth in the Unsecured Creditor Trust Agreement. On the Effective Date, the Unsecured Creditor Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors, except for any actions related to the enforcement of Liquidating Trust Assets. The Liquidating Trustee reserves and retains any and all claims and rights against any and all third parties to enforce the Liquidating Trust Assets whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date; provided, however, the Liquidating Trustee shall not compromise, settle or affect any Avoidance Actions or Retained Cause of Action in connection with the resolution of claims relating to the Transition Services Agreements or collection of accounts receivable.

9.    Plan Distributions.  The Plan Trustees shall make payments and distributions pursuant to the procedures established by Article VII of the Plan.  Any payments or distributions

7187975v5

to be made to Claimants as required by the Plan shall be made only to the holders of Allowed Claims.  Any payments or distributions to be made pursuant to the Plan shall be made on or about the Effective Date, or as soon thereafter as practicable, except as otherwise provided for in the Plan.  Any payment, delivery or distribution by the Plan Trustees pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited into the United States mail.  Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed.  The Plan Trustees in their discretion may establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan and the Plan Trust Agreements.

10.     <u>Releases, Exculpation, Injunction</u>.  The terms and conditions of the releases set forth in Article XI of the Plan, the exculpation set forth in Article XI.D of the Plan, and the injunction set forth in Article XI.E of the Plan are approved as reasonable, fair, and equitable and in the best interests of the Debtors and their Estates and are authorized in their entirety.

11.     <u>Executory Contracts and Unexpired Leases</u>.  Pursuant to Article VI of the Plan, all Executory Contracts and Unexpired Leases shall be deemed automatically rejected as of the Effective Date.  Entry of this Order shall constitute a Court order approving the rejections.

12.     <u>Disputed, Contingent and Unliquidated Claims</u>.  Any Disputed, contingent or unliquidated Claim shall be resolved in accordance with the procedures set forth in Article VIII of the Plan.  As soon as practicable, but no later than the Claims Objection Deadline, the

7187975v5

applicable Plan Trustee may file objections with the Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the applicable Plan Trustee to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Court upon motion by the applicable Plan Trustee, without notice or hearing.  For the avoidance of doubt, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Court, unless otherwise ordered by a Final Order of the Court or Allowed pursuant to the Plan.

13.     <u>U.S. Trustee Reporting and Payment of Fees</u>.  The Debtors shall continue to file with the Court separate monthly operating reports through the Effective Date.  Following the Effective Date, the Liquidating Trust shall be responsible for filing with the Court quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the U.S. Trustee.  All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid in full in Cash by the Debtors (before the Effective Date) or the Liquidating Trustee (on and after the Effective Date) for each quarter (including any fraction therein) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

14.     <u>Transfers by Debtors; Vesting of Assets</u>.  All transfers of property of the Estates, including, without limitation, the vesting of the Plan Trust Assets in the Plan Trusts, (a) are legal, valid and effective transfers of property, (b) vest the transferees with good title to such property free and clear of all Claims, Liens, interests, charges or other encumbrances, except as expressly provided in the Plan or this Order, (c) do not and will not constitute voidable transfers under the Bankruptcy Code or applicable law, (d) do not and will not subject the Plan Trusts or the Plan

18

Trustees to any liability by reason of such transfer under the Bankruptcy Code or under applicable law, including without limitation, any laws affecting successor, transferee, or stamp or recording tax liability, and (e) are for good consideration and value.

15. <u>Cancellation of Interests</u>. Pursuant to Article III.C of the Plan, except as otherwise specifically provided in the Plan or this Order, on the Effective Date, all Equity Interests shall be deemed automatically cancelled, discharged and surrendered and shall be of no further force, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

16. <u>Appointment of Liquidating Trustee; Plan Implementation by Liquidating Trustee</u>. Pursuant to the Plan Supplement, the selection and appointment of Tensie Axton to serve as the Liquidating Trustee from and after the Effective Date, as set forth in the Plan and the Liquidating Trust Agreement, is hereby approved. The proposed compensation for the Liquidating Trustee is hereby approved. All implementing actions required or contemplated by the Plan, including but not limited to the appointment of the Liquidating Trustee and the vesting of the Liquidating Trust Assets in the Liquidating Trust, are hereby authorized and approved in all respects. The Liquidating Trustee shall be authorized to take any action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan or any exhibits or supplement thereto, without further order of the Court except as specifically required. From and after the Effective Date, the Liquidating Trust may manage its affairs and property in accordance with the Plan and the Liquidating Trust Agreement without supervision of or approval by the Court, free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Order.

7187975v5

17. <u>Appointment of Unsecured Creditor Trustee; Plan Implementation by Unsecured Creditor Trustee</u>.  Pursuant to the Plan Supplement, the selection and appointment of Marc Shapiro to serve as the Unsecured Creditor Trustee from and after the Effective Date, as set forth in the Plan and the Unsecured Creditor Trust Agreement, is hereby approved.  The proposed compensation for the Unsecured Creditor Trustee is hereby approved.  All implementing actions required or contemplated by the Plan, including but not limited to the appointment of the Unsecured Creditor Trustee and the vesting of the Unsecured Creditor Trust Assets in the Unsecured Creditor Trust, are hereby authorized and approved in all respects.  The Unsecured Creditor Trustee shall be authorized to take any action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan or any exhibits or supplement thereto, without further order of the Court except as specifically required.  From and after the Effective Date, the Unsecured Creditor Trust may manage its affairs and property in accordance with the Plan and the Unsecured Creditor Trust Agreement without supervision of or approval by the Court, free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Order.

18. <u>Term of Stays</u>.  Except as otherwise provided in the Plan, all injunctions and the stay pursuant to Bankruptcy Code § 362, shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

19. <u>Setoffs</u>.  Pursuant to Article XI.F of the Plan, each Debtor and the Plan Trustees (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an

7187975v5

Interest, may set off against any Allowed Claim or Allowed Interest and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any Distribution is made on account of such Allowed Claim or Allowed Interest), any Retained Causes of Action of any nature that such Debtor, as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or Unsecured Creditor Trustee of any such Retained Causes of Action that such Debtor or Unsecured Creditor Trustee may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Retained Cause of Action of the Debtor unless such Holder has Filed a motion with the Court requesting the authority to perform such setoff on or before the Confirmation Date.

20.     <u>Recoupment</u>.  Pursuant to Article XI.G of the Plan, any holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any asset or Retained Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date.

21.     <u>Order Effective and Enforceable Immediately</u>.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry.

22.     <u>Substantial Consummation</u>.  The Plan shall be deemed to be substantially consummated on the Effective Date.

23.     <u>Notice of the Effective Date</u>.  On or before fourteen (14) days after occurrence of the Effective Date, the Liquidating Trustee shall file with the Court and mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of: (i) entry of this Order; (ii) the occurrence of the Effective Date; (iii) the Administrative Claims Bar Date, the Professional Claims Bar Date, and the bar date for filing Rejection Damages Claims; and (iv) such other matters as the Debtors deem to be appropriate; provided, however, that failure to file such notice shall not affect the effectiveness of the Plan or the rights and substantive obligations of any Person hereunder.  The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

24.     <u>Order Nonseverable</u>.  The provisions of this Order are nonseverable and mutually dependent.

25.     <u>Captions and Headings</u>.  Captions and headings herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, this Order.

26.     <u>Final Order</u>. This Confirmation Order is a Final Order.

27.     <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of each such agreement shall control); <u>provided</u>, <u>however</u>, that corporate governance matters relating to the Debtors shall be governed by the laws of their respective jurisdictions of incorporation.

7187975v5

28. <u>Claims of the Texas Comptroller</u>. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts (the "<u>Texas Comptroller</u>"): (1) nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Comptroller in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Comptroller to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or this Confirmation Order shall be construed to preclude or require the payment of interest on the Texas Comptroller's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Comptroller, the interest rate shall be the statutory interest rate, currently 6.25% per annum; and (5) the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims and may assert such claims by filing a proof of claim form; provided that the Debtors and/or the Liquidating Trustee may object to any such claim on other grounds. Allowed Priority tax claims owed to the Comptroller shall be paid in full (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Debtor's bankruptcy petition date; or (3) as otherwise agreed to by the Comptroller and the Debtors and/or the Liquidating Trustee. The Comptroller's priority tax claims, if Allowed, shall accrue interest at the statutory rate of interest, currently 6.25% per annum, from the Plan's Effective Date until paid in full. The Debtors shall satisfy their franchise tax liability, as set forth in the 2018 franchise tax return filed by the Debtors, on or before the Effective Date.

29.     <u>Claims of Certain Texas Taxing Authorities</u>. The Debtors shall pay all unpaid Allowed Other Secured Claims owing to Brazoria County Tax Office, Crosby ISD, Crosby MUD, Harris County MUD 276, Humble ISD, City of Houston, Alief ISD, Valley Ranch MUD 1, Wichita County, Lubbock CAD, Midland County, Tyler ISD, Porter County Tax Office (the "<u>Taxing Entities</u>") within 15 days of the Effective Date. All Taxing Entities with Allowed Other Secured Claims shall retain all tax liens until their respective Allowed tax claims have been paid in full. Taxing Entities shall be paid at the applicable non-bankruptcy interest rates for pre-petition Allowed Other Secured Claims. In the event of a Default in payment to a Taxing Entity as herein provided, the Taxing Entity shall send written notice of default to the Liquidating Trustee. If the default is not cured within thirty (30) days after notice of the default is mailed, the Taxing Entity may exercise any and all rights and remedies under applicable non-bankruptcy law to collect all delinquent taxes, penalties, interest, attorney's fees, and costs assessed under Texas law.

30.     <u>Objections of Certain Directors and Officers</u>. Paul Alleyne, Cyril Gilman, Dharmesh Patel, Hitesh Patel, Quang Henderson, Setul Patel, Michael Chang, Andy Chen (the "<u>Objecting Directors</u>") are not Releasing Parties under the Plan.  Any objection by the Objecting Directors to releases under the Plan and to deemed consolidation under the Plan are hereby withdrawn.

31.     <u>Claims of Certain Texas Taxing Authorities</u>. Notwithstanding anything to the contrary contained within the Plan, the secured *ad valorem* tax claims asserted by Angelina County, Cameron County, Cypress-Fairbanks Independent School District, Ector CAD, City of El Paso, Galveston County, Gregg County, City of Harlingen, Harlingen CISD, Harris County, Hidalgo County, Jefferson County, City of McAllen, Montgomery County, Orange County,

Texas City Independent School District, and Tom Green CAD ("Texas Tax Authorities") shall be paid by, the later of, thirty (30) days following the Effective Date or the date such claim is an Allowed Claim with interest at the rate of twelve percent (12%) per annum, provided such interest is payable pursuant to sections 506(b) and 511 of the United States Bankruptcy Code. The Texas Tax Authorities shall retain their statutory liens, if any, securing their claims until such time as the tax claims are paid in full.

      32.    <u>Century Square Commercial Venture, LLC</u>. Century Square Commercial Venture, LLC, Successor in Interest to Midway Hospitality, L.P., preserves all defenses including offset, up to the amount claimed by the Unsecured Creditor's Trust or assignee of the Debtors' potential claims but shall not seek an affirmative recovery.

      33.    <u>Alam Opt Out.</u>  As announced on the record at the Confirmation Hearing, Sohail Alam has opted out of the releases provided in the Plan.

