USBC SDTX RCVD SEP 4 2020 PM 3:25

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re: §
§
Neighbors Legacy Holdings, Inc., et al, § Case No. 18-33836, Chapter11
§
Sohail Alam, **Plaintiff** §

Adversary. Proc. No. 19-03442

Neighbors Health, LLC, Neighbors, Tensie Axton, GP, LLC, EDMG, LLC, Dharmesh Patel, MD, Michael Chang, MD, Quang Henderson, MD, Hitesh Patel, MD, Andy Chen, MD, Cyril Gillman, Setul Patel, MD, Paul Alleyne, MD, Thomas Gruenert, **Defendants**,

United States Courts
Southern District of Texas
FILED
SEP 04 2020
David J. Bradley, Clerk of Court

**PLAINTIFF'S MOTION TO RECUSE THE HONORABLE JUDGE MARVIN ISGUR FROM THE ADVERSARY PROCEEDING AND MOTION TO SET ASIDE THE RELEASE OF PORTER & HEDGES, CHAD SHANDLER, AND TENSIE AXTON AND FORMAL COMPLAINT TO THE FIFTH CIRCUIT COURT OF APPEALS**

**TO THE HONORABLE COURT:**

COMES NOW Sohail Alam, ("Alam or "Plaintiff"") and moves to Recuse the Honorable Judge Marvin Isgur, from the above entitled matter pursuant to 28 USC § 455, Article VI of the United States Constitution and *Stone v Powell, 428 US 465, 483 n. 35, 96 S. Ct. 3037, 49 L. Ed. 2d 1067.* Fed. R. Bankr. P. 5004(a). Pursuant to 28 USC § 455 the neutrality requirement of this statute guarantees that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. As stated in, *Stone v Powell, 428 US 465, 483 n. 35, 96 S. Ct. 3037, 49 L. Ed. 2d 1067.* Fed. R. Bankr. P. 5004(a), federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law pursuant to both Article VI of the U.S. Constitution and under § 455. Specifically, a judge should recuse himself when "(a) . . . his impartiality might reasonably be questioned . . . [or] (b)(1) [w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"

## INTRODUCTORY STATEMENT

1. Plaintiff Alam, is fearful of retribution from the powerful, including with all respect, from the honorable judge Marvin Isgur, the tribunal, and the law firm of Porter & Hedges. Alam is therefore filing this complaint with the 5th circuit court of appeals/the chief judge and his motion to recuse under the whistleblower protection act, which allows for a person who exposes any kind of information or activity that is deemed illegal, unethical, or not correct within an organization that is either private or public.

2. Alam is making claims of wrongdoing, in the sense they were tortious acts and/or statutory violations consisting of engaging in activity contrary to public policy. Alam claims he was harmed.

3. It was the July 17, 2020 hearing on Alam's settlement agreement that confirmed for Alam, for the first time, that there was indeed a concerted effort by many to disrupt and destroy his claims and deny him his due process in court, even if it meant depriving him of his constitutional rights - of a fair judiciary.

4. Alam's adversary litigation and his objections to the debtors' bankruptcy, dating as far back as December 2018, was hostile and prejudicial from the day he informed the honorable Judge Marvin Isgur that debtors' bankruptcy was a sham. The judge, with all respect, exceeded his constitutional prerogative to interpret law. He took legal action that favored the law firm of Porter & Hedges[1]. Anything they stated or provided to this court was – sacrosanct for the judge. Alam became terrified of Judge Isgur, when on a March 2019 hearing he ridiculed Alam for writing him a letter that debtors' bankruptcy was a sham and in March 2020, when he tossed out Alam's motion to take judicial notice[2] as mere "allegation". The evidence show that Alam was a bona fide creditor in the bankruptcy case with two executory contracts: (a) non-terminable employment agreement, and (b) IP license agreement. Neither of those executory contracts were rejected by the court before debtors' confirmation of the plan.

---

[1] From information and belief, Porter & Hedges is the biggest bankruptcy law firm that enjoys over 50% of all cases that are filed in the U.S. Bankruptcy Court Southern District of Texas. As such, the firm maintains quite a bit of clout at the court.

[2] Alam's motion to take Judicial Notice was a factual pleading with evidence

In the attached affidavit, marked herein as Exhibit A, Alam maintains his veracity on the motions and pleadings he has filed and denies P&H's assertions, which Judge Isgur has embraced without evidence, that the settlement agreement that released Porter & Hedges, Chad Shandler, and Tensie Axton was for the benefit of the bankrupt estate[3]. This is farther from the truth. In fact, the settlement agreement confirms and to a larger degree **validates** Alam's pleadings of an immoral judiciary. The P&H's position of a benefit to the estate arises because they were representing Ms. Axton for her misconduct while she served as CFO of Neighbors Health, LLC (see Alam v. Axton). **P&H had no reason and no duty to represent Axton for her personal misdeeds.**

5. During the 18-months of litigation as *Pro se* counsel, Alam received some anonymous tips related to his case. In March or April of 2020, he was informed that Judge Isgur was furious, did not like his attacks on Porter & Hedges, and was ready to sanction Alam.