      34.    <u>Infinity Emergency Management Group., LLC. And Certain Related Directors and Officers.</u>  For the avoidance of doubt, the terms of the Confirmed Plan and creation of the Unsecured Creditor Trust under Article V of the Confirmed Plan shall not affect the rights, if any, of the former officers and directors of the Debtors designated as Insureds under the D&O Policies, or Infinity's right, to seek and receive coverage for losses or proceeds under the D&O Policies, including but not limited to reimbursement of defense costs, or the rights, if any, of the Unsecured Creditors Trust to oppose, in any fashion, any such efforts by the former officers or directors of the Debtors or Infinity.  This Confirmation Order does not determine or resolve Infinity's proof of claim or litigation claims.  Those claims will be determined in the litigation and/or in the objection to Infinity's proof of claim.

7187975v5

35.    <u>Gerald H. Phipps, Inc.</u>  If Gerald H. Phipps has the beneficial interest in funds over which the Debtor has only bare legal title, then Phipps may assert all rights with respect to such funds (or against any person who has diverted funds in contravention of applicable law and in which the Debtor had only bare legal title) notwithstanding any transfers of the bare legal title to the Unsecured Creditors Trust.  If Phipps asserts any such right, then any person or entity with standing may contest whether the Unsecured Creditors Trust has only bare legal title, or any other defense or assertion of right.

36.    <u>Jurisdiction Retention and Retention of Certain Rights.</u>  Nothing in the Amended Plan or Confirmation Order shall be construed as a waiver by the former and/or current Neighbors' D&Os to their right to a trial by jury, if any, under the Seventh Amendment of the United States Constitution, their right to seek that a suit be remanded to state court, and/or their right to withdraw the reference, if any, to the federal district court for the Southern District of Texas. Neither shall the approval of the Amended Plan have any negative inference toward the former and/or current Neighbors' D&Os regarding these rights.

Signed:

March 22, 2019

Marvin Isgur
United States Bankruptcy Judge

7187975v5

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS, INC.,** *et al.*, | § | **Case No. 18-33836 (MI)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PORTER HEDGES LLP**
John F. Higgins
Eric M. English
Genevieve M. Graham
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:  (713) 226-6648
Facsimile:   (713) 226-6628
Email:       jhiggins@porterhedges.com
             eenglish@porterhedges.com
             ggraham@porterhedges.com

*Counsel to the Debtors and Debtors in Possession*

Dated: February 20, 2019

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/neighbors. The location of Debtors' principal place of business and the Debtors' service address is: 10800 Richmond Avenue, Houston, Texas 77042.

## TABLE OF CONTENTS

ARTICLE I.  DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ............................... 1
    A.  Defined Terms ......................................................................... 1
    B.  Rules of Interpretation ......................................................... 15
    C.  Computation of Time ............................................................ 16
    D.  Governing Law ..................................................................... 16
    E.  Reference to Monetary Figures ............................................. 17

ARTICLE II.  ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS ................................................................................ 17
    A.  Administrative Claims .......................................................... 17
    B.  DIP Claims ........................................................................... 18
    C.  Priority Tax Claims .............................................................. 18
    D.  Statutory Fees ....................................................................... 18

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......................................................................... 19
    A.  Introduction ......................................................................... 19
    B.  Summary of Classification .................................................... 19
    C.  Treatment of Claims and Interests ....................................... 20

ARTICLE IV.  ACCEPTANCE REQUIREMENTS ....................................... 22
    A.  Acceptance or Rejection of this Plan .................................... 22
    B.  Confirmation of this Plan Pursuant to Section 1129(b) of the Bankruptcy Code ............................................................... 23
    C.  Controversy Concerning Impairment ................................... 23

ARTICLE V.  MEANS FOR IMPLEMENTATION OF THE PLAN .................. 23
    A.  Deemed Consolidation .......................................................... 23
    B.  Transactions Effective as of the Effective Date .................... 24
    C.  The Liquidating Trust .......................................................... 24
    D.  The Unsecured Creditor Trust .............................................. 25
    E.  Settlement Regarding Unsecured Creditor Recoveries........... 25
    F.  Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee 25
    G.  Certain Powers and Duties of the Unsecured Creditor Trust and Unsecured Creditor Trustee .................................................................. 26
    H.  Federal Income Tax Treatment of the Plan Trusts for the Liquidating and Unsecured Creditor Trust Assets; Tax Reporting and Tax Payment Obligations ........................................................................ 27
    I.  Authority to Pursue, Settle, or Abandon Retained Causes of Action ............ 28
    J.  Liquidating Trust's Accounting for Certain Recoveries.................. 29
    K.  Filing of Monthly and Quarterly Reports ........................... 30
    L.  Corporate Existence; Compliance with Transition Services Agreements ...... 30
    M.  Directors and Officers of the Debtors................................... 30
    N.  Corporate Authorization ..................................................... 30

i

O. Effectuating Documents and Further Transactions...........................................30
P. Employee Agreements ......................................................................................31
Q. Exemption from Certain Taxes and Fees ..........................................................31
R. Duration of the Plan Trusts ..............................................................................31
S. Wind Down of Plan Trusts ...............................................................................31

ARTICLE VI.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ..............................................................................................32
A. Treatment of Executory Contracts and Unexpired Leases ..............................32
B. Preexisting Obligations to the Debtors Under Executory Contracts and
Unexpired Leases ............................................................................................32
C. Rejection Damages Claim................................................................................32
D. Reservation of Rights......................................................................................32

ARTICLE VII.   PROVISIONS GOVERNING DISTRIBUTIONS .........................................32
A. Timing and Calculation of Amounts to Be Distributed; Entitlement to
Distributions....................................................................................................32
B. Plan Trustees ..................................................................................................33
C. No De Minimis Distributions Required ...........................................................33
D. Disputed Claims Reserves ..............................................................................33
E. Distributions on Account of Claims Allowed After the Effective Date .........34
F. Delivery of Distributions and Undeliverable or Unclaimed Distributions .....34
G. Compliance with Tax Requirements/Allocations ............................................35
H. Claims Paid or Payable by Third Parties ........................................................36
I. Allocation of Plan Distributions between Principal and Interest....................36

ARTICLE VIII.   PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ............................................37
A. Allowance and Disallowance of Claims ..........................................................37
B. Prosecution of Objections to Claims...............................................................37
C. Deadline to Object to Claims...........................................................................37
D. Estimation of Claims.......................................................................................38
E. Amendments to Claims....................................................................................38
F. Distributions After Allowance ........................................................................38

ARTICLE IX.   PATIENT RECORDS ...............................................................................38
A. Patient Records ...............................................................................................38
B. Patient Publication Notice...............................................................................39
C. Service of Notice on Patients ..........................................................................39
D. Patient Records Service Provider....................................................................39
E. Notice to HHS .................................................................................................39
F. Destruction of Patient Records .......................................................................39
G. Further Orders .................................................................................................40
H. Patient Records Costs ......................................................................................40

ARTICLE X.   CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE EFFECTIVE DATE ..................................................................40

ii

|  | A. | Conditions Precedent to Confirmation | 40 |
|  | B. | Conditions Precedent to the Effective Date | 40 |
|  | C. | Waiver of Conditions | 41 |
|  | D. | Effect of Nonoccurrence of Conditions | 41 |

| ARTICLE XI. | | SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS | 41 |
|  | A. | Compromise and Settlement of Claims, Interests, and Controversies | 41 |
|  | B. | RELEASES BY THE DEBTORS | 42 |
|  | C. | RELEASES BY HOLDERS OF CLAIMS AND INTERESTS | 42 |
|  | D. | EXCULPATION | 43 |
|  | E. | INJUNCTION | 43 |
|  | F. | Setoffs | 44 |
|  | G. | Recoupment | 44 |

| ARTICLE XII. | | BINDING NATURE OF PLAN | 44 |

| ARTICLE XIII. | | RETENTION OF JURISDICTION | 45 |

| ARTICLE XIV. | | MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN | 47 |
|  | A. | Modifications and Amendments | 47 |
|  | B. | Effect of Confirmation on Modifications | 47 |
|  | C. | Revocation or Withdrawal of the Plan | 47 |
|  | D. | Substantial Consummation of the Plan | 47 |

| ARTICLE XV. | | MISCELLANEOUS PROVISIONS | 47 |
|  | A. | Bar Date for Administrative Claims | 47 |
|  | B. | Successors and Assigns | 48 |
|  | C. | Reservation of Rights | 48 |
|  | D. | Service of Documents | 48 |
|  | E. | Dissolution of Committee | 49 |
|  | F. | Discharge of the Patient Care Ombudsman | 49 |
|  | G. | Nonseverability of Plan Provisions | 49 |
|  | H. | Return of Security Deposits | 49 |
|  | I. | Term of Injunctions or Stays | 50 |
|  | J. | Entire Agreement | 50 |
|  | K. | Exhibits | 50 |
|  | L. | Votes Solicited in Good Faith | 50 |
|  | M. | Conflicts | 50 |
|  | N. | Filing of Additional Documents | 50 |

## INTRODUCTION

Neighbors Legacy Holdings, Inc. and its affiliates and subsidiaries in the above-captioned Chapter 11 Cases respectfully propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I hereof.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

### ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME AND GOVERNING LAW

A.     *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date through the Effective Date; (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code to the extent such request is granted by the Bankruptcy Court.  With respect to Administrative Claims which are allowed pursuant to sections 503(b)(1), 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtors only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

2.     "*Administrative Claim Bar Date*" means (other than for (i) quarterly U.S. Trustee fees and (ii) Professional Fee Claims) the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

3.     "*Administrative Claim Reserve*" reserve established to pay Administrative Claims that are not Professional Fee Claims.

4.     "*Administrative Claim Reserve Amount*" means the total amount of estimated Administrative Claims estimated in accordance with Article II.A.2 hereof.

1

5. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6. "*Allowed*" means, as to a Claim, or applicable portion thereof, (a) that has been listed in the Schedules (and thereafter continues to be listed in any subsequently filed amended versions of such Schedules) as liquidated in amount and not Disputed or contingent and for which no Proof of Claim has been filed, (b) where a Proof of Claim was timely and properly filed by the applicable deadline under the Claims Bar Date Order as to which (i) such Claim is not Disputed, or (ii) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order or by the agreement of the holder of such Claim, on the one hand, and the Debtors or the Liquidating Trustee, as applicable, on the other, or (c) that has been allowed under any Final Order, whether or not such Claim was scheduled or is the subject of a filed Proof of Claim, including, without limitation, the Claims of the Agent and DIP Agent as set forth in the Final DIP Order (as hereinafter defined).

7. "*Available Cash*" means all of the Debtors' or the Liquidating Trust's cash remaining after the payment of Administrative Claims, Priority Tax Claims, DIP Claims, quarterly U.S. Trustee fees, Other Secured Claims, Other Priority Claims, and reservation of the GUC Settlement Cash by the Unsecured Creditor Trustee.

8. "*Avoidance Actions*" means any and all claims and Causes of Action which any of the Debtors, the Debtors in Possession, the Estates, the Unsecured Creditor Trustee or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws and the proceeds thereof.

9. "*Balloting Agent*" means Kurtzman Carson Consultants LLC, in its capacity as notice and balloting agent for the Debtors.

10. "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Balloting Agent on or before the Voting Deadline.

11. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases.

12. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

13. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

2

14.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

16.     "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, claims for relief, rights, suits, debts, dues, damages, reckonings, accounts, rights to legal remedies, rights to equitable remedies, rights to payment, controversies, agreements, covenants, promises, judgments of every type, responsibilities, disputes, assertions, allegations, proceedings, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date and also includes, without limitation: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claim to avoid transfers and/or transactions under any state or common law or other similar claim; and (f) D&O Claims.

17.     "*Chapter 11 Cases*" means the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

18.     "*Chief Restructuring Officer*" means Chad J. Shandler, in his capacity as Chief Restructuring Officer for the Debtors.