**6.** With this information, Alam began settlement discussions with the debtors. The settlement documents, including those that Alam filed, were either prepared and/or edited by the law firm of Porter & Hedges[4] and despite reaching an agreement with Alam on or around June 26, 2020, P&H, in violation of the prior agreement continued to make changes favorable to them - even up to the last minute and ended up filing 1,356 pages of settlement documents – all for a $50,000 dollar settlement with a bona fide creditor[5]. **The premise behind the expunging of documents, which Judge Isgur consented to, was to erase the evidence and judicial record of impropriety, perjury, misdeed, and bias.**

[3] The law firm of Porter & Hedges and Chad Shandler were a non-party to Alam's adversary proceedings. Ms. Axton was sued in her individual capacity and as an officer/director of debtor companies. Arguably, she was covered under the debtors O&D policy. The bankrupt estate has therefore nothing to gain from the release of Ms. Axton.

[4] In any judiciary, even in the third illiterate world, settlement agreements tainted with deception are deemed null and void. The U.S. Courts should condemn this action by the law firm of Porter & Hedges.

[5] Alam was a bona fide creditor with two executory contracts. The Alam settlement agreement was for $50,000 dollars for which the debtors counsel may have billed their friend Ms. Tensie Axton, the liquidating trustee over $20,000 in legal fees. The sum was then paid through the debtor funds. If, from the review of the settlement agreement it is deemed an agreement to benefit P&H, Tensie Axton, and Chad Shandler then P&H should be barred from practicing law.

**7.** The July 17, 2020, hearing regarding Alam's settlement agreement affirms and to some degree solidify Judge Isgur's bias, abuse of power and official misconduct. It provides *prima facie* evidence of Judge Isgur's dislike of Alam. At this hearing, Judge Isgur ordered Alam to reveal from the agreed settlement agreement the settlement amount which according to him was good for public policy[6]. At the same time, Judge Isgur ruled against public policy when he approved to expunge each and every motion and pleading, including the live pleadings, that in any way, were adverse and unfavorable to them and their friend Chad Shandler. Judge Isgur then released Porter & Hedges and its lawyers, the liquidating trustee, Ms. Tensie Axton and Mr. Chad Shandler from all liabilities when most were deemed to be potential defendants in Alam's complaint. This effectively derailed any chances of recovery by Alam.

7. Alam asserts that Judge Isgur restricted Alam's due process right by:

- a. withholding his ruling for over ten months, which Alam contends was intentional;
- b. denying Alam discovery despite allegation of a fake bankruptcy petition;
- c. expunging evidence that exposed gross misconduct by Porter & Hedges (P&H), Debtors, Chad Shandler, and Tensie Axton, including with all respect, by Judge Isgur;
- d. for 18 months disregarded pleadings adverse to debtors' bankruptcy; debtors counsel, including the Liquidating Trustee against section 18 U.S.C. §§ 152, 1341, 1519;
- e. unfairly prevented Alam from viewing relevant judicial records pertaining to the matter;
- f. persistently failed to timely decide matters;
- g. repeatedly evidenced the appearance of partiality in his rulings.

8. The Judge showed favoritism to Tensie Axton and Chad Shandler: (a) by releasing them from

[6] One of the hallmarks of the U.S. bankruptcy system is access to information concerning any entity that files for bankruptcy protection. The integrity of that system is premised upon the presumption that not only creditors and other interested parties in a bankruptcy case, but also the public at large, should have the ability to examine any document filed with the bankruptcy court. Rooted in the common-law right of access to public documents, full disclosure promotes the legitimacy of the bankruptcy court as an institution entrusted with impartially applying the nation's bankruptcy laws and administering debtors' estates for the benefit of all interested parties. Unrestricted access to judicial records also fosters confidence among creditors regarding the fairness of the bankruptcy system.

potential liability to plaintiff, (b) preventing plaintiff from bringing an action against them, (c) allowing P&H to use debtor funds for legal fees for a personal benefit they gained from using debtors' funds.

9. The Judge showed bias when he disregarded evidence and failed to investigate the involvement of Axton, Shandler, Girish Capital, and debtors counsel with respect to personal wrongdoing, perjury and against 18 U.S.C. §§ 152, 1341, 1519

10. The Judge Isgur's actions may have violated the constitution and the statute referenced above. He belittled Alam throughout the proceeding and acted in a manner inconsistent with that which is needed for a full, fair, and impartial hearing.