19.     "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

20.     "*Claims Bar Date*" means the November 14, 2018 deadline by which proofs of claim must be filed under the Claims Bar Date Order by all Entities other than Governmental Units.

21.     "*Claims Bar Date Order*" means the order entered by the Bankruptcy Court setting, among other things, the Claims Bar Date [Docket No. 14].

22.     "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

23.     "*Closed Centers*" means the centers that the Debtors closed prior to the Petition Date (NEC Lakeline Emergency Center, LP, NEC Zaragoza Emergency Center, LP, NEC Tyler Emergency Center, LP, NEC Texas City Emergency Center, LP, NEC Wichita Falls Emergency Center, LP, NEC Longview Emergency Center, LP, NEC San Angelo Emergency Center, LP, NEC College Station Emergency Center, LP, NEC Lufkin Emergency Center, LP, NEC West

6778127v24

Warwick Emergency Center, LP, NEC Greeley Emergency Center, LP, NEC Kerrville Emergency Center, LP, and NEC Amarillo South Emergency Center, LP).

24.     "*Committee*" means the official committee of unsecured creditors (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as such committee may be reconstituted from time to time [Docket No. 87].

25.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

26.     "*Confirmation Date*" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "*Confirmation Hearing*" means the hearing or hearings held by the Bankruptcy Court to consider Confirmation, as such hearing may be adjourned or continued from time to time in the Debtors' sole discretion.

28.     "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

29.     "*Consummation*" means the occurrence of the Effective Date.

30.     "*D&O Claims*" means any and all rights and claims against the Debtors' current and former directors and officers including, without limitation, claims for breach of fiduciary duty, breach of the duty of care, misrepresentation of company assets, misuse of company funds, fraud, failure to comply with workplace laws, theft of intellectual property and general errors and omissions committed in the management of the Debtors, and the proceeds of any such claims, including any recovery under D&O Policies associated therewith.

31.     "*D&O Policies*" means collectively, what is commonly understood as any "Directors and Officers Liability" coverage and any other executive or fiduciary liability and/or employment practices liability insurance policies belonging to the Debtors or under which any of the Debtors and their current and former directors and officers are insureds, insured persons or are named as an insured or additional insured (including any and all amendments, endorsements, renewals and extensions thereof).

32.     "*Debtor*" or "*Debtor in Possession*" means one of the Persons in the above-captioned cases, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code.

33.     "*Debtor Releases*" shall have the meaning set forth in Article X.B of the Plan.

34.     "*DIP Agent*" means KeyBank, National Association in its capacity as the administrative agent under the DIP Credit Agreement.

35.     "*DIP Claims*" means any claim arising under the DIP Credit Agreement.

36. "*DIP Credit Agreement*" means that certain Debtor-in-Possession Credit Agreement (as amended, restated, or supplemented) dated August 30, 2018 between Neighbors Global Holdings, LLC and the DIP Secured Parties.

37. "*DIP Lenders*" means those lenders who advanced the DIP Loans pursuant to the DIP Credit Agreement.

38. "*DIP Loans*" means the loans advanced pursuant to the DIP Credit Agreement.

39. "*DIP Secured Parties*" means the DIP Lenders and the DIP Agent.

40. "*Disallowed*" means, with reference to any Claim, a finding of the Bankruptcy Court in a Final Order or a provision of the Plan, providing that a Claim shall not be Allowed.

41. "*Disclosure Statement*" means the *Disclosure Statement for Joint Plan of Liquidation of Neighbors Legacy Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated February 8, 2019, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

42. "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

43. "*Disputed Claims Reserve*" means a reserve of Cash that may be funded on or after the Effective Date pursuant to Article VII.D hereof.

44. "*Distribution*" means the payment of Cash or other property, as the case may be, in accordance with the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

45. "*Distribution Record Date*" means the date on which the Confirmation Order is entered or such other date that is designated by the Debtors.

46. "*Effective Date*" means the date declared by the Debtors after the Confirmation Order becomes a Final Order and all of the conditions specified in Article IX.B hereof have been satisfied or waived pursuant to Article IX.C hereof.

47. "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

48. "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

49. "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

50. "*Exculpated Claim*" means any Claim related to any act or omission that occurred after the Petition Date in connection with the Debtors' in- Bankruptcy Court restructuring efforts, the Debtors' Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of

the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the Distribution of property under the Plan or any other agreement; *provided*, *however*, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or fraud.

51.     "*Exculpated Party*" means each of the Debtors, the Prepetition Secured Parties, the DIP Secured Parties, the Committee and each of its members, but solely in their capacities as such, and not individually, the Chief Restructuring Officer, the Patient Care Ombudsman, and, with respect to each of the foregoing, its and their officers, directors, managers, managing members, principals, partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals, in their capacity as such, only to the extent such officers, directors, managers, managing members, principals, partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals worked for or otherwise represented the Debtors after the Petition Date.  For the avoidance of doubt, the term Exculpated Party shall include the Debtors' officers, if any, that are terminated after the closing of all of the Purchase Agreements.

52.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

53.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in the Chapter 11 Cases.

54.     "*Final DIP Order*" means the Final Order (a) Authorizing Use of Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code and Granting Adequate Protection, and (b) Authorizing Debtor to Obtain Postpetition Financing and Granting Liens and Superpriority Claims [Docket No. 193].

55.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, has resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided however*, that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule may be made with respect to such order shall not cause such order not to be a Final Order.

56.     "*General Unsecured Claim*" means any unsecured Claim, specifically including any Prepetition Deficiency Claim, against any of the Debtors that is not an Administrative Claim,

6778127v24

Priority Tax Claim, Other Priority Claim, Professional Fee Claim, Section 510(b) Claim, or an Intercompany Claim.

57.     "*Governmental Claims Bar Date*" means the January 8, 2019 deadline by which Governmental Units must file proofs of claim under the Claims Bar Date Order.

58.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

59.     "*GUC Settlement Cash*" means $275,000 of the proceeds from the sale of the Collateral and/or DIP Collateral (each as defined in the Final DIP Order) pursuant to paragraph 45 of the Final DIP Order.

60.     "*HHS*" shall mean the United States Department of Health and Human Services.

61.     "*HHS Records Request*" shall mean the written request to be sent by certified mail to HHS pursuant to section 351(2) of the Bankruptcy Code requesting permission from HHS to deposit the Patient Records with HHS.

62.     "*Holder*" means any Person or Entity holding a Claim or an Interest.

63.     "*Impaired*" means any Claim or Interest in an Impaired Class.

64.     "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

65.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

66.     "*Intercompany Interest*" means an Equity Security in a Debtor held by another Debtor.

67.     "*Interests*" means, collectively, the Neighbors Equity Interests, Intercompany Interests, and Series LLC Interests.

68.     "*IRC*" means the U.S. Internal Revenue Code of 1986, as amended.

69.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

70.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

71.     "*Liquidating Debtors*" means the Debtors after the Effective Date.

72.     "*Liquidating Trust*" means the Liquidating Trust established under Article V.C of the Plan and pursuant to the Liquidating Trust Agreement.

73.     "*Liquidating Trust Agreement*" means the agreement creating the Liquidating Trust to be implemented pursuant to Article V of the Plan, and substantially in the form included in the Plan Supplement.

74.     "*Liquidating Trust Assets*" means all assets of the Debtors, and proceeds from such assets, including the Remaining Prepetition Collateral and the Liquidating Trust Cash other than (i) the Unsecured Creditor Trust Assets and (ii) all permits, licenses, regulatory authorizations, approvals, and any other asset or attribute necessary to comply with the Debtors' duties under the Transition Services Agreements.

75.     "*Liquidating Trust Cash*" means all Cash held by the Debtors on the Effective Date (including the Professional Fee Escrow) available after the satisfaction of the costs and expenses of the Liquidating Trust, including the fees of the Liquidating Trustee and counsel to the Liquidating Trust other than the GUC Settlement Cash and any amounts recovered by the Unsecured Creditor Trust on account of the Retained Causes of Action.

76.     "*Liquidating Trustee*" means that person selected by the Debtors in consultation with the Committee and the Prepetition Agent, to be identified in the Plan Supplement.

77.     "*Neighbors Equity Interest*" means any Equity Security, including warrants to acquire such interests, in Neighbors Legacy Holdings, Inc. or Neighbors Physician Group, PLLC, or any Series LLC Interest.

78.     "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

79.     "*Other Secured Claim*" means any Secured Claim other than Prepetition Secured Loan Claims.

80.     "*Patient*" means a patient as defined in section 101(40A) of the Bankruptcy Code.

81.     "*Patient Care Ombudsman*" means Susan N. Goodman, in her capacity as the Patient Care Ombudsman pursuant to the Notice of Appointment Patient Care Ombudsman [Docket No. 204].

82.     "*Patient Publication Notice*" shall mean the notice by publication given to former Patients of the Debtors' Closed Centers.

83.     "*Patient Records*" means patient records as defined in section 101(40B) of the Bankruptcy Code.

84.     "*Patient Records Costs*" shall mean any costs reasonably incurred by the Liquidating Trustee in connection with the preservation, maintenance, storage, transfer or destruction of Patient Records, including without limitation all such costs incurred by the Liquidating Trustee in complying with Article IX of this Plan.

85.     "*Patient Records Mailing List*" shall mean the list of the Debtors' Patients between the Petition Date and the Effective Date as derived from the Debtors' electronic billing records to the extent that such electronic records are reasonably available to the Debtors or the Liquidating Trustee.

86.     "*Patient Records Mail Notice*" shall mean notice consistent with Bankruptcy Rule 6011(b), in such form as may be approved by the Bankruptcy Court in the Confirmation Order, to be deposited in the United States Mail, first class, postage prepaid, addressed to all Persons reflected on the Patient Records Mailing List.

87.     "*Patient Records Maintenance Period*" is the 365-day period identified in section 351(1)(A) of the Bankruptcy Code immediately following the publication of the Patient Publication Notice.

88.     "*Patient Records Service Agreement*" means the document approved in form by the Bankruptcy Court pursuant to which the Patient Records Service Provider will maintain and store Patient Records and respond to requests for Patient Records during the Patient Records Maintenance Period consistent with section 351 of the Bankruptcy Code.

89.     "*Patient Records Service Provider*" means the third party service provider engaged pursuant to the Patient Records Service Agreement.

90.     "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

91.     "*Petition Date*" means July 12, 2018, and July 23, 2018 solely with respect to NEC Beaumont Asset Holdings, LLC and NEC Beaumont Emergency Center, LP.

92.     "*Plan*" means this *Joint Plan of Liquidation of Neighbors Legacy Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated February 8, 2019, as the same may be amended, supplemented, or modified from time to time, including, without limitation, any exhibits hereto, which are incorporated herein by reference.

93.     "*Plan Supplement*" means the supplemental appendix to this Plan, filed with the Court no later than five (5) calendar days prior to the Voting Deadline, which contains, among other things, draft forms or signed copies, as the case may be, of the Liquidating Trust Agreement, the Unsecured Creditor Trust Agreement, the schedule of Retained Causes of Action, and any schedules, lists, or documents that supplement or clarify aspects of this Plan and are identified as part of the Plan Supplement.

94.     "*Plan Trustees*" means the Liquidating Trustee and the Unsecured Creditor Trustee, respectively.

95.     "*Plan Trusts*" means the Liquidating Trust and the Unsecured Creditor Trust, respectively.

96.     "*Plan Trusts' Agreements*" means the Liquidating Trust Agreement and the Unsecured Creditor Trust Agreement, respectively.

97.     "*Prepetition Agent*" means KeyBank, National Association as administrative agent under the Prepetition Credit Agreement in its capacity as agent under the Prepetition Credit Agreement.