**FACTS BEFORE THE HONORABL JUDGE MARVIN ISGUR**

11. In or around June 2017, Mr. Chad Shandler of Cohen & Reznick, LP was brought on board to serve as debtors chief restructuring officer (CRO). On July 12, 2018, debtors filed voluntary petitions for relief under Chapter 11 of the bankruptcy code. The bankruptcy petition was based on the declaration and affidavit of Mr. Chad Shandler[7]. Evidence show debtors senior management [CEO, CFO and CLO] provided input into the declaration:

> Mr. Chad Shandler's Declaration: See Docket #16 – 18-33836
>
> *"this Declaration are based on my personal knowledge, my discussions with members of the Debtors' senior management, my review of relevant documents or, based on my experience and knowledge of the Debtors' operations and financial conditions, and my opinion. In making this Declaration, I have relied, in part, on information and materials that the Debtors' personnel and advisors have gathered, prepared, verified, and provided to me in each case under my ultimate supervision, at my direction and/or for my benefit in preparing this Declaration"*

12. On July 28, 2018, Alam informed Mr. Shandler and debtors counsel of O&D's fraud pertaining to his agreement with them.

[7] Docket #16 Page 2, "this Declaration are based on my personal knowledge, my discussions with members of the Debtors' senior management" etc.

13. On July 29, 2018, Mr. Thomas Gruenert, debtors chief counsel informed Mr. Shandler and debtors counsel that Neighbors Telehealth as one of Neighbors affiliate, agreed to, by the debtors Board of Managers. According to Dr. Paul Alleyne, debtors' CFO and chief counsel attended all board meetings.

14. On December 15, 2018, Alam notified the court in writing that debtors had filed a fake bankruptcy petition and requested investigation of debtors prior to Confirmation of the Plan.

15. On March 20, 2019, Alam filed his objections to the Confirmation of the Plan calling the bankruptcy - a sham. In support he provided 16 pieces of evidence.

16. On March 22, 2019, Alam was noticed to appear before the honorable judge regarding his December 2018 letter. Judge Isgur without evidence publicly ridiculed Alam.

17. On April 17, 2019, Alam filed a complaint against three defendants and later amended to include additional 10 including the Liquidating Trustee in her individual capacity stating that the debtor and its O&D's defrauded him of $818,000 dollars and wrecked his intellectual property worth $30+ million dollars[8]

18. On February 17, 2020, Mr. Shapiro, trustee for the unsecured trust, in his first amended complaint, against the O&D's reached the same conclusion provided in the Alam's December 14, 2018. see docket # 1; case 20-03017

## LEGAL STANDARD

19. Alam's affidavit, made in good faith and attached hereto as **Exhibit A**, states the facts and the reasons for the honorable judge's bias and prejudice against him. Under section § 144 disqualification is triggered by an affidavit that alleges "the judge before whom the matter is pending has a personal bias or prejudice either against [the affiant] or in favor of any adverse party." The Fifth and Eleventh Circuits have explained that "to warrant recusal under § 144, the moving party must allege facts that would

[8] The valuation of Alam's software was conducted by a third-party valuation firm

convince a reasonable person that bias actually exists." In Lately v. United States, 426 the Supreme Court noted that the standard for bias or prejudice under § 144 is identical to disqualification for bias and prejudice under § 455(b)(1). In so stating, it distinguished § 455(a), which requires allegations of bias "to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." The Ninth Circuit, however, has imported § 455(a)'s objective standard into its § 144 analysis (before and after Liteky), declaring that "under both recusal statutes, the substantive standard is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.

20. In the landmark case, *Berger v. United States,* the Supreme Court interpreted the statutory predecessor to § 144 to require that the challenged judge accept all facts alleged in the affidavit as true, and not pass on the truth of the alleged facts. Rather, the judge's role was limited to evaluating the facial sufficiency of the affidavit for the purpose of determining whether a reasonable person could find "fair support" for the charge that the judge was biased against the movant or in favor of another party. Many circuits have since reiterated this principle.

21. The Fifth Circuit, however, drew a different conclusion in *McCuin v. Texas Power & Light Co.* It stated that permitting a disqualified judge to assign the case "would violate the congressional command that the disqualified judge be removed from all participation in the case" and might also "create suspicion that the disqualified judge will select a successor whose views are consonant with his."

***Grounds for disqualification***
***General standard***

22. In this motion, Alam is seeking the recusal of the Judge Isgur's on § 455(a) which requires disqualification for the appearance of partiality (i.e., when a judge's "impartiality might reasonably be questioned") as well as § 455(b)(1), which requires disqualification for actual partiality (i.e., when a judge "has a personal bias or prejudice toward a party"). Whether the judge is, in fact, impartial is determinative

of disqualification under § (b)(1); but it is not dispositive of disqualification under § (a).