98.     "*Prepetition Collateral*" means the property subject to the Prepetition Liens.

99.    "*Prepetition Credit Agreement*" means that certain Credit Agreement (as amended, restated, or supplemented) dated November 19, 2015 between Neighbors Global Holdings, LLC and the Prepetition Secured Parties.

100.    "*Prepetition Deficiency Claim*" means the portion of any Prepetition Loan Claim that remains after payment of the Secured portion of such Claim.

101.    "*Prepetition Financing Agreements*" means the Prepetition Credit Agreement together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each agreement, as so amended or otherwise modified (without giving effect to any other amendments restatements, supplements or modifications thereto after the date hereof).

102.    "*Prepetition Lenders*" means those lenders who advanced the Prepetition Loans pursuant to the Prepetition Credit Agreement.

103.    "*Prepetition Liens*" means the security interests and liens granted by the Debtors to the Prepetition Agent to secure the Prepetition Secured Debt.

104.    "*Prepetition Loans*" means the loans advanced pursuant to the Prepetition Credit Agreement.

105.    "*Prepetition Loan Claim*" means any Claim arising under the Prepetition Credit Agreement.

106.    "*Prepetition Secured Debt*" means collectively, at least $110,195,053.48 plus interest accrued and accruing, costs, expenses, fees (including attorney's fees and legal expenses) other charges and other obligations owed to the Prepetition Lenders as of the Petition Date by the Debtors party to or otherwise obligated under the Prepetition Financing Agreements.

107.    "*Prepetition Secured Loan Claim*" means the portion of any Prepetition Loan Claim that is Secured.

108.    "*Prepetition Secured Parties*" means the Prepetition Lenders together with the Prepetition Agent who made certain advances under the Prepetition Credit Agreement, KeyBanc Capital Markets Inc., as joint lead arranger and joint bookrunner, Compass Bank Association, as joint lead arranger, a joint bookrunner, and sole syndication agent, and LegacyTexas Bank, as the documentation agent.

109.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

110.    "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interest under the Plan.

111.    "*Professional*" means a Person or Entity: (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

112.    "*Professional Fee Claims*" means Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

113.    "*Professional Fee Escrow*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date, pursuant to Article II.A.2 hereof.

114.    "*Professional Fee Reserve Amount*" means the total amount of Professional Fee Claims estimated in accordance with Article II.A.4 hereof.

115.    "*Professional Fees*" means all fees, costs and expenses incurred in these Chapter 11 Cases by any Professional and awarded by Final Order of the Bankruptcy Court pursuant to §§ 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

116.    "*Proof of Claim*" means a proof of Claim or Interest filed against any Debtor in these Chapter 11 Cases.

117.    "*Purchase Agreements*" means, collectively, certain purchase agreements titled:

(A)    Asset Purchase Agreement by and among NEC Baytown Emergency Center, LP, NEC Crosby Emergency Center, LP, NEC Kingwood Emergency Center, LP, NEC Pasadena Emergency Center, LP, NEC Pearland Emergency Center, LP, and NEC Porter Emergency Center, LP, as Operating Sellers, NEC Baytown Asset Holdings, LLC, NEC Kingwood Asset Holdings, LLC, and NEC Pearland Asset Holdings, LLC as Owned Real Property Sellers, Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC as Corporate and Shared Services Sellers, Neighbors Emergency Center, LLC as IP Seller, and Altus Health Systems OPCO, LLC, as Opco Buyer, Altus Health System Realty, LLC, as Realty Buyer dated July 10, 2018;

(B)    Asset Purchase Agreement by and among NEC Mueller Emergency Center, LP, as Operating Seller and Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate and Shared

11

Services Sellers, and AEC ER 4, LLC, as Buyer dated September 12, 2018;

(C) Asset Purchase Agreement by and among NEC Amarillo Emergency Center, LP, NEC Beaumont Emergency Center, LP, NEC Lubbock Emergency Center, LP, NEC McAllen Emergency Center, LP, NEC Orange Emergency Center, LP, NEC Port Arthur Emergency Center, LP, as Operating Sellers, NEC Beaumont Asset Holdings, LLC, as Owned Real Property Seller, and Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate and Shared Services Sellers, and Exceptional H.C., Inc., as Buyer, dated September 12, 2018;

(D) Asset Purchase Agreement by and among NEC Eastside Emergency Center, LP, NEC Brownsville Emergency Center, LP, and NEC Harlingen Emergency Center, LP, as Operating Sellers, and Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate and Shared Services Sellers, and Tenet Business Services Corporation, as Buyer, dated September 12, 2018; and

(E) Asset Purchase Agreement by and among NEC Bellaire Emergency Center, LP, NEC Yorktown Emergency Center, LP, NEC Midland Emergency Center, LP NEC Odessa Emergency Center, LP, NEC Texarkana Emergency Center, LP, NEC Paris Emergency Center, LP, as Operating Sellers, Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, EDMG, LLC, and Neighbors Practice Management, LLC, as Corporate and Shared Services Sellers, and Greater Texas Emergency Centers, LLC, as nominee for various LLCs to be designated as the acquiring entities as Buyer, dated September 13, 2018.

118. "*Purchaser*" means the applicable purchaser under the Purchase Agreements.

119. "*Release Opt-Out*" means the election, to be made solely through validly-submitted Ballots, to opt-out of the release provisions.

120. "*Released Party*" means, collectively, and in each case in its capacity as such, (a) the Prepetition Secured Parties, (b) the DIP Secured Parties, (c) the Chief Restructuring Officer, in his individual capacity, and, with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's current or former subsidiaries and Affiliates, and their managed accounts or funds, officers, managers, managing members, principals, partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals; *provided*, *however*, that if a Holder of Prepetition Loan Claim does not vote to approve the Plan or objects to confirmation of the Plan, such Holder shall not be a Released Party. For the sake of clarity, the Debtors' current and former subsidiaries, Affiliates, directors, members, managers, officers, principals, partners, agents, employees,

shareholders, holders of Series LLC Interests, holders of Neighbors Equity Interests shall not be considered a Released Party.

121.   *"Releasing Parties"* means, collectively, and in each case in its capacity as such: (a) the Debtors, (b) the Prepetition Secured Parties, (c) the DIP Secured Parties, (d) the Committee, (e) each Holder of a Claim or Interest that accepts or is deemed to accept the Plan, (f) each other Holder of a Claim that is entitled to vote on the Plan and does not both (x) vote to reject the Plan or abstain from voting to accept or reject the Plan and (y) elect the Release Opt-Out on its Ballot, and (g) with respect to each of the foregoing Entities in clauses (b) through (e), such Entity's current or former subsidiaries and Affiliates, and its and their managed accounts or funds, officers, directors, managers, managing members, principals, partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals.

122.   *"Remaining Prepetition Collateral"* means the Prepetition Collateral (other than Retained Causes of Action) not sold pursuant to the Purchase Agreements or otherwise conveyed or liquidated by the Debtors prior to the Effective Date including but not limited to accounts receivable not purchased by Purchasers.

123.   *"Retained Causes of Action"* means, collectively, all claims, rights or other Causes of Action which may be asserted by or on behalf of, the Debtors, or the Estates, directly or as assigned to, the Committee, the Unsecured Creditor Trust or the Unsecured Creditor Trustee, a nonexclusive list of which is set forth in the Plan Supplement, including but not limited to all Avoidance Actions, D&O Claims, and all Causes of Action, rights, privileges, claims and demands against any the Debtors' current and former subsidiaries, Affiliates, directors, members, managers, officers, principals, partners, agents, employees, shareholders, holders of Series LLC Interests, holders of Neighbors Equity Interests, third parties, investors, individuals, insurers or insiders that have not been released in accordance with the terms and provisions of this Plan or assigned pursuant to the Purchase Agreements that the Debtors or the Estates own or have an interest in or can assert in any fashion, whether arising pre-petition or post-petition, whether such causes of action arise from contract, tort theories of liability (including all commercial tort claims), insurance claims, statutory claims or other claims, whether or not specifically identified in the Plan Supplement, including, without limitation, all litigation claims, all objections to Class 4 Claims, and all adversary proceedings.

124.   *"Sale"* means the sale of substantially all of the Debtors' assets pursuant to the Purchase Agreements.

125.   *"Sale Order"* means the order approving the Sale [Docket No. 482], as supplemented by the order [Docket No. 484] approving the Greater Texas Emergency Center, LLC Purchase Agreement, and the order [Docket No. 524] resolving cure objections for the assumption and assignment of certain 365 contracts pursuant to the Sale Order.

126.   *"Schedule of Retained Causes of Action"* means the schedule of Causes of Action to be retained by the Estates and contributed to the Unsecured Creditor Trust, which shall be included in the Plan Supplement.

127.    "*Schedules*" mean the Summary of Assets and Liabilities Schedules for Non-Individual, Schedule A/B: Property Non-Individual, Schedule D Non-Individual- Creditors Having Claims Secured by Property, Schedule E/F: Creditors Who Have General Unsecured Claims Non-Individual, Schedule G Non-Individual- Executory Contracts and Unexpired Leases, Schedule H Non-Individual-Codebtors filed by each of the Debtors on September 8, 2018 [Docket Nos. 368, 370, 372, 374, 376, 378, 380, 382, 384, 386, 388, 390, 392, 394, 396, 398, 400, 402, 404, 406, 408, 410, 412, 414, 416, 418, 420, 422, 424, 426, 428, 430, 432, 434, 436, 438, 440, 442, 444, 446, 448, 450, 452, 454, 456, 458, 460, 462, 464, 466, and 468].

128.    "*Section 510(b) Claim*" means any Claim against a Debtor arising from (a) rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, (b) purchase or sale of such a security, or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

129.    "*Secured*" means: when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

130.    "*Series LLC*" means each of series 100 through series 153 existing as part of NHS Emergency Centers, LLC.

131.    "*Series LLC Claim*" means any Claim asserted by an alleged owner of a Series LLC Interest, including the Class A physicians and the Class B physicians, if the Claim is asserted in their capacity as an owner of a Series LLC Interest.

132.    "*Series LLC Interest*" means any profits interest, or equity interest in any Series LLC.

133.    "*Statement of Financial Affairs*" means the Statement of Financial Affairs filed by each of the Debtors on September 8, 2018 [Docket Nos. 369, 371, 373, 375, 377, 379, 381, 383, 385, 387, 389, 391, 393, 395, 397, 399, 401, 403, 405, 407, 409, 411, 413, 415, 417, 419, 421, 423, 425, 427, 429, 431, 433, 435, 437, 439, 441, 443, 445, 447, 449, 451, 453, 455, 457, 459, 461, 463, 465, 467, and 469].

134.    "*Transition Services Agreements*" means the agreements between certain of the Debtors and any applicable Purchaser requiring any of the Debtors or the Liquidating Debtors, as applicable, to provide services to such Purchaser following closing of the Sale, including but not limited to transition services agreements, powers of attorney, access agreements and agreements related to the collection of accounts receivable.

135.    "*Unsecured Creditor Trust*" means the Unsecured Creditor Trust established under Article V.D of the Plan and pursuant to the Unsecured Creditor Trust Agreement.

136.    "*Unsecured Creditor Trust Agreement*" means the agreement creating the Unsecured Creditor Trust to be implemented pursuant to Article V of the Plan, and substantially in the form included in the Plan Supplement.

137.    "*Unsecured Creditor Trust Assets*" means (i) the GUC Settlement Cash, and (ii) the Retained Causes of Action and recoveries thereof including recoveries under D&O Policies.