23. Section 455 also requires disqualification if a reasonable person might believe that the judge was aware of circumstances creating an appearance of partiality. Noting that the purpose of § 455(a) is to promote public confidence in the integrity of the judicial process, the Court observed that such confidence "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew."

24. The reason for Alam's recusal is not because Judge Isgur is friends with debtors' counsel. It is the extent of the friendship with the debtors' counsel that is so "unusual" especially when he allowed them to dip into the debtors' funds to seek personal benefit. This form of partiality, bias, and prejudice by Judge Isgur is unprecedented and so excessive it can be only be characterized as abuse of power because, even though it springs from the facts adduced or the events occurring in this matter, is so extreme as to display clear inability for the honorable judge to render fair judgment in a way he had all but made up his mind to not be neutral, and clearly injurious to Alam.

25. Federal Rule of Bankruptcy Procedure 5004 provides that "a bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualified circumstance arises or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr. P. 5004(a). Under § 455, a judge should recuse himself when "(a) . . . his impartiality might reasonably be questioned . . . or (b)(1) where the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." The Pervasive Bias Exception is available "when a judge whose information is limited to that revealed during the course of judicial proceedings forms a favorable or unfavorable opinion so extreme that fair judgment appears impossible." Haas, 292 B.R. at 177.

26. To demonstrate the absence of an adequate remedy on appeal, Alam contends, the denial of discovery and the unusual delay of 10 months delay has been so extreme it has restricted Alam to continue

to develop the case. *See AMR Corp. v. Enlow*, 926 S.W.2d 640, 645 (Tex.App.-Fort Worth 1996, orig. proceeding). *See Rogers v. Bradley*, 909 S.W.2d 872, 879 (Tex.1995); *Kirby v. Chapman*, 917 S.W.2d.

27. As in here, when there exists a reasonable question-based on objective facts as to a judge's impartiality, recusal is mandated.

28. The conduct of Judge Isgur that parallel Alam's claim can be traced (In re Cantu), 400 B.R. 104 (2008) in which Judge Isgur acknowledged he had some "*hard feelings*" against Cantu. He also said Cantu had threatened to file a judicial misconduct complaint against him. "*Basically, I said, 'Go ahead"* The appeals court said Judge Isgur's role as a judge conferred the prestige and credibility of judicial office to the position of the Commission for Lawyer Discipline. His testimony was not necessary. His conduct was prejudicial to the effective and expeditious administration of the business of the courts.

## FACTS AND ARGUMENT

### I.
### The Honorable Judge Marvin Isgur ridiculed Alam and disregarded his objections to debtors' confirmation plan

29. Alam, in docket # 736; 18-33836, four months prior to the Confirmation of the Plan notified the concern regarding debtors' insolvency and the valuation it received when all of its property was sold in the dark hours of the night. He labeled debtors bankruptcy as part of a larger scheme and a sham. The facts that Alam brought to the attention of the court in December 2018, were later corroborated when the Trustee of the unsecured committee, in February 2020, filed its first amended complaint against the Officers and Directors of the debtor companies. Plaintiff contends, Judge Isgur disregarded these facts and later when he expunged those incriminating documents from the record was so egregious it was unlawful and without authority.

30. Further, on March 22, 2019, some four months after notifying the Court of debtors' fake bankruptcy petition, at a hearing for the Confirmation of the Plan, Judge Isgur uncaringly called Alam to the stand. *[See March 22, 2019 transcripts of the hearing]*

THE COURT: Well, why don't we start with Mr. Alam's complaint, unless you've got that one resolved.

MR. ENGLISH: We don't.

31. The judge's insensitive statement "you've got that resolved" is also prima facia evidence of his dislike of Alam because debtors counsel was without authority to resolve the facts identified in Alam's letter to the court. Asking the debtors' counsel questions demeaning to Alam considering he was aware four months prior to the Confirmation Plan that a creditor (Alam) with "first-hand" knowledge had challenged the debtors' bankruptcy petition in his court and called it - fraud.

THE COURT: Good morning. Mr. Alam, I read what you filed and I'm not sure if you actually are here to pursue a claim or just to be sure that you have alerted .........

THE COURT: ...what do you think should happen in the end? (referring to Alam's letter)

MR. ALAM: .....I think the Court has the **duty to look into** this and say was this bankruptcy a true bankruptcy.... I read Mr. Chad Shandler's declaration under oath and if you read that, ...........it is totally controvertible to the facts.

32. The Judge: (a) was aware that a creditor and former CEO of one of debtor's affiliate company called debtors' bankruptcy - fake, (b) despite his duty of fairness, he withheld Alam's complaint without inquiry, and (c) then labeled it as mere "alerting the court" shows his contempt and partiality.