138.    "*Unsecured Creditor Trust Beneficiaries*" means all individuals and entities entitled to a distribution from the Unsecured Creditor Trust.

139.    "*Unsecured Creditor Trust Cash*" means the GUC Settlement Cash and any amounts recovered by the Unsecured Creditor Trust on account of the Retained Causes of Action available after the satisfaction of the costs and expenses of the Unsecured Creditor Trust, including the fees of the Unsecured Creditor Trustee and counsel to the Unsecured Creditor Trust. By way of further clarification, the cash proceeds of the Remaining Prepetition Collateral shall not constitute Unsecured Creditor Trust Cash.

140.    "*Unsecured Creditor Trust Interests*" means the uncertificated beneficial interests in the Unsecured Creditor Trust representing the right of each Holder of an Allowed General Unsecured Claim to receive Distributions from the Unsecured Creditor Trust in accordance with this Plan and the Unsecured Creditor Trust Agreement.

141.    "*Unsecured Creditor Trustee*" means that person selected by the Committee after consultation with the Debtors and the Prepetition Agent, to be identified in the Plan Supplement.

142.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

143.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

144.    "*Unimpaired Class*" means a Class that is Unimpaired.

145.    "*U.S. Trustee*" means the United States Trustee for the Southern District of Texas.

146.    "*Voting Class*" means Class 3 Prepetition Secured Loan Claims and Class 4 Unsecured Claims.

147.    "*Voting Deadline*" means 5:00 p.m. (prevailing Central Time) on March 20, 2019.

148.    "*Voting Record Date*" means February 15, 2019.

B.     *Rules of Interpretation*

For purposes of this Plan, unless otherwise provided herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neuter gender; (2) unless otherwise specified, any

reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in this Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (6) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (9) unless otherwise set forth in this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtors or either Plan Trustee in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.     *Computation of Time*

In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day, but shall be deemed to have occurred as of the required date.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate governance matters relating to the Debtors not incorporated in Texas shall be governed by the laws of the jurisdiction of incorporation of the applicable Debtor.

16

E.    *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims*

1.    General Administrative Claims

Except with respect to Administrative Claims that are Professional Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall be paid in full in Cash from the Administrative Claims Reserve or the Liquidating Trust Cash on the later of (i) the Effective Date or as soon as reasonably practical thereafter, (ii) the date on which such Administrative Claim becomes an Allowed Claim; or (iii) such other date as the Liquidating Trustee and the Holder of the Allowed Administrative Claim shall agree.  Allowed Administrative Claims that are not secured by a valid, perfected, postpetition Lien are not entitled to postpetition interest or legal fees and expenses.  For the avoidance of doubt, Holders of an Administrative Claim shall not be entitled to any claim or recovery against the Unsecured Creditor Trust, the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust Cash.

2.    Administrative Claim Reserve Amount

On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with an estimated amount of Administrative Claims, other than Professional Fee Claims, that are accrued and unpaid as of the Effective Date.  The Liquidating Trustee shall promptly establish the Administrative Claims Reserve in an amount not less than the Debtors' estimate. The DIP Secured Parties and the Prepetition Secured Parties shall have a security interest in all funds in the Administrative Claim Reserve and, to the extent any funds remain in the Administrative Claims Reserve after payment in full of all Allowed Administrative Claims, other than Professional Fee Claims, the Liquidating Trustee shall disburse any remaining funds to the DIP Agent, or to the extent that the DIP Claims have been satisfied in full, to the Prepetition Agent.

3.    Professional Fee Escrow

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash from the Professional Fee Escrow, in full, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order.  Final fee applications for any Professional Fee Claim shall be filed within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be filed in accordance with and comply in all

17

respects with the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules.  Upon payment in full of all Allowed Professional Fee Claims, any balance of Cash remaining in the Professional Fee Escrow shall be Available Cash.  For the avoidance of doubt, Holders of a Professional Fee Claim shall not be entitled to any claim or recovery against the Unsecured Creditor Trust, the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust Cash.

4.      Professional Fee Reserve Amount

At least five (5) days prior to the Effective Date all Professionals shall provide the Debtors with an estimate of outstanding fees owed through the Effective Date and the Debtors shall estimate the amount to be reserved (the "Professional Fee Reserve Amount").

B.      *DIP Claims*

To the extent not already satisfied prior to the Effective Date, the DIP Claims shall be deemed Allowed Claims under the Plan. The DIP Claims shall be satisfied in full, on the Effective Date, by the termination of all commitments under the DIP Credit Agreement, and indefeasible payment in full in Cash to the DIP Agent, as agent for the DIP Secured Parties, of all outstanding obligations thereunder. Until satisfied in full, the DIP Secured Parties shall retain all rights, Claims, and Liens available pursuant to the DIP Credit Agreement and the Final DIP Order.  For the avoidance of doubt, the DIP Claims shall not be entitled to any claim or recovery against the Unsecured Creditor Trust, the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust Cash.

C.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will be paid in full in Cash from the Disputed Claims Reserve established by the Liquidating Trustee in an amount equal to the amount of such Allowed Priority Tax Claim on the latest of: (i) the Effective Date or as soon as reasonably practical thereafter, (ii) the date on which such Priority Tax Claim becomes an Allowed Claim; or (iii) such other date as the Liquidating Trustee and the holder of the Allowed Priority Tax Claim shall agree.  For the avoidance of doubt, Holders of Priority Tax Claims shall not be entitled to any claim or recovery against the Unsecured Creditor Trust, the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust Cash.

D.      *Statutory Fees*

On the Effective Date the Debtors shall pay all fees due and payable pursuant to section 1930 of the Judicial Code prior to the Effective Date. After the Effective Date, the Liquidating Trustee shall pay any and all such fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a schedule of disbursements made by the Liquidating Trustee during the applicable period, attested to by an authorized representative of the Liquidating Trustee.

18

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Introduction*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.    *Summary of Classification*

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

### SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Interest | Status | Voting Rights |
|:---:|---|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Prepetition Secured Loan Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Neighbors Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

6778127v24

C.   *Treatment of Claims and Interests*

1.   Class 1:      Other Priority Claims

   (a)   *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive Liquidating Trust Cash from the Liquidating Trust Cash equal to the amount of the Allowed Other Priority Claim.  For the avoidance of doubt, Holders of Class 1 Allowed Other Priority Claims shall not be entitled to any claim or recovery against the Unsecured Creditor Trust, the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust Cash.

   (b)   *Voting*: Class 1 is Unimpaired. Holders of Class 1 Other Priority Claims are deemed to accept the Plan pursuant to section 1126(f) and are not entitled to vote to accept or reject the Plan.

2.   Class 2:      Other Secured Claims

   (a)   *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive either (i) Cash from the Liquidating Trust Cash in an amount equal to the proceeds of the collateral securing such Holder's Allowed Other Secured Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Allowed Other Secured Claim; or (ii) to the extent the amount of an Allowed Other Secured Claim is greater than the value of the collateral securing such Allowed Other Secured Claim and there are no Liens on such collateral senior to the Lien held by or for the benefit of the Holder of such Allowed Other Secured Claim, solely the collateral securing such Allowed Other Secured Claim in full and final satisfaction of such Claim.  For the avoidance of doubt, Holders of Class 2 Allowed Other Secured Claims shall not be entitled to any claim or recovery against the Unsecured Creditor Trust, the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust Cash.

   (b)   *Voting*: Class 2 is Unimpaired. Holders of Class 2 Other Secured Claims are deemed to accept the Plan pursuant to section 1126(f) and are not entitled to vote to accept or reject the Plan.

3.   Class 3:      Prepetition Secured Loan Claims

   (a)   *Treatment*: Each Holder of a Prepetition Secured Loan Claim shall receive all Available Cash, plus the proceeds of the Remaining Prepetition Collateral up to the amount of the Prepetition Loan Claim outstanding after all payments made pursuant to the Final DIP Order.   For the

avoidance of doubt, Holders of Class 3 Prepetition Secured Loan Claims shall not be entitled to any claim or recovery against the Unsecured Creditor Trust, the Unsecured Creditor Trust Assets or the Unsecured Creditor Trust Cash.

(b) *Voting*: Class 3 is Impaired. The Holders of Class 3 Prepetition Secured Loan Claims are entitled to vote to accept or reject the Plan.

4. Class 4: General Unsecured Claims

(a) *Treatment*: Each Holder of a Class 4 General Unsecured Claim shall receive its Pro Rata share of the Unsecured Creditor Trust Interests. For the sake of clarify, the Holder of the Prepetition Deficiency Claim shall receive its Pro Rata share of the Unsecured Creditor Trust Interests; *provided, however*, the Distributions on account of such interest shall be limited as follows: (i) Prepetition Deficiency Claim will not receive any recovery from the first $1,000,000 of Distributions from the Unsecured Creditor Trust Cash; (ii) Prepetition Deficiency Claim will receive the entire amount of the first $125,000 of Distributions after the first $1,000,000 of Distributions from the Unsecured Creditor Trust Cash; and (iii) Prepetition Deficiency Claim will share Pro Rata with other General Unsecured Claims on any Distributions from the Unsecured Creditor Trust Cash over $1,125,000.

(b) *Voting*: Class 4 is Impaired. Holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan.

5. Class 5: Section 510(b) Claims

(a) *Treatment*: Class 5 Section 510(b) Claims, including all Series LLC Claims, shall be subordinated to General Unsecured Claims pursuant to section 510(b) of the Bankruptcy Code. Each holder of a Class 5 Section 510(b) Claim shall receive it Pro Rata share of the Unsecured Creditor Trust Cash, if any, after all Claims in Class 4 have been satisfied in full.

(b) *Voting*: Class 5 is Impaired under the Plan. Each holder of a Section 510(b) Claim will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of a Section 510(b) Claim will not be entitled to vote to accept or reject the Plan.

6. Class 6: Intercompany Claims

(a) *Treatment*: Class 6 Intercompany Claims shall be cancelled and discharged, with the Holders of such Class 6 Intercompany Claims receiving no Distribution on account of such Intercompany Claims.

(b)      *Voting*: Class 6 is Impaired. Holders of Class 6 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.      Class 7:      Intercompany Interests

(a)      *Treatment*: Class 7 Intercompany Interests shall be cancelled and discharged, with the Holders of such Class 7 Intercompany Interests receiving no Distribution on account of such Intercompany Interests.

(b)      *Voting*: Class 7 is Impaired. Holders of Class 7 Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

8.      Class 8:      Neighbors Equity Interests

(a)      *Treatment*: Class 8 Neighbors Equity Interests shall be cancelled and discharged, with the Holders of such Class 8 Neighbors Equity Interests receiving no Distribution on account of such Neighbors Equity Interests.

(b)      *Voting*: Class 8 is Impaired. Holders of Class 8 Neighbors Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Neighbors Equity Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE IV.
## ACCEPTANCE REQUIREMENTS

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

A.      *Acceptance or Rejection of this Plan*

1.      Voting Classes

Classes 3 and 4 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

2.      Deemed Acceptance of the Plan

Class 1 and Class 2 are Unimpaired under the Plan and therefore is deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

3.      Deemed Rejection of the Plan

Classes 5, 6, 7, and 8 are Impaired under the Plan and are not entitled to receive or retain any property on account of the Claims and Interests in Classes 5, 6, 7, and 8. Therefore, Classes 5, 6, 7, and 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

B.      *Confirmation of this Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors may seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code.

C.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

In addition to applicable provisions set forth elsewhere in the Plan, the following shall constitute the means of execution and implementation of this Plan.