33. The Judge's berating comments to Alam were inconsistent with his attempt of fairness.

THE COURT: I'm not communicating to you properly. What should the outcome be? What should the final answer be?

MR. ALAM: ...**it's not up to me to suggest to this honorable court** ....the answer is vested with this Court to say to public at large and to all the creditors that this is not a true bankruptcy..... your Honor, Neighbors Health has filed factitious Federal Tax Returns. And if Neighbors can file factitious tax returns to the Federal

Government, Your Honor, you should never allow this bankruptcy to proceed.

34. The Judge's consistent rebuke of Alam is also clear:

THE COURT: Don't tell me what it should do, what does it do?

MR. ALAM: Then I don't understand the question, Your Honor, I can tell you this that the auction that was entirely premature.

THE COURT: It is too late. That's already happened.

MR. ALAM: ....in response to your question as to what is it that I want.... I wrote a letter to this court; my goal was to alert this Court with the issues that were quite prevalent. And I, with that letter, wanted this Honorable Court to be aware of the issues that were a great concern not only to the unsecured creditors, but me. It was not my job, it was not my duty to come up here to this Court and say look this went wrong or this went wrong or this is how it happened. **....Your Honor I really honestly expected that this Court** would have - with all respect, billion respect of this Court - that this Court **would issue some sort of an order asking every counsel and every trustee and Mr. Chandler and Ms. Tensie saying I want answers to this. . .and instead I'm summoned here basically to say what do you have in your mind. And I personally feel kind of, you know, belittled.**

35. Alam contends, although the current process gives judges wide leeway, but harassing and disapproving of a witness, without evidence - is an abuse of power as a judge. For example:

THE COURT: Good morning. Mr. Alam, I read what you filed and I'm not sure if you actually are here to pursue a claim or just to be sure that you have alerted .........of course, we then have the complaint by the Debtor that says that you didn't cooperate in discovery.

36. Judge Isgur's improper probe into Alam "*we then have the complaint by the Debtor that says that you didn't cooperate in discovery" was also unwarranted*. The Judge lifted these talking points from debtors pleading and without inquiry into the truth, berated Alam without reason, because the judicial record before him, if he had cared enough to be impartial, showed clearly that Alam had indeed produced the documents requested by Debtors' counsel, see [docket # 838]. The Judges' harassment of Alam was therefore unjustified because he favored the debtors counsel despite their fake pleadings.

37. Similarly, in the same March 22, 2019, hearing, the Judge was so adamant to cause Alam injury that he, without reason, without the time and place, without the rule of law, and even without even knowing if the objections were ever filed argued that Alam's contract was ineligible to demand an administrative claim or any other claim.

THE COURT: How does your employment claim contract give you an administrative claim.

MR. ALAM: ..... my employment contract was a non-terminable contract... in exchange for my intellectual property. And it is specified in the documents, I have provided to this Court, from Exhibit 1 to Exhibit 16.

THE COURT: Where are those 16 exhibits?

MR. ALAM: .....I've expressed that in writing.

THE COURT: Where do you express in writing to me?

MR. ALAM: It is in my objections to confirmation.

THE COURT: **So, I have your objection to confirmation. I'm looking at ECF Number 736.**

MR. ALAM: **Not on that one, Your Honor.**

38. Bankruptcy judges are well aware that intellectual property licenses are usually executory contracts, which the Supreme Court has defined as a contract "on which performance remains due to some extent on both sides". In *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* The Judge: (a) without inquiry into Alams objections to the confirmation plan chastised his IP claim, and (b) with the understanding that Alam's software license issued to the debtors was an executory contract that was not rejected prior to the confirmation of the plan.

MR. ALAM: for lack of better word ...has been a lie. My vocabulary is not as great......just <u>so much of corruption....why is it that some of this information did not come forward to this Court beforehand.</u>

**II.**
**The Honorable Judge Marvin Isgur disregarded Alam's Motion to take Judicial Notice because it exposed the illicit conduct of debtor's counsel, Mr. Chad Shandler, Ms. Tensie Axton, and debtors O&D's**

39. Judicial notice is frequently used for the simplest, most obvious common-sense facts. The judicial notice of falsity filed by Alam was proper in contemplation of debtors' petition under title 11:

1. that on September 6, 2018, one of debtors' affiliate owed $490k dollars;

2. that the judge had rejected the executory contract pertaining to Alam's IP Software license.

3. that defense counsel, Mr. Scott Davenport manipulated and altered documents with the intent for the judge to rely upon.

4. that Neighbors Telehealth, LLC, was a debtor and guarantor;

5. that Mr. Thomas Gruenert, former chief counsel participated with Dr. Setul Patel, CEO in a scheme to shut down Neighbors Telehealth, LLC and open up Neighbors Telehealth Services, LLC, a telehealth company owned by Neighbors Health. Mr. Gruenert, as part of the scheme requested ownership in what he called Telehealth 2.0.