A.      *Deemed Consolidation*

The Plan is being proposed as a joint plan of liquidation for all of the Debtors.  The Plan constitutes a motion for deemed consolidation of the Debtors and their respective Estates solely for purposes of voting on the Plan, confirming the Plan, and making Distributions pursuant to the Plan. Deemed consolidation is a condition precedent to Confirmation.  Consolidation of the Debtors' Estates is for the limited purpose of making Distributions to holders of Allowed Claims to ease an administrative burden on the Debtors, their Estates, and the Plan Trustees. Accordingly, voting on the Plan shall be conducted and counted on a consolidated basis. On the Effective Date, (a) the assets of the Debtors will be merged and/or treated as if they are merged for the purpose of paying Allowed Claims against the Debtors; (b) any Claim filed or asserted against any of the Debtors will be deemed a Claim against all of the Debtors, solely for the purposes of voting and Distributions pursuant to the Plan (and any duplication of claims arising from both primary operative documents and guaranty and/or other secondary obligations shall be eliminated and all such claims against the Debtors shall be treated as a single claim that eliminates such duplications); and (c) all Intercompany Claims and Interests will be eliminated. Except as set forth in this paragraph, such consolidation shall not affect the legal and corporate structure of the Debtors nor affect Causes of Action, including Avoidance Actions. In addition, such consolidation shall not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code. For avoidance of doubt, and notwithstanding anything to

23

the contrary herein, all Retained Causes of Action are preserved as they existed immediately before the Effective Date for the Unsecured Creditor Trustee to prosecute on behalf of the Unsecured Creditor Trust, and all recoveries by the Unsecured Creditor Trust, based upon, *inter alia*, Causes of Actions, shall be accounted for on a consolidated basis. The deemed consolidation under this Plan shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtors are subject in the absence of deemed consolidation under this Plan; *provided, however*, the deemed consolidation shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such deemed consolidation. Holders of Allowed Claims or Allowed Equity Interests who assert identical Claims against or Equity Interests in multiple Debtors shall be entitled to only a single satisfaction of such Claims or Equity Interests.

The Debtors believe that deemed consolidation will minimize costly disputes over allocation of assets to be distributed and it will also facilitate the compromise reached among the Debtors, the Committee, the Prepetition Agent, the DIP Agent, the Secured Creditors (as defined in the Final DIP Order), and the DIP Lenders as embodied in paragraph 45 of the Final DIP Order.

B.    *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other person or entity.

C.    *The Liquidating Trust*

On or before the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the beneficiaries thereof, (a) all Liquidating Trust Cash and (b) all other Liquidating Trust Assets.  For the avoidance of doubt, the permits, licenses, regulatory authorizations, approvals, and any other asset or attribute necessary to comply with the Debtors' duties under the Transition Services Agreements will be retained by the Liquidating Debtors and not transferred to the Liquidating Trust; *provided however*, that the Liquidating Trustee will be the representative of the Liquidating Debtors for all purposes as further set forth in section V.C and V.F hereof. As of the Effective Date, all assets vested in the Liquidating Trust shall be transferred and conveyed free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

On the Effective Date, the Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidating Trust shall be established for the primary purpose of liquidating its assets (as applicable) and for making Distributions in accordance with the Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

D.    *The Unsecured Creditor Trust*

On or before the Effective Date, the Unsecured Creditor Trustee shall execute the Unsecured Creditor Trust Agreement and cause the Unsecured Creditor Trust to accept, on behalf of the beneficiaries thereof, (i) the GUC Settlement Cash, (ii) Retained Causes of Action and (iii) claims under and proceeds of D&O Policies.  As of the Effective Date, all assets vested in the Unsecured Creditor Trust and all assets dealt with in the Plan shall be transferred and conveyed free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

On the Effective Date, the Unsecured Creditor Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Unsecured Creditor Trust shall be established for the primary purpose of administering the Unsecured Creditor Trust Assets and making all distributions to the Unsecured Creditor Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Unsecured Creditor Trust.

E.    *Settlement Regarding Unsecured Creditor Recoveries.*

The Prepetition Agent, the DIP Agent, the Prepetition Lenders and the DIP Lenders have agreed with the Committee and the Debtors to the following: (a) the payment of the GUC Settlement Cash to the Unsecured Creditor Trust; and (b) any Prepetition Deficiency Claim will (i) not receive any recovery from the first $1,000,000 of Distributions from the Unsecured Creditor Trust Cash; (ii) receive the entire amount of the next $125,000 of Distributions from the Unsecured Creditor Trust Cash after the first $1,000,000 of Distributions from the Unsecured Creditor Trust Cash; and (iii) share Pro Rata with other General Unsecured Claims on any Distributions from the Unsecured Creditor Trust Cash over $1,125,000.  Notwithstanding the foregoing, the Unsecured Creditor Trust shall have the right to object to the calculation of the Prepetition Deficiency Claim; provided, however, the Unsecured Creditor Trust shall not have the right to object to the Prepetition Secured Debt component of the Prepetition Deficiency Claim unless the Prepetition Secured Parties assert Prepetition Secured Debt in excess of $110,195,053.48, in which case the Unsecured Creditor Trust shall have the right to object to amounts in excess of $110,195,053.48.

F.    *Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee*

The Liquidating Trustee shall be the exclusive trustee of the assets of the Liquidating Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets; (b) supervise the receipt, deposit, and reconciliation of accounts receivable collected by the Purchasers, including any payment to Purchasers, including the ability to enforce any applicable Purchase Agreement or Transition Services Agreement; (c) reasonably cooperate to provide the Purchasers with information relevant to the Purchasers' collection of accounts receivable; (d) administer all of the Debtors' employee claims under the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA") (e) pay taxes and other obligations incurred by the Liquidating Trust; (f) prepare and file all required federal, state, and

local tax returns, as applicable, for the Debtors and issue corresponding K-1s; (g) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist the Liquidating Trustee; (h) calculate and implement Distributions to be made under the Plan to Holders of Claims, including Administrative Claims and Priority Claims, other than Class 4 Claims; (i) reconcile, object to and resolve issues involving all Claims, other than Class 4 Claims; and (j) undertake all administrative functions of the Chapter 11 Cases that are not granted to the Unsecured Creditor Trustee, including the ultimate closing of the Chapter 11 Cases; *provided, however*, the Liquidating Trustee shall not compromise, settle or affect any Avoidance Actions or Retained Cause of Action in connection with its duties under this Plan or the Liquidating Trust Agreement.

On the Effective Date, the Liquidating Trust shall also have the power, right, and responsibility to take possession of all books, records, and files of the Debtors and the Estates, including all Patient Records not sold pursuant to the Sale and provide for the retention and storage of such books, records, and files pursuant to this Plan and Bankruptcy Code section 351 (as applicable) until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.  After the Effective Date, the Liquidating Trust shall (i) give the Unsecured Creditor Trust reasonable access to all books, records and files of the Debtors and the Estates including, without limitation, direct logon authority to access emails, accounting records, shared drives and other documents necessary to accomplish the duties of the Unsecured Creditor Trust and (ii) not destroy or abandon any such books, records and files without obtaining the consent of the Unsecured Creditor Trust.  In the event the Liquidating Trust is dissolved before the Unsecured Creditor Trust, the Unsecured Creditor Trust shall have the right to take possession of the books, records and files of the Debtors and Estates and maintain such books, records and files at the expense of the Unsecured Creditor Trust.

All expenses incurred by the Liquidating Trust and the Liquidating Trustee shall be the responsibility of and paid by the Liquidating Trust, in accordance with the Plan and the Liquidating Trust Agreement.

In no event later than three (3) months following the Effective Date and on a quarterly basis thereafter until all Liquidating Trust Cash has been released or paid out in accordance with the Plan, the Liquidating Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Liquidating Trustee under the Plan through each applicable reporting period.

G.    *Certain Powers and Duties of the Unsecured Creditor Trust and Unsecured Creditor Trustee*

The Unsecured Creditor Trustee shall be the exclusive trustee of the assets of the Unsecured Creditor Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Unsecured Creditor Trustee shall be specified in the Unsecured Creditor Trust Agreement and shall include the authority and responsibility to: (a) prosecute, compromise, and settle, in accordance with the specific terms of the Unsecured Creditor Trust Agreement, Retained Causes of Action; (b) reconcile, object to and resolve issues

involving Class 4 Claims; (c) pay taxes and other obligations incurred by the Unsecured Creditor Trust; (d) calculate and implement Distributions to be made under the Plan to Holders of Class 4 Claims; and (e) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist the Unsecured Creditor Trustee.

All expenses incurred by the Unsecured Creditor Trust and the Unsecured Creditor Trustee shall be the responsibility of and paid by the Unsecured Creditor Trust, in accordance with the Plan and the Unsecured Creditor Trust Agreement.

In no event later than three (3) months following the Effective Date and on a quarterly basis thereafter until all Unsecured Creditor Trust Cash has been released or paid out in accordance with the Plan, the Unsecured Creditor Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Unsecured Creditor Trustee under the Plan through each applicable reporting period.

H.     *Federal Income Tax Treatment of the Plan Trusts for the Liquidating and Unsecured Creditor Trust Assets; Tax Reporting and Tax Payment Obligations*

For U.S. federal income tax purposes, it is intended that the Plan Trusts be classified as liquidating trusts under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Plan Trusts be treated as if they had received a Distribution from the Estates of an undivided interest in the assets of the Plan Trusts (to the extent of the value of their respective shares therein) and then contributed such interests to the Plan Trusts.

1.     Plan Trusts' Assets Treated as Owned by Beneficiaries of Plan Trusts

For all U.S. federal income tax purposes, all parties shall treat the transfer of assets (net of any applicable liabilities) to the Plan Trusts for the benefit of the beneficiaries thereof as (a) a transfer by the Debtors of the assets of the Plan Trusts (net of any applicable liabilities) directly to the beneficiaries of the Plan Trusts (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the assets of the Plan Trusts (net of any applicable liabilities) by the beneficiaries of the Plan Trusts (to the extent of the value of their respective share in the assets of the Plan Trusts) to the Plan Trusts in exchange for the beneficial interests in the Plan Trusts. Accordingly, for U.S. federal income tax purposes, the Plan Trusts shall be treated as grantor trusts, and the beneficiaries of the Plan Trusts shall be treated as the grantors of the Plan Trusts and the owners of the assets thereof.

2.     Tax Reporting

The Plan Trusts shall be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto for current or former employees, vendors or contractors of the Debtors, for the Debtors and the Plan Trusts. The Plan Trustees shall file all tax returns for the Plan Trusts as grantor trusts pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article V.F. Within a reasonable time following the end of the taxable year, the Plan Trustees shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's

share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal income tax returns. The Plan Trustees may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Plan Trusts (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Plan Trustees shall allocate the taxable income, gain, loss, deduction or credit of their respective Plan Trust with respect to each holder of a beneficial interest to the extent required by the IRC and applicable law.

The Liquidating Trust shall prepare and file all required federal, state, and local tax returns, as applicable, for the Debtors and issue corresponding K-1s.

As soon as possible after the Effective Date, each Plan Trust shall make a good faith valuation of the assets of their respective Plan Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. Each Plan Trust shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Plan Trust that are required by any taxing authority.

The Plan Trusts may request an expedited determination of the tax obligations of the Plan Trusts under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Plan Trusts for all taxable periods through the dissolution of the Plan Trusts.

The Plan Trusts shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Plan Trusts shall be subject to any such withholding and reporting requirements.

3.      Payment of Taxes

The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Debtors including Priority Tax Claims, Other Secured Claims and Administrative Claims, in addition to any taxes imposed on the Liquidating Trust or its assets; *provided that* the Unsecured Creditor Trust shall be responsible for payments of any taxes imposed on the Unsecured Creditor Trust. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve associated with the Unsecured Creditor Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of the Unsecured Creditor Trust allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Unsecured Creditor Trust as a result of the resolutions of such Disputed Claims.