40. The record of misleading the court, filing false pleadings, making unlawful arguments, obstructing justice, concealing assets, fraudulent conveyance, and improper transfers were ignored by Judge Isgur.

**III.**
**The Honorable Judge Marvin Isgur's delay in ruling on Alam's objections to defendants Motion to Dismiss for 10 months made him weak, helpless, and scared of the Judge Isgur**

41. On May 2020, Alam, in a personal letter to Judge Isgur, made a Plea for Justice - to no avail:

> Eighteen months ago, I appeared before you and informed you that Neighbors bankruptcy was a sham. Since that time, the Trustee appointed by you has also alleged the same facts. Though unproven until trial, disputes the veracity of the bankruptcy petition. The fake bankruptcy petition has caused me (the only individual) to lose my life savings and potential income stream from my invention.
>
> Fourteen months ago, I filed many-many pleadings, showing:
> 1. debtors withheld material facts when negotiating an agreement with me;
> 2. debtor's CEO and Chief Counsel conspired to take over my property;
> 3. debtor's CFO admitted to owning Alam's software; CRO refused to give it back;
> 4. debtors CRO manipulated his affidavit as well as debtors' assets;
>
> Ten months ago, defendants filed their motion to dismiss my complaint. Of the 13 defendants, 9 filed a "zerox" copy of the same motion, even admitting to the allegations

I had raised in my petition, and falsely stated that I have been given "multiple" chances to amend my complaint. Records show otherwise.

I am begging you NOT to believe the defendants and verify for yourself that I have amended my complaint only once. That, my case has merit. Please allow me to amend my complaint.

42. Judge Isgur's delay in his rulings failed to redress the right that Alam deserved and expected from a fair judicial system, which effectively denied him justice. Justice delayed is justice denied.

## IV.
## The Honorable Judge Marvin Isgur's Order in denying Alam to amend his complaint was an abuse of the judicial process because it was based on the debtor counsel's false pleading

43. Alam sought his Motion for Leave of Court to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Alam argued that defendants conflicting and misleading statements that Alam has had multiple opportunities to amend his pleadings though false, were the sole factor in the Judge preventing Alam from amending his complaint. Evidence before this court shows that Alam's original complaint included three defendants and the first amended complaint included additional ten defendants. His request to amend the complaint under Rule 15 was his second attempt and not the third - as debtors counsel falsely claimed. Alam's recusal of Judge Isgur is not on his ruling against Alam, instead it is, on his reliance on false pleadings and total disregard to the judicial record before him. Judge Isgur's conduct in making such a ruling was malfeasance and clear evidence of partiality.

## V.
## The Honorable Judge Marvin Isgur's disregard of a perjured affidavit was against title 18 U.S. Code § 157

44. The Alam's December 14, 2018 letter to the Court, the March 22, 2019, Confirmation Hearing transcript (docket 1050), and the Shapiro complaint provided the honorable judge with enough evidentiary facts that someone may have lied in the affidavit that made the basis of debtors' bankruptcy. However, the judge not only ignored the perjured testimony, he allowed for a "cover-up" by expunging

those pleadings so as to prevent the exposure of wrongdoing.

> Mr. Higgins to Mr. Chad Shandler, March 22, 2019 hearing; Pgs 56-57
>
> Q Were you involved in developing and negotiating the Debtors' plan and disclosure statement?
> A Yes, I was.
> Q Can you describe that process?
> A The initial plan was drafted by Debtors' counsel and then circulated to both myself as the Chief Restructuring Officer and Ms. Tensie Axton as the Chief Financial Officer for our review and additional comments. At that point in time that document was then presented to the board of directors for their approval and additional comment as well.
> Q Did the Debtors negotiate those documents in good faith?
> A Yes, they did.
> Q And did the negotiations proceed at arm's length?
> A Yes, they did.

45. Contrary to the testimony, the debtors' negotiations did not proceed at arms-length. The Shapiro Complaint (Dkt 1, 20-03017)] affirmed that debtors' officers and directors did not negotiate any of the agreements at arms-length[9]. In highlighting the O&D's gross breach of the duty of care, the Shapiro complaint provides a letter from Neighbors' auditors, Grant Thornton, that articulates numerous different internal control deficiencies that were deemed to be material weaknesses such that there is a reasonable possibility that a material misstatement of the Company's financial statement would occur.

46. In addition, the honorable judge failed to examine the affidavit with respect to debtors' valuation of assets, against section 18.U.S.C.