I.      *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

From and after the Effective Date, prosecution and settlement of all Retained Causes of Action shall be the sole responsibility of the Unsecured Creditor Trustee pursuant to the Plan, the Confirmation Order, and the Unsecured Creditor Trust Agreement. From and after the Effective Date, the Unsecured Creditor Trustee shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of

28

the estates pursuant to section 1123(b)(3) of the Bankruptcy Code, subject to any approval or consultation rights set forth in the Unsecured Creditor Trust Agreement. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

The Unsecured Creditor Trust reserves and retains any and all claims and rights against any Persons, other than those specifically released herein, including the Retained Causes of Action, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Causes of Action, Retained Causes of Actions, and/or claims for relief that the Unsecured Creditor Trust may have against (i) any insurer and/or insurance policies, including the D&O Policies, in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; (ii) current and former directors, members, managers, officers, shareholders, holders of a Series LLC Interest, holders of a Neighbors Equity Interest, and employees, or (iii) any recipient of a pre or post-petition transfer that may be recovered as an Avoidance Action, Retained Cause of Action, other Cause of Action or otherwise. The entry of the Confirmation Order shall not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Unsecured Creditor Trustee relating to any claims, Causes of Action referred to in this Section or otherwise. On the Effective Date, the Unsecured Creditor Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors, except for any actions related to the enforcement of Liquidating Trust Assets.

The Liquidating Trustee reserves and retains any and all claims and rights against any and all third parties to enforce the Liquidating Trust Assets whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date; *provided, however*, the Liquidating Trustee shall not compromise, settle or affect any Avoidance Actions or Retained Cause of Action in connection with the resolution of claims relating to the Transition Services Agreements or collection of accounts receivable.

J.      *Liquidating Trust's Accounting for Certain Recoveries*

For all recoveries received, other than those related to the collection of accounts receivable, the sale of tangible personal property, or those received pursuant to any action filed to enforce the Transition Services Agreement, the Liquidating Trustee shall provide notice of any such recovery to the Unsecured Creditor Trustee. The Bankruptcy Court retains the exclusive jurisdiction to determine title to any such recovery.

K.      *Filing of Monthly and Quarterly Reports*

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports for each Plan Trust shall be the responsibility of the applicable Plan Trustee until such time as each respective Plan Trust Terminates.

L.      *Corporate Existence; Compliance with Transition Services Agreements*

On and after the Effective Date, the Debtors will be referred to as the Liquidating Debtors.  The Liquidating Debtors shall remain in existence and will not be dissolved until each Liquidating Debtor satisfies its duties under the applicable Transition Services Agreements. After each Liquidating Debtor satisfies its duties under any applicable Transition Services Agreements, such Liquidating Debtor shall be deemed dissolved without any further action by any party.  Notwithstanding anything herein to the contrary, the Liquidating Debtors will retain, and the Debtors and the Liquidating Debtors will not transfer to the Liquidating Trust or the Unsecured Creditor Trust, all permits, licenses, regulatory authorizations, approvals, status and any other asset or attribute necessary to comply with their duties under the Transition Services Agreements.  The Liquidating Trustee shall be the legal representative and sole manager of the Liquidating Debtors and is hereby vested with the authority to take all actions necessary or appropriate with respect to the Liquidating Debtors, including but not limited to the authority granted to Neighbors Health LLC or any other Debtor entity under any management agreement and any authority granted to each Liquidating Debtor under such entity's organizational documents or operating agreements.

M.      *Directors and Officers of the Debtors*

On and after the Effective Date, the board of managers or directors of each Debtor shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors, as applicable.

N.      *Corporate Authorization*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, or managers of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by the stockholders, directors, members, or managers of the Debtors. After the Effective Date, to the extent necessary, the Plan Trustees shall have all authority to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of one or more of the Debtors, including performing the Debtors' obligations under the Transition Services Agreements.

O.      *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Plan Trusts shall be authorized to execute, deliver, file, or

30

record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

P.      *Employee Agreements*

All employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place with the Debtors' employees that has not been previously terminated shall be deemed terminated as of the Effective Date.

Q.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

R.      *Duration of the Plan Trusts*

The Plan Trusts shall have an initial term of five (5) years from the Effective Date, *provided however,* that, if warranted by the facts and circumstances, and subject to the approval of the Court, upon a finding that an extension of the term of either Plan Trust is necessary to accomplish the purpose of the respective Plan Trust, the applicable Plan Trustee shall be authorized to extend the Plan Trust for six (6) months or longer provided that such extension is approved by the Bankruptcy Court within six (6) months of the beginning of such extended term. Either Plan Trust may be terminated earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing the Case pursuant to section 350(a) of the Bankruptcy Code or (b) the applicable Plan Trustee has administered all of the Plan Trust's Assets and performed all other duties required by this Plan and the applicable Plan Trust Agreement.

S.      *Wind Down of Plan Trusts*

After the termination of each of the Plan Trusts and for the purpose of liquidating and winding down the affairs of the Plan Trusts, the Plan Trustees shall continue to act as such over their respective Plan Trust until their duties have been fully performed. Prior to the final Distribution of the remaining Plan Trusts' Assets, the Plan Trustees shall be entitled to reserve from the Plan Trusts' Assets any and all amounts required to provide for their own reasonable costs and expenses, in accordance with the terms of the Plan Trusts' Agreements, until such time as the winding down of the Plan Trusts is completed. Upon termination of each of the Plan Trusts, the respective Plan Trustee shall retain for a period of three years the books, records, lists of the Beneficiaries, the registry of claims and Beneficiaries, and other documents and files that have been delivered to or created by the Plan Trustees. Except as otherwise specifically provided herein, upon the termination of each of the Plan Trusts, the Plan Trustees and the respective Plan Trusts' professionals and agents shall have no further duties or obligations hereunder.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Treatment of Executory Contracts and Unexpired Leases*

As of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected, assumed, or assumed and assigned, including in connection with the Sale, and (2) have not expired under their own terms prior to the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.

C.      *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Liquidating Trustee within thirty (30) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 4 General Unsecured Claim. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, the property of the Debtors, or the Liquidating Trust.

D.      *Reservation of Rights*

Nothing contained in this Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

1.      Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the

32

Distributions that this Plan provides for Allowed Claims in the applicable Class. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VII. Except as otherwise provided herein, Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

2.      Entitlement to Distributions

On and after the Effective Date, the Plan Trustees shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date. Accordingly, the Plan Trustees will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

B.      *Plan Trustees*

The Unsecured Creditor Trustee shall make all Distributions under the Plan on account of Class 4 Allowed General Unsecured Claims. The Liquidating Trustee shall make all other Distributions under the Plan. The Plan Trustees shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. For purposes of Distribution on account of the Prepetition Secured Loan Claims and the DIP Claims, the Prepetition Agent and the DIP Agent, respectively (a) shall be deemed to be the Holder of all Prepetition Secured Loan Claims and DIP Claims and (b) are hereby directed to make Distributions to the Holders of Prepetition Secured Loan Claims and DIP Claims. In accordance with the foregoing, the delivery of any applicable property to be distributed to Holders of Prepetition Secured Loan Claims and Holders of DIP Claims to the Prepetition Agent and DIP Agent, respectively, shall satisfy all applicable Distribution obligations under the Plan.

C.      *No De Minimis Distributions Required*

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00, or unless such Distribution is the final Distribution to such Holder pursuant to this Plan. The Plan Trustees shall retain any such Distribution not made in accordance with the provisions of this section. Any Distribution not made in accordance with this section shall be held in trust for the relevant Holder until the earlier of (i) the date the next Distribution is scheduled to be made to such Holder, or (ii) the final Distribution to such Holder.

D.      *Disputed Claims Reserves*

On or prior to the Effective Date, the Plan Trustees shall be authorized to establish Disputed Claims Reserves, each of which shall be administered by the applicable Plan Trustee, respectively. The Unsecured Creditor Trustee may, but shall not be required to, hold Cash in its Disputed Claims Reserve from the GUC Settlement Cash in trust for the benefit of the Holders of

33

General Unsecured Claims ultimately determined to be Allowed after the Effective Date. The Unsecured Creditor Trustee shall distribute the amounts (net of any expenses, including any taxes relating thereto) from its Disputed Claims Reserve, as provided herein, as applicable Disputed Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Disputed Claims as such amounts would have been distributable had such Disputed Claims been Allowed Claims as of the Effective Date. The Liquidating Trustee may hold Cash in its Disputed Claims Reserve in trust for the benefit parties entitled to receive payments from the Liquidating Trust Cash to the extent they hold Claims ultimately determined to be Allowed after the Effective Date. The Liquidating Trustee shall distribute the amounts (net of any expenses, including any taxes relating thereto) from its Disputed Claims Reserve, as provided herein, as applicable Disputed Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Disputed Claims as such amounts would have been distributable had such Disputed Claims been Allowed Claims as of the Effective Date. To the extent any cash remains in the Liquidating Trust's Disputed Claims Reserve after satisfaction of all applicable Disputed Claims, such remaining amount shall be paid to the Holders of the Class 3 Prepetition Secured Loan Claims.

E.    *Distributions on Account of Claims Allowed After the Effective Date*

      1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

      2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by either Plan Trustee, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Disputed Claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

F.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

      1.    Delivery of Distributions in General

Except as otherwise provided herein, the Plan Trustees shall make Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Proof of Claim filed by such Holder or the Debtors' Schedules.

2.      Undeliverable Distributions and Unclaimed Property

(a)      Failure to Claim Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the respective Plan Trustee has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the respective Plan Trust (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

(b)      Failure to Present Checks

Checks issued by either Plan Trustee on account of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the applicable Plan Trustee by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within one hundred and eighty (180) days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the applicable Plan Trust. In such cases, any Cash held for payment on account of such Claims shall be property of the applicable Plan Trust, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require either Plan Trustee to attempt to locate any Holder of an Allowed Claim.

(c)      Failure to Provide Tax Information for Distributions

If a Holder fails to provide to the applicable Plan Trustee any requisite tax information for Distributions, the Plan Trustees may, after a diligent effort to obtain such information, withhold Distributions to any such Holder and the Claim of any such Holder shall be discharged and forever barred.

G.      *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Plan Trustees shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Plan Trustees shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. Each Plan Trustee reserves the right to

35

allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

H.     *Claims Paid or Payable by Third Parties*

1.     Claims Paid by Third Parties

The Debtors or either Plan Trustee, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the applicable Plan Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the Effective Date.

2.     Claims Payable by Third Parties

No Distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.     Applicability of Insurance Policies

Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Retained Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

I.     *Allocation of Plan Distributions between Principal and Interest*

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest (or original issue discount) thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest (or original issue discount).

# ARTICLE VIII.
# PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
# AND DISPUTED CLAIMS

A.   *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), the Plan Trusts after Consummation will have and retain any and all rights and defenses the Debtors had with respect to any Claim as of the Petition Date.

Except as provided herein or otherwise agreed, any and all proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.

B.   *Prosecution of Objections to Claims*

The Liquidating Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Administrative or Priority Claims as permitted under this Plan. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Administrative or Priority Claim without approval of the Bankruptcy Court. The Liquidating Trustee may also resolve any Disputed Administrative or Priority Claim outside the Bankruptcy Court under applicable governing law.

With regard to all Claims other than Administrative and Priority Claims, the Unsecured Creditor Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. From and after the Effective Date, the Unsecured Creditor Trustee may settle or compromise any Disputed Claim, which is not an Administrative or Priority Claim, without approval of the Bankruptcy Court. The Liquidating Trustee may also resolve any Disputed Claim, which is not an Administrative or Priority Claim, outside the Bankruptcy Court under applicable governing law.