> *Docket # 16.*
> *In late 2016, the Debtors' business began experiencing financial difficulties caused, in large part, by two fundamental challenges: (1) increased competition in the freestanding emergency department space, and (2) less favorable insurance payor conditions. These challenges have resulted in declining revenues and disproportionate overhead costs compared to the number of the Debtors' Emergency Centers and, as the business began to contract, the Debtors began closing Emergency Centers.*

47. The Shapiro Complaint (Dkt 1, 20-03017), which affirms the foundation of Alam's December

[9] The Alam's adversary complaint points to this exact claim that debtors O&D's also showed callous disregard to their veracity in negotiating a contract with Alam – a pattern of fraudulent behavior in which one acts for the benefit of the other.

14, 2018 letter to the judge (dkt 736) negates the affidavit in this way.

> *The Neighbors' O&Ds……perceived themselves as real estate developers …and partnered with Read King Commercial ("Read King")….this widespread pattern of neglect…………..ultimately led to the collapse of Neighbors.*

> *Paul Alleyne, 1/12/2016 "Remember, we have ownership interests in some of these facilities through Girish Capital. We don't make any money until they sell. Let's root for them to succeed"*

48. Alam's recusal of Judge Isgur is not as much on his neglect of facts contrary to the affidavit, it is, his callous disregard of the laws he is sworn to uphold. Judge Isgur's partiality and favoritism for certain parties affected Alam's constitutional rights to a fair judiciary.

## VI.
## The Honorable Judge Marvin Isgur showed bias when he forced Alam to reveal the settlement amount but failed to rule on the pending objections

49. After 18 months, when Alam was convinced that judge Isgur would never be impartial he settled his claims with 4 of the 13 defendants. The settling parties entered into a settlement with the understanding that the consideration paid by the Liquidating Trustee to Alam, if approved by the Court, will remain confidential. Alam's motion to redact the settlement amount was brought pursuant to federal case law holding that, while the public has an interest in having unfettered access to federal court filings, such an interest is outweighed by the federal courts' interest in promoting settlement, a key element of which is often maintaining the confidentiality of the settlement amount.

50. Defendants Thomas Gruenert, Setul Patel, Dharmesh Patel, Paul Alleyne, Cyril Gilman objected to the settlement agreement on two grounds: (a) why was the settlement amount a secret, and (b) why was the liquidating trust expending funds to procure releases for Chad Shandler and Porter & Hedges, who were not a party to the proceeding? Despite the objections of impropriety, Judge Isgur ruled against the objections because they were unfavorable to Porter & Hedges, debtors counsel, Chad Shandler and Tensie Axton. Alam's recusal of Judge Isgur is not that he denied his motion to redact, it is Judge Isgur's failure

to rule on the objections unfavorable to certain parties and uncaringly releasing defendants from Alam's lawsuit. This is an outrageous conduct by judge Isgur who was supposed hold a fair judiciary.

## VII.
## The Honorable Judge Marvin Isgur's release of Mr. Chad Shandler using debtor funds is a clear evidence of his abuse of authority. The Judge was aware Mr. Shandler to be a potential defendant in Alam's case

51. The settlement agreement was between Alam and the liquidating trust. The liquidating trust was managed by Ms. Tensie Axton. Ms. Axton was the former chief financial officer of the debtor companies, who according to the judicial record worked closely with Mr. Chad Shandler and O&D's in preparing the affidavit that Alam claim was perjury. *See March 22, 2019 hearing transcript.*

52. The Liquidating Trustee, in the Alam settlement agreement sought the protection of Mr. Chad Shandler from all liabilities. Mr. Shandler was a non-party to the matter before this court. The request by the Liquidating Trustee and her counsel to include Mr. Shandler in the settlement agreement for release was objected to by defendant Setul Patel, Thomas Gruenert, and Dharmesh Patel. For judge Isgur to participate in a scheme to release potential defendants effectively denied Alam his due process in court and denied him his constitutional right to fairness in a judicial proceeding and a good reason for Alam to seek recusal of Judge Isgur.

## VIII.
## The Honorable Judge Marvin Isgur's release of Porter & Hedges from all liabilities using debtor funds, while ignoring Alam's motion to disqualify debtors counsel was prejudicial to Alam

53. The release of Porter & Hedges and its lawyers from the settlement agreement was objected to by defendants Setul Patel, Thomas Gruenert, and Dharmesh Patel, perhaps because of evidence (docket # 16 filed under the penalty of perjury) that Porter & Hedges may have been an active participant in the preparation of the affidavit that made the basis for debtors bankruptcy. The demanded "pardon" of Porter & Hedges and its lawyers was extraordinary. More noteworthy, is that the release was bought and paid for by the debtor funds. Judge Isgur's pardoning of certain parties using the debtor pool of funds is a

complete disregard of the law, the very laws, the honorable judge was there to protect – leaving no doubt to the prejudice he has continued to show towards Alam. Alam's recusal of Judge Isgur is not that he denied his motion to redact, it is Judge Isgur's failure to rule on the objections unfavorable to Porter & Hedges and uncaringly releasing defendants from Alam's lawsuit.