C.   *Deadline to Object to Claims*

Unless otherwise ordered by the Bankruptcy Court, the Plan Trustees shall file all objections to Claims by no later than 180 days after the Effective Date, except to the extent that such Claims are filed on or after the Effective Date, in which case, the Plan Trustees shall have until the later of 180 days after the Effective Date or 90 days after such claim is filed to file an objection to same. Notwithstanding the foregoing, if either Plan Trustee determines that an extension of time is warranted, the Plan Trustee may seek the Bankruptcy Court's approval to extend such time by a period of an additional 90 days, without prejudice to the Plan Trustee's request to seek additional time upon a showing of good cause. Notwithstanding the foregoing,

the Claims in Classes 5, 6, 7 and 8 shall be deemed disallowed. In the event the Unsecured Creditor Trustee determines that there are sufficient funds to make Distributions to Holders of Claims in Classes 5, 6, 7 and 8, the Unsecured Creditor Trustee shall file a Notice of Distribution with the Bankruptcy Court and shall have 180 days after the filing of such notice to object to such claims.

D.     *Estimation of Claims*

The Unsecured Creditor Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Unsecured Creditor Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Unsecured Creditor Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

E.     *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Court or the consent of the applicable Plan Trustee, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Court.

F.     *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the applicable Plan Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any postpetition interest to be paid on account of such Claim.

## ARTICLE IX.
## PATIENT RECORDS

A.     *Patient Records*

Patient Records will be administered by the Liquidating Trustee in accordance with the provisions of this Article. The Liquidating Trustee shall have no other or further obligations with respect to the Patient Records except as expressly set forth in this Article. The Liquidating

Trustee shall administer the Patient Records in accordance with section 351 of the Bankruptcy Code in accordance with the provisions set forth in the remainder of this Article.

B.      *Patient Publication Notice*

As soon as practicable following the Effective Date, the Liquidating Trustee shall publish the Patient Publication Notice for all Closed Centers in such newspaper or newspapers as the Bankruptcy Court may prescribe in the Confirmation Order. The form of the Patient Publication Notice and the manner of its publication shall also be prescribed and approved in the Confirmation Order.

C.      *Service of Notice on Patients*

During the first one hundred eighty (180) days after the publication of the Patient Publication Notice, the Liquidating Trustee shall serve the Patient Records Mail Notice to all Persons on the Patient Records Mailing List. Service of the Patient Records Mail Notice shall be complete upon depositing the same into the United States Mail, postage prepaid, addressed to each recipient at the address reflected on the Patient Records Mailing List.

D.      *Patient Records Service Provider*

The Liquidating Trustee is authorized to engage the Patient Records Service Provider to maintain and store Patient Records and respond to requests for records during the Patient Records Maintenance Period, which services by the Patient Records Service Provider shall comply with the requirements of section 351 of the Bankruptcy Code. The terms and conditions of the retention of the Patient Records Service Provider shall be included in an agreement which shall be filed as part of the Plan Supplement.

E.      *Notice to HHS*

After the Patient Publication Notice has been published and the Patient Records Mail Notice provided herein, the Liquidating Trustee shall, at the end of the Patient Records Maintenance Period, mail, by certified mail, the HHS Records Request requesting permission to deposit with HHS any remaining Patient Records that have not been claimed by an authorized party during the Patient Records Maintenance Period. Thereafter, HHS shall have thirty (30) days to grant or deny the HHS Records Request. If no written response is received by the Liquidating Trustee either granting or denying the HHS Records Request, then the HHS Records Request shall be denied on the thirty-third (33rd) day following the date the Liquidating Trustee mails the HHS Records Request.

F.      *Destruction of Patient Records*

After the Patient Records Maintenance Period has ended, if the HHS Records Request has been denied, any remaining Patient Records that have not been claimed by an authorized party shall be caused to be destroyed by the Liquidating Trustee in accordance with section 351(3) of the Bankruptcy Code. Promptly after the remaining Patient Records have been

destroyed, the Liquidating Trustee shall file a notice with the Bankruptcy Court consistent with Bankruptcy Rule 6011 certifying that the remaining Patient Records have been destroyed.

G.     *Further Orders*

The Liquidating Trustee may seek all such other and further orders from the Bankruptcy Court as may be, in the Liquidating Trustee's good faith business opinion, necessary or appropriate to facilitate the administration of the Patient Records.

H.     *Patient Records Costs*

Any Patient Records Costs incurred by the Liquidating Trustee shall be treated and paid as from the Liquidating Trust.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE
## PLAN AND THE EFFECTIVE DATE

A.     *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article IX.C hereof, except that entry of the Confirmation Order may not be waived), and Confirmation shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.     All provisions, terms and conditions hereof are approved in the Confirmation Order.

2.     A Confirmation Order shall have been entered by the Bankruptcy Court, in form and substance acceptable to the Debtors, that approves the deemed consolidation of the Debtors for distribution and Plan voting purposes.

3.     The Confirmation Order shall provide that, among other things, the Debtors and the Plan Trustees, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.     All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

5.     All required consents, approvals, and authorizations, if any, have been obtained.

B.     *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article IX.C hereof), and the

Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.      The Debtors shall have transferred the GUC Settlement Cash to the Unsecured Creditor Trust.

2.      The Debtors shall have transferred all remaining Cash to the Liquidating Trust, including the Professional Fee Escrow.

3.      The Confirmation Order shall be a Final Order in form and substance acceptable to the Debtors and the Plan Trustees, each in their respective sole discretion. The Confirmation Order shall provide that, among other things, the Debtors and the Plan Trustees, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.      The Plan Trusts' Agreements shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

5.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C.      *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this Article IX may be waived with the consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Nonoccurrence of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders or any other Entity in any respect.

## ARTICLE XI.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and

controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any Distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Trustees may compromise and settle Claims against them and Causes of Action against other Entities, except for Claims and Causes of Action relating to the Retained Causes of Action, which may be compromised and settled by the Unsecured Creditor Trustee.

B.     *RELEASES BY THE DEBTORS*

**To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever been released and discharged by the Debtors and the Estates from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those causes of action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date*; provided, however*, that the foregoing "*Debtor Releases*" shall not operate to waive or release any Causes of Action of any Debtor: arising from claims for fraud, gross negligence, or willful misconduct; *provided, further,* the foregoing "*Debtor Releases*" shall not release the Debtors' current and former subsidiaries, Affiliates, directors, members, managers, officers, principals, partners, agents, employees, shareholders, holders of Series LLC Interests, holders of Neighbors Equity Interests. Notwithstanding anything to the contrary in the foregoing, the "Debtor Releases" set forth in this paragraph do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan.**

C.     *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS*

**To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise**

42

specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors and the other Released Parties from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those causes of action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided*, *however*, that the foregoing release shall not operate to waive or release any Causes of Action of any Releasing Party: arising from claims for fraud, gross negligence, or willful misconduct *provided, further,* the foregoing release shall not release the Debtors' current and former subsidiaries, Affiliates, directors, members, managers, officers, principals, partners, agents, employees, shareholders, holders of Series LLC Interests, holders of Neighbors Equity Interests. Notwithstanding anything to the contrary in the foregoing, the "Third Party Releases" set forth in this paragraph do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan.

D.    *EXCULPATION*

To the fullest extent permitted by applicable law no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, obligation, Cause of Action or liability for any Exculpated Claim, except for those that are determined in a final order to have constituted actual fraud, gross negligence, willful misconduct, or criminal conduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

E.    *INJUNCTION*

Except for obligations issued pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and the Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors or any Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against

**any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Nothing in the Plan or the Confirmation Order shall preclude any Entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Debtors, as applicable, and any such Entity agree in writing that such Entity will: (a) waive all Claims against the Debtors and the Estates related to such action and (b) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any.**

F.     *Setoffs*

Except as otherwise expressly provided for in the Plan, each Debtor and the Plan Trustees (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, may set off against any Allowed Claim or Allowed Interest and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any Distribution is made on account of such Allowed Claim or Allowed Interest), any Retained Causes of Action of any nature that such Debtor, as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or Unsecured Creditor Trustee of any such Retained Causes of Action that such Debtor or Unsecured Creditor Trustee may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Retained Cause of Action of the Debtor unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.

G.     *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Retained Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date.

## ARTICLE XII.
## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11

44

CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that Distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Retained Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

6778127v24

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article X and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VII;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. enter an order or final decree concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to Distributions under the Plan;

17. consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

22. enforce all orders previously entered by the Bankruptcy Court; and

23. adjudicate all other matters over with the Bankruptcy Court has jurisdiction.

## ARTICLE XIV.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.  *Modifications and Amendments*

Subject to the limitations and rights contained in this Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

B.  *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.  *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw this Plan subject to the terms hereof, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (x) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Entity; (y) prejudice in any manner the rights of the Debtors or any other Entity; or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

D.  *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

A.  *Bar Date for Administrative Claims*

No Administrative Claim, other than Professional Fees and U.S. Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the Entity seeking payment of an Administrative Claim shall provide notice by United States Mail in accordance with the Bankruptcy Rules.  Any Administrative

47

Claim, other than Professional Fees and U.S. Trustee fees, not filed in accordance with this section shall be barred and the Debtors, the Plan Trusts and the Plan Trustees shall have no liability for payment of any such Administrative Claim.

B.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

C.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

D.    *Service of Documents*

Any pleading, notice, or other document required by this Plan to be served on or delivered to the Debtors shall be sent by overnight mail to:

Neighbors Legacy Holdings, Inc.
c/o FTI Consulting
Three Times Square
9th Floor
New York, NY 10036
Attn:          Chad J. Shandler
Telephone:     (212) 841-9349
Email:         chad.shandler@fticonsulting.com

with copies to:

Porter Hedges LLP
1000 Main, 36th Floor
Houston, Texas 77002

Attn:          John F. Higgins
               Eric M. English
               Genevieve M. Graham
Telephone:     (713) 226-6648
Facsimile:     (713) 226-6628
Email:         jhiggins@porterhedges.com
               eenglish@porterhedges.com
               ggraham@porterhedges.com

Cole Schotz P.C.
301 Commerce Street
Suite 1700
Fort Worth, Texas 76102
Attn: Michael D. Warner
Telephone: (817) 810-5250
Facsimile: (817) 977-1611
Email: mwarner@coleschotz.com

E.    *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except for purposes of filing applications for Professional compensation in accordance with Article II.A.2 of this Plan.

F.    *Discharge of the Patient Care Ombudsman*

On the Effective Date, the duties and responsibilities of the Patient Care Ombudsman shall be terminated, and the Patient Care Ombudsman shall be discharged from her duties under section 333 of the Bankruptcy Code and she shall not be required to file any further reports or perform any additional duties.

G.    *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Debtors, the Committee, and the Prepetition Lenders; *provided*, *further*, that the Debtors may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

H.    *Return of Security Deposits*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Person or Entity at any time after the Petition Date shall be returned to the Debtors within twenty (20) days after the Effective Date, without deduction or offset of any kind.

49

I.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.      *Entire Agreement*

Except as otherwise indicated herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

K.      *Exhibits*

All exhibits hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

L.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

M.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of a conflict between any provision of the Plan and the Confirmation Order, the Confirmation Order shall govern and control.

N.      *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Dated: February 20, 2019

Respectfully submitted,

**NEIGHBORS LEGACY HOLDINGS, INC.**
on behalf of itself and the other Debtors


By:    /s/  *Chad J. Shandler*
        Chad J. Shandler
        Chief Restructuring Officer

6778127v24