**IX.**
**The Honorable Judge Marvin Isgur's release of Ms. Tensie Axton as a defendant in Alam's adversary complaint using unsecured creditors funds was prejudicial**

54. Similarly, the demanded "pardon" for Ms. Axton is also significant because Ms. Axton was a defendant in the Alam's adversary proceeding in her individual capacity as well as an officer of the debtor companies. More striking is that Ms. Axton, serving as a fiduciary of the liquidating trust, dipped into the debtor funds: (a) paid herself monies to procure a personal legal defense, (b) paid herself monies for defense as an officer of the defunct debtor company, (c) authorized a release of her friend Chad Shandler, who according to docket #16 prepared the affidavit with Axton as a participant, (c) authorized a release of her lawyers and their law firm, who were (i) also the authors of the affidavit, and (ii) who provided legal advice to the fiduciary of the Trust demanding a release for them. This is outrageous. Even more extreme is the conduct of Judge Isgur, who tampered with the law and allowed the Liquidating Trustee to violate her undivided loyalty to the estate. Alam argues, it is this behavior by Judge Isgur that affirms his disgust and hatred of Alam, even if it meant he'd break laws to deny Alam his constitutional rights.

**X.**
**The Honorable Judge Marvin Isgur expunged all motions and pleadings including live pleadings solely to hide the wrongful conduct of Porter & Hedges (a non-party), Mr. Chad Shandler (a non-party), Ms. Tensie Axton (a defendant in her individual capacity). This was a blatant disregard to Alam's constitutional rights.**

55. Concealing the evidence of wrongdoing in a proceedings where live pleading were removed from the court record is unprecedented. It was damaging to Alam. The character of every act depends upon the circumstances in which it is done. Oliver Wendell Holmes, *Schenck v. the United States* (1919).

Therefore, when Judge Isgur allowed debtors counsel to destruct and destroy court records, he violated the spirit of the Constitution, which profoundly shaped public policy at the bankruptcy courts. The public trust that all judges are sworn to protect was shattered by Judge Isgur. This conduct by Judge Isgur was not just the appearance of partiality - it was bias and harmful to Alam.

56. Expungement means eliminating something completely - acting as if it never happened. The concept of expungement is more closely identified with the criminal justice system, where judges have some authority to erase convictions for less-serious crimes. For example, the petitioner is found not guilty, or was found guilty of or not criminally responsible for certain crimes or specified misdemeanors and/or the charges were dismissed etc. The idea behind expungement is for the ex-offender to get a job, rent an apartment, etc. Clearly that was not the case here. Judge Isgur's seeking to benefit a certain group is not even close to what the legislature intended. The federal court system that handles bankruptcies show there is nothing in the U.S. Bankruptcy Code that specifically grants judges the authority to expunge documents. Even sections 105 and 107 of the bankruptcy Code do not give the authority for judges to carry out the provisions of expungement or destroy court records in favor of one party. More importantly, civil cases cannot be expunged and civil case information cannot be shielded or sealed from public inspection. Judge Isgur, of all people should know the Rule 9018-1 which provides for strong presumption of public access to the court's records. This rule applies in all instances where a party seeks to overcome that presumption by seeking to seal documents, thereby denying public access to that document. Alternatives to filing a document under seal are to be considered, including considering whether the document could be filed in a redacted version to address secrecy, privacy or confidentiality concerns while still providing the relevant information. See Fed. R. Bankr. P. 9037

57. Alam contends, the unethical bargain by the debtors' counsel, counsel for the liquidating trustee, counsel for Tensie Axton, and Chad Shandler with an assumed consent from judge Isgur, provided personal and pecuniary benefit for each to withhold any testimony or information concerning a pending

or impending proceeding or investigation. If buying the silence of defendants and witnesses can translate into gross misconduct, then it stands to reason that purchasing the silence of a witness-victim (select parties in Alam's case) was fraught with risk.

**Relief Requested**

58. For all of the foregoing reasons, the Plaintiff Alam respectfully request that the honorable Judge Marvin Isgur be recused, at least from the Alam's adversary proceedings. Further, that the law firm of Porter & Hedges, Ms. Axton in her individual capacity, and Mr. Chad Shandler are removed as released parties from the settlement agreement and further relief to which the Court may deem appropriate.

Submitted By:

//signed// Sohail Alam//

Sohail Alam, Plaintiff, Prose
7505 Fannin, Suite 300
Houston, Texas 77054
713-385-7979
samalam2@gmail.com
September 3, 2